Ian McIntosh
Kelsey Bunkers
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433

*Attorneys for Big Sky Resort*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER, <br><br> Plaintiff, <br><br> vs. <br><br> BIG SKY RESORT, <br><br> Defendant. | Cause No.: 18-CV-00002-BMM <br><br> **BIG SKY RESORT'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

As set forth in detail in the opening brief of Big Sky Resort ("Big Sky"), the totality of Plaintiff John Meyer's conduct with respect to this action demonstrates that Meyer filed this action to coerce Big Sky on a collateral issue and for political gain. Meyer also committed a variety of attorney misconduct in connection with this action that prejudices Big Sky and impairs its right to a fair trial. Meyer's

response brief fails to address these issues. Dismissal of Meyer's lawsuit as a sanction for Meyer's attorney misconduct and abuse of the judicial process is warranted. Big Sky respectfully requests that the Court grant Big Sky's Motion to Dismiss.

I.  **The undisputed record shows that Meyer threatened to file this lawsuit and engage in a public campaign to smear Big Sky if Big Sky did not meet Meyer's demands, and that Meyer followed through on those threats.**

As set forth in Big Sky's opening brief and as is entirely unrefuted by Meyer, prior to filing this lawsuit Meyer, an attorney, explicitly threatened Big Sky that if Big Sky did not meet his demands regarding its benefit programs, Meyer would sue Big Sky and engage in a public campaign to disparage it. As is also unrefuted, Meyer followed through on both those threats. Meyer thus effectively concedes that he used the legal process in a willful and improper effort to coerce Big Sky to do a collateral thing that it could not be regularly compelled to do. *See Gault v. Smith*, 679 P.2d 236, 240 (Mont. 1984).

The unrefuted record establishes the following. On January 8, 2017, Meyer wrote to Middleton announcing his campaign for political office. (Doc. 30-2 at 3.) Meyer inquired whether Big Sky would provide additional benefits to its employees as previously discussed with Middleton and expressed interest in making a "joint announcement" with Big Sky regarding its employee benefit

programs. (Doc. 30-2 at 3.) When Middleton responded that Big Sky's benefit programs were considered private, Meyer threatened him:

> I am prepared to make the programs in your team public during President's Day weekend at the entrance to Big Sky. As a former grassroots organizer, I have already started contacting people.
>
> I am also willing to file a lawsuit against Big Sky for my accident.
>
> All of this can be avoided if Big Sky provides health care and retirement benefits to its employees and contractors as we previously discussed.

(Doc. 30-3 at 2; *see also* Doc. 30-3.) Meyer thus explicitly threatened litigation and a public campaign designed to harm Big Sky if Big Sky would not do the collateral thing Meyer demanded. *See id.*

When Big Sky refused Meyer's demand, Meyer followed through on both threats. On December 15, 2017, Meyer filed suit against Big Sky seeking $50 million, an exorbitant figure that he has linked to his assessment of the cost to Big Sky of meeting his demand. (Doc. 1-3; Doc. 17 at 3.) Meyer' Complaint also included a series of impertinent and scurrilous allegations regarding Big Sky's benefits programs and infrastructure investments, and detailed Meyer's efforts to coerce Big Sky to provide additional benefits to its employees. (Doc. 1-3 at ¶¶ 3, 15-25.)

Meyer admits that he included these allegations because he thought he "would have a better chance of winning if [he] said all the money goes to seasonal

employees." (Doc. 17 at 3.) Indeed, Meyer admits that he "did not want to file a personal lawsuit because he had not seen any published court opinions where a plaintiff prevailed against a ski resort." (Doc. 27, ¶ 18.) Though plainly irrelevant to his ski accident, Meyer's Amended Complaint retains these spurious allegations regarding Big Sky's employee benefits program and infrastructure investments. (Doc. 27 at ¶¶ 19-28.)

