Nadine Nadow
MT Bar # 58353967
601 Cheyenne St., #202
Golden, CO 80403
nnadow@gmail.com
(978) 501-7045

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER, | ) |
| | ) Case No. 2:18-CV-0002-BMM |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| BIG SKY RESORT, | ) PLAINTIFF'S RESPONSE TO |
| | ) DEFENDANT BIG SKY |
| Defendant. | ) RESORT'S MOTION FOR |
| | ) SUMMARY JUDGMENT |

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………1
LEGAL BACKGROUND……………………………………………………….1

    A.  Standard of Review…………………………………………………….1


ARGUMENT……………………………………………………………………2

    A.  Summary judgment should be denied because Meyer has not had a fair opportunity to complete Discovery……………………………….2

    B.  Summary judgment should be denied because there are material questions of fact…………………………………………………………..2

CONCLUSION…………………………………………………..

## TABLE OF AUTHORIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242 (1986) …………………….. 1, 2, 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ………………………………….. 1

*Hunt v. Cromartie*, 526 U.S. 541 (1999) ………………………………………….. 1,8

*Kopeikin v. Moonlight Basin Management*, 981 F. Supp. 936 (D. Mont. 2013)
    ……………………………………………………………………………2, 3, 4

*Oberson v. U.S. Dept. of Agriculture, Forest Service,* 514 F.3d 989, 999 (D. Mont.
    2008) ……………………….…………………………………..………….. 4

*Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.,* 144 F. Supp. 3d 1174 (D.
    Mont. 2015)……………………………………………………………..…...4,7

**Statutes**

Fed. R. Civ. P. 56 …………………………………………….………………… 1
Mont. Code Ann. §23-2-702 ……………………………………………………. 4
Mont. Code Ann. §23-3-736….…………………………………………………. 2

# EXHIBITS
[Exhibits Attached to Statement of Disputed Facts]

Exhibit 1 – Deposition Transcript of Meyer

Exhibit 2 – Deposition Transcript of Eggert

Exhibit 3 – Discovery Scheduling Order Doc. 91

Exhibit 4 – Big Sky Resort's Brief in Support of Motion for Summary Judgment

Exhibit 5 – Ski Accident Reports and Witness Statements

Exhibit 6 – Eggert Affidavit

Exhibit 7 – Eggert Letter to Meyer Document 98-4

Exhibit 8 – Email from Nettles to dated November 17, 2017

Exhibit 9 – Meyer Internet Forum Post dated November 17, 2017

## INTRODUCTION

Big Sky Resort's Motion for Summary Judgment must be denied because Plaintiff John Meyer has not had a full opportunity to conduct discovery and there are genuine issues of material fact.

## STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All doubts must be resolved against the movant. *Hunt v. Cromartie*, 526 U.S. 541, 550-555 (1999). "[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury *might* return a verdict in his favor." *Anderson*, 477 U.S. at 257 (emphasis added). Before a court may grant a defendant's motion for summary judgment, a plaintiff must have "had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 250 N.5.

# ARGUMENT

I. <u>Summary judgment should be denied because Meyer has not had a full opportunity to conduct discovery.</u>

Summary judgment should be denied because Meyer has not had a full opportunity to conduct discovery. *Anderson*, 477 U.S. at 250 N.5. Discovery in this case closes February 7, 2020. Dkt. 91 at 2. Meyer has reached out to counsel for Big Sky Resort to arrange for depositions in November. Summary Judgment should be denied.

II. <u>Summary judgment should be denied because there are questions of material fact.</u>

Big Sky Resort argues that it is entitled to summary judgment because the skier responsibility statute requires a skier to accept "all legal responsibility for injury or damage of any kind." Big Sky Brief ("B.S. Brf.") at 13 (citing Mont. Code Ann. §23-3-736(4)). This Court has held that the Montana Skier Responsibility Statutes do not immunize ski area operators from their own negligence. *Kopeikin v. Moonlight Basin Management*, 981 F. Supp. 936, 942 (D. Mont. 2013). "Montana's skier responsibility statutes make clear that the duty of reasonable care owed by a ski area operator to a skier 'must be viewed in the unique context of skiing.'" *Kopeikin,* 90 F. Supp. 3d at 1107 (D. Mont. 2014) (citation omitted).