Days before filing his lawsuit, Meyer organized a so-called "Big Sky Health Care Rally" and promoted it on social media by disparaging Big Sky in a manner consistent with the irrelevant allegations contained in his Complaint. (Docs. 30-9; 30-10.) Writing directly to Big Sky ski patrollers on the day he filed suit, Meyer invited Big Sky ski patrollers and other seasonal employees to attend the Big Sky Healthcare Rally and encouraged them to complain to the media regarding Big Sky's benefits. (Doc. 30-8.)

On the day he filed suit, Meyer boasted about it on social media, highlighting his allegation (now retracted) that "any award" would benefit Big Sky employees. (Doc. 30-14.) Meyer also created a press release regarding this lawsuit. (Doc. 30-11.) In the press release, Meyer quoted himself as stating that meeting his demands on healthcare for Big Sky employees was a *quid pro quo* for dropping his claims against Big Sky. *Id.* In same the press release, Meyer

promoted his Big Sky Health Care Rally. *Id.* An article was published in the Montana Post based on Meyer's press release. (Doc. 30-12.)

Since filing suit, Meyer has repeatedly posted on social media regarding this lawsuit, in every case disparaging Big Sky for its benefits program and promoting his message of alleged inequity in Big Sky's infrastructure investments. (Docs. 30-14, -15, -16, -17, -18.) Meyer also contacted defense counsel in the course of this litigation threatening to rent a billboard to further disparage Big Sky. (Doc. 30-19 ("I am looking into renting a bill board on 191 on the way to Big Sky that says, 'Heated chair lifts but no health care for seasonal employees? That's B.S.!'").)

All of the above is entirely unrefuted by Meyer. And all of it is highly improper and demonstrates Meyer filed this lawsuit with an ulterior motive and in a willful and improper attempt to coerce Big Sky to perform a collateral thing not proper in the regular conduct of the proceeding. *See Seltzer v. Morgan*, 154 P.3d 561, 580 (Mont. 2007).

Meyer does not even deny that he filed this suit for political gain. *See* Doc. 31. The record makes clear that Meyer's political aspirations motivated his misconduct. *See e.g.* Docs. 30-2 at 1-3; 30-4; 30-5; 30-8; 30-12. In fact, Meyer's Amended Complaint confirms that Meyer recognized that he had little chance of prevailing in a personal suit against Big Sky, Doc. 27 at ¶ 18, and so he chose

instead to use his accident to leverage Big Sky on a collateral issue that he thought would benefit him politically, Doc. 30-2 at 2.  In sum, the undisputed record demonstrates that Meyer used his ski accident, his position as an attorney, and this litigation to attempt to coerce Big Sky to meet demands unrelated to his alleged damages because he believed such efforts would benefit his political campaign while a personal suit would likely fail.  Such actions pervert the legal process beyond its intended purpose and constitute an abuse of the judicial process.

Under both Montana and Ninth Circuit law, it makes no difference that Meyer's lawsuit *may* pass the low bar of frivolousness.[1]  What matters is that Meyer filed this suit with an ulterior motive and for improper coercive purposes, and that Meyer has engaged in a sustained effort at coercion.  *See Seltzer*, 154 P.3d at 580-81.  Ninth Circuit law explicitly recognizes that under the Court's inherent powers, sanctions "are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (emphasis in original); *see also In re Itel Securities Litig.*, 791 F.2d 672, 676 (9th Cir. 1986).

Likewise, under Montana law, one abuses the legal process if he acts with an ulterior motive and for an improper purpose, even if the legal action taken is not on

---

[1] As explained in Big Sky's opening brief, Meyer's Amended Complaint describes an event for which Meyer, by statute, must accept all legal responsibility because his injuries arise from the inherent risks of skiing.  (Doc. 30 at 25-26.)  Meyer's admission that at the time of his accident he "was skiing fast—no question about it," reinforces this conclusion. *See id.*

its face frivolous or improper. In *Salminen v. Morrison & Frampton, PLLP*, the Montana Supreme Court held that the plaintiff stated a valid claim for abuse of process even though the defendant sought to execute on a valid underlying judgment because the defendant used the legal process as a "threat or a club" with the ulterior motive of intimidation and coercion. 339 P.3d 602, 610 (Mont. 2014).