Big Sky Resort argues that "Chief Judge Christensen recently granted summary judgment to a ski area operator in a case with similar facts." B.S. Brf. at 19 (citing *Kopeikin*). The fact patterns of this case and *Kopeikin* are not similar. The witness in this case stated the accident occurred on the Lower Morning Star (Loop Road) ski run—a green circle, the easiest type of run.



The accident in *Kopeikin* occurred on a black ski run—or most difficult. *Kokeipin*, 90 F.Supp. 3d at 1108. The skier in *Kopeikin* was injured after hitting subsurface rocks below a defunct cat track. 90 F. Supp. 3d at 1104-05. Meyer has not alleged

he hit subsurface rocks. The *Kopeikin* court concluded that the ski area operator had acted consistently with its duty of care because it had previously attempted to fix the cat track. *Id.* at 1108. Big Sky Resort has not indicated it previously attempted to fix the transition between steep slope and the cat track. If Big Sky Resort had marked or attempted to fix the cat track, the accident probably would not have occurred. Meyer Internet Forum Post dated November 17, 2017.

Big Sky Resort is not insulated from liability *just* because the Skier Responsibility Statute *mentions* cat tracks and variation in steepness. Mont. Code Ann. §23-2-702(2)(f) (emphasis added). In *Kopeikin,* the court granted the ski resort summary judgment because the skier did not suddenly and blindly encounter an unmarked cat track. *Kopeikin*, 90 F. Supp. 3d at 1108. In this case, Meyer's complaint alleges he suddenly and blindly encountered the transition from the ski run to the cat track. *See* Dkt. 27, ¶ 51. In *Oberson v. U.S. Dept. of Agriculture, Forest Service,* this Court allowed a case to go to trial and determined "the risk under consideration was not a variation in terrain, but a hazardous condition of the trail which could with reasonable care have been readily eliminated by altering the trail or posting a warning sign." 514 F.3d 989, 999 (D. Mont. 2008). *Oberson* was cited with approval in a case involving dangerous ski terrain at Whitefish Mountain. *Waschle ex rel. Birkhold-Washle v. Winter Sports, Inc.*, 144 F. Supp. 3d 1174, 1181 (D. Mont. 2015) (citing *Oberson*, 514 F.3d at 999) ("ski area operator

violates its duty of reasonable care if it has the ability to eliminate a risk, through specific warnings or otherwise, and fails to do so").

Big Sky Resort's failure to act with reasonable care is underscored by the fact that Meyer and Eggert unknowingly skied into an area that was closed but not marked before Meyer's accident. Deposition Transcript of Meyer at 47:21-24; 112:12-15; 113:18-114:8; Deposition Transcript of Eggert at 56:1-13. Big Sky admits as much in its brief. B.S. Brf. at 25.

Big Sky Resort argues that the transition "does not present a steep or blind drop off as Meyer has alleged." B.S. Brf. at 9. Big Sky has provided evidence in the form of a photo from which a jury might return a verdict in Meyer's favor. *Anderson*, 477 U.S. at 257.

//



The transition from the ski run to the cat track in the photo offered by Big Sky Resort (B.S. Brf. at 7) is not merely a variation in terrain. The abrupt drop is hazardous and blind, as evidenced by the fact that the legs of the person near the edge of the drop are not visible.