The Montana Supreme Court has also repeatedly approved of the Montana federal district court's holding in *Hopper v. Drysdale*, 524 F.Supp. 1039, 1041-42 (D. Mont 1981), in which the court held that properly noticing a deposition with the ulterior motive of having the witness served and arrested in an unrelated proceeding constituted an abuse of process. *See Gault*, 679 P.2d at 240; *Salminen*, 339 P.3d at 610 (Mont. 2014). As explained in *Hopper*, an abuse of the legal process occurs when the legal process is "perverted beyond its intended purpose" even if legal process is "properly instituted." *Hopper*, 524 F.Supp. at 1041-1042. Meyer abused the judicial process by filing this action with an ulterior motive and using it as a tool of coercion, intimidation, and for political gain. *See id.*

Meyer weakly argues that the instant motion is based only on the fact that Meyer previously alleged that any award obtained will be used for Big Sky employees. (Doc. 31 at 3.) That argument badly misses the mark. Big Sky's motion is based on the totality of Meyer's conduct, which includes the undisputed record evidence demonstrating that Meyer explicitly threatened to file, and then

filed, this lawsuit to coerce and intimidate Big Sky to meet Meyer's demands to do a thing Big Sky could not be regularly compelled to do.

As an attorney, Meyer knew, or should have known, a lawsuit regarding his ski accident could only ever entitle him to the compensatory damages that he personally sustained.  Mont. Code Ann. § 27-1-202.  Under no circumstances could Big Sky ever be compelled to provide additional benefits to its employees in a personal injury lawsuit.  Meyer's leveraging of knowingly weak claims to coerce Big Sky to do some collateral thing perverts the legal process beyond its intended purpose and is an abuse of process.

Big Sky's motion is further based on Meyer's attorney misconduct.  The undisputed record evidence demonstrates that in connection with filing this lawsuit Meyer explicitly threatened to, and then engaged in, an improper public campaign to smear Big Sky in a further effort to coerce and intimidate Big Sky to meet his demands.  *See* Docs. 30-2 at 2; 30-9; 30-10; 30-11; 30-12; 30-14; 30-15; 30-16; 30-17; 30-18; 30-19.  Meyer also communicated directly and extensively with Big Sky employees about this lawsuit, even though he knew Big Sky was represented by counsel, and Meyer misrepresented his interests in the outcome of this litigation.  *See e.g.* Doc. 30-8.

As Meyer admits, he undertook this public smear campaign against Big Sky as part of an improper litigation strategy because he realized that his claims against

Big Sky were weak. *See* Doc. 17 at 3 ("I thought I would have a better chance of winning if I said all the money goes to seasonal employees."); Doc. 27, ¶ 18 (admitting that "he had not seen any published court opinions where a Plaintiff prevailed against a ski resort").

The totality of Meyer's actions demonstrate that Meyer abused the judicial process by threatening to file, and then filing, this action for improper purposes and with ulterior motives and engaging in an improper public campaign to disparage Big Sky. Especially because Meyer is an attorney and an officer of the Court, Meyer's abuse of the judicial process warrants dismissal sanctions. *See Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

## II. Meyer's attorney misconduct warrants sanctions because it prejudices Big Sky and impairs Big Sky's right to a fair trial.

Meyer fails to address or defend his numerous violations of the Montana Rules of Professional Conduct. Meyer instead poses obvious strawman arguments and points the finger at Big Sky.[2] Meyer committed a variety of attorney misconduct in connection with this action that prejudices Big Sky and impairs its right to a fair trial. Sanctions for Meyer's misconduct are warranted.