Contrary to Big Sky Resort's argument (B.S. Brf. at 20), the abrupt transition was not visible from the ski lift. Eggert Affidavit, ¶ 7. Big Sky Resort attempts to argue that Eggert saw the cat track by taking her deposition out of context. B.S. Brf. at 7. The reason Eggert "definitely" saw the catwalk is because

Eggert fell, walked down the route Meyer skied down, and the catwalk "was directly below my position after I had located my ski and stepped back into it." Testimony Deposition of Eggert at 113:1-4). When Big Sky Resort asked Eggert to describe the transition from the run onto the cat track, she described it as "abrupt. I don't know the exact slope angle, but it's significant. And it goes from the slope straight into a flat plane and then back into the slope." Testimony Deposition of Eggert at 74:18-24.

In *Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.,* this Court held that "a ski area operator violates its duty of reasonable care if it has the ability to eliminate a risk, through specific warnings or otherwise, and fails to do so." *Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.,* 144 F. Supp. 3d 1174, 1181 (D. Mont. 2015). Big Sky Resort's generic warning signs regarding avalanches and early season conditions (B.S. Brf. at 3) did not satisfy its duty to alert skiers of the blind and abrupt hazard through "specific warnings" or attempts to fix the transition. There is a genuine issue of material fact as to whether Big Sky Resort created a variation in the terrain that created a hazardous condition that could have been readily eliminated by altering the trail or posting a warning sign.

Big Sky Resort has also raised an issue of material fact as to whether Meyer's speed was partly responsible for his accident. B.S. Brf. at 15. With no factual support, Big Sky Resort attempts to blame Meyer for the accident because

he was skiing "out of control." B.S. Brf. at 1. During Eggert's deposition, Big Sky Resort asked, "[d]o you agree that Mr. Meyer's negligence contributed to his ski wreck?" Testimony Deposition of Eggert at 102:25-103:2. Eggert answered "No." Testimony Deposition of Eggert at 103:6. Eggert wrote Meyer a letter while he was in the coma telling him he is a "damn good skier." Dkt. 98-4.[1]

Big Sky Resort now offers up the false and unsupported that "Eggert agrees that immediately prior to his wreck, Meyer was skiing 'pretty fast.'" Brf. at 8. During Eggert's deposition, Big Sky Resort asked, "[y]ou agree that Mr. Meyer could have skied slower as he approached the cat track, correct?" Testimony Deposition of Eggert at 105:20-24. Eggert responded, "I don't know how fast he was skiing[.]" Testimony Deposition of Eggert at 105:20-24.

Eggert did not see the accident and the witness' statement says nothing about Meyer's speed. When Big Sky Resort asked about Meyer's speed during his deposition, he stated that his speed did not contribute to his accident. Testimony Deposition of Meyer at 160:15-17. Any question of whether Meyer was skiing within his ability must be resolved against Big Sky Resort. *Hunt,* 526 U.S. at 550-555.

---

[1] Meyer grew up snowboarding and rode in Europe and across the western United States before easily transitioning to skiing. Testimony Deposition of Meyer at 41:4-45:25.

*Plaintiff's Response to Big Sky Resort's Motion for Summary Judgment - 8*

## CONCLUSION[2]

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Big Sky Resort's Motion for Summary Judgment.

Respectfully submitted this 4th day of October, 2019.

>/s/ *Nadine Nadow*
>Nadine Nadow
>601 Cheyenne St., #202
>Golden, CO 80403
>nnadow@gmail.com
>(978) 501-7045
>
>*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on Defendant's counsel via CM/ECF on October 4, 2019:

Ian McIntosh
P.O. Box 10969
Bozeman, MT 59719-0969

*Attorney for Big Sky Resort*

---

[2] McIntosh's complaint about Meyer meeting with Big Sky employees when he knew they were represented is hollow. B.S. Brf. at 23. McIntosh was invited but did not attend or oppose a meeting between Meyer and a Big Sky employee before the lawsuit was filed. Exhibit 2.

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count is 1,842 words, excluding the Caption and Certificates.

Dated this 4th day of October, 2019.

/s/ Nadine Nadow
Nadine Nadow