In its opening brief, Big Sky demonstrated that Meyer violated Rule 4.2, Mont. R. Pro. Cond., by communicating with Big Sky ski patrollers about this matter when Meyer knew that Big Sky was represented by counsel. (Doc. 30 at

---

[2] Meyer now admits that Big Sky timely served its discovery responses. (Doc. 32.)

12-14.) Meyer makes little attempt to refute this, instead arguing that he didn't violate Rule 4.2 by having tea with Middleton. (Doc. 31 at 4.) That argument avoids the issue. It was Meyer's communications with Big Sky ski patrollers about this lawsuit, when Meyer knew Big Sky was represented by counsel, that violated Rule 4.2. (Doc. 30 at 12-14.)

Meyer addresses his violation of Rule 4.2 only in a footnote, making a passing defense that his communications with Big Sky ski patrol occurred before the case was filed. *See* Doc. 31 at 4. But it makes no difference that Meyer's communications occurred before suit was filed. *See e.g Penda Corp. v. STK, LLC*, 2004 WL 1628907, \*\*3-4 (E.D. Pa. 2004); *U.S. v. Guerrerio*, 675 F.Supp. 1430, n. 16 (S.D. N.Y. 1987). Meyer's communications with Big Sky ski patrollers about this lawsuit were improper because Meyer knew that Big Sky was represented by counsel. Mont. R. Pro. Cond. 4.2.

And Meyer's communications with Big Sky ski patrollers were not an isolated incident. After obtaining the uncounseled email disclosure from a ski patroller, Doc. 11-1, Meyer continued to communicate directly with this ski patroller. *See* Ex. 1 (Meyer communications with Nettles). Meyer then communicated with another ski patroller and obtained all of the ski patrollers' email addresses. He then emailed the entire ski patrol about his lawsuit, encouraging them to attend his Big Sky Healthcare Rally and speak to the media

about their benefits.  (Doc. 30-8.)  Meyer did all of this when he knew Big Sky was represented by counsel, in clear violation of Rule 4.2.

Even if Meyer's communications with Big Sky ski patrollers did not violate Rule 4.2 (they did), Meyer violated Rules 4.3 and 4.1, Mont. R. Pro. Cond., by pretending that he was disinterested in the outcome of the litigation and by asserting that "all" money obtained from this lawsuit would be used for Big Sky employees' benefit.  Meyer's about-face regarding who will benefit from any award obtained in this lawsuit is plain.  In his brief in support of motion to amend, Meyer stated: "The remedy I am seeking is money, not heath care for all Big Sky employees." (Doc. 17 at 3.)  Meyer now claims that he has "every intention of setting up a trust to provide healthcare and a raise for Big Sky employees if I am awarded damages." (Doc. 31 at 3.)  Thus, while Meyer's Amended Complaint does not include the assertion that he previously heralded to the public and to Big Sky employees that "[o]ne hundred percent" of any award or settlement will go to Big Sky employees,  *see* Doc. 1-3 at ¶ 3, he continues to make this assertion in an apparent attempt to continue to mislead and obfuscate.   Meyer's flip-flopping representations to Big Sky ski patrollers, this Court, and other third persons are false and misleading.

Meyer offers no resistance regarding his violations of Rule 3.6. The record of those violations is clear and extensive. *See* Doc. 30 at 18-24.[3] Meyer's public campaign against Big Sky and extrajudicial statements regarding this lawsuit were calculated to prejudice Big Sky and threaten Big Sky's right to a fair trial. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991). Such attorney misconduct warrants sanctions. *See Amer. Science and Engineering Inc. v. Autoclear LLC*, 606 F.Supp.2d 617, 625-26 (E.D. Va. 2008).

With respect to his improper discovery requests, Meyer again avoids the issue. The offending discovery requests are Requests for Admission Nos. 1 & 2, both of which pertain to the patently irrelevant issues of Big Sky's benefits program and infrastructure investments. *See* Doc. 30-17. The requests serve no valid purpose. They violate Fed. R. Civ. P. 26(g)(3). That Meyer posted about these improper discovery requests on social media confirms Meyer's improper purposes in serving them. *See* Doc. 30-17.

Meyer's attorney misconduct warrants sanctions because it has and will continue to prejudice Big Sky. Meyer's citation to the Preamble to the Rules of Professional Conduct is inapplicable. Big Sky does not claim that Meyer's violations of the ethical rules, standing alone, "give rise to a cause of action." *See*

---

[3] Contrary to Meyer's representation to the Court that Ms. Eggert "completely recused herself from writing about this case," Doc. 31 at n. 3, Ms. Eggert's resignation letter, produced by Meyer, indicates that as an editor for Outlaw she pushed for the publication of a story regarding Meyer's accident despite her superior's resistance due to her conflict of interest. *See* Ex. 2 (Eggert resignation letter) ("I stand by the newsworthiness of that story.").

Preamble. Big Sky instead appeals to the inherent power of the Court to sanction Meyer for his attorney misconduct and abuse of the judicial process because Meyer's misconduct prejudices Big Sky and compounds the prejudice to Big Sky from Meyer filing this lawsuit for improper purposes. Sanctions for such attorney misconduct and abuse of the judicial process are appropriate and the authority of the Court to impose appropriate sanction is beyond dispute. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Itel*, 791 F.2d at 676.

## **CONCLUSION**

The totality of Meyer's conduct with respect to this lawsuit clearly and irrefutably demonstrates that Meyer filed this lawsuit for improper purposes and with ulterior motives. Meyer's attorney misconduct compounds the prejudice to Big Sky. Meyer's attorney misconduct and abuse of the judicial process warrant dismissal sanctions. Big Sky respectfully requests that the Court grant Big Sky's Motion to Dismiss.

In the alternative, should the Court find that less severe sanctions are warranted, Big Sky respectfully requests the Court impose the following sanctions:

1. Excluding any further evidence of or reference to the uncounseled disclosure obtained by Meyer, Doc. 11-1, and striking any reference to it from Meyer's Amended Complaint, Doc. 27 at ¶14;

2. Striking all impertinent and scurrilous allegations from Meyer's Amended Complaint concerning Big Sky's infrastructure investments and employee benefits programs, Doc. 27 at ¶¶ 19-28, pursuant to Fed. R. Civ. P. 12(f);

3. Prohibiting Meyer from conducting further improper discovery regarding Big Sky's infrastructure investments and employee benefits programs;

4. Ordering Meyer to cease making extrajudicial statements regarding this lawsuit or Big Sky's infrastructure investments or employee benefits programs; and,

5. Awarding appropriate monetary sanctions to Big Sky, including attorneys' fees incurred in preparing this motion, answering the impertinent allegations in Meyer's Complaint and Amended Complaint, objecting to Meyer's improper discovery requests, and preparing Big Sky's Counterclaim.

DATED this 27th day of August, 2018.

                CROWLEY FLECK PLLP

                By:   /s/ Ian McIntosh
                      Ian McIntosh
                      Kelsey Bunkers
                      Mac Morris
                      P.O. Box 10969
                      Bozeman, MT 59719-0969

                *Attorneys for Big Sky Resort*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the following counsel of record, by the means designated below, this 27th day of August, 2018.

| | | |
|---|---|---|
| [ ] | U.S. Mail | John Meyer |
| [ ] | FedEx | P.O. Box 412 |
| [ ] | Hand-Delivery | Bozeman, MT 59771 |
| [ ] | Facsimile | john@cottonwoodlaw.org |
| [X] | ECF | *Attorney for Plaintiff* |

      /s/ Ian McIntosh
CROWLEY FLECK PLLP

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that *Big Sky Resort's Reply in Support of Motion to Dismiss* is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word 2007, is 3,152 words long, excluding the Caption and the Certificates of Service and Compliance.

Dated this 27th day of August, 2018.

CROWLEY FLECK PLLP

      /s/ Ian McIntosh
      Ian McIntosh