Ian McIntosh
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433

*Attorneys for Big Sky Resort*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>    Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT; DYNAFIT NORTH AMERICA,<br><br>    Defendants. | CV-18-2-BU-BMM<br><br>**BIG SKY RESORT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## **INTRODUCTION**

Pursuant to the express language of MCA § 23-2-702 and -736, Meyer must accept all responsibility for his injuries, which, it is undisputed, were caused by skiing fast over a variation in steepness or terrain onto a plainly visible catwalk where no prior reported accidents had occurred. Meyer has had ample time to conduct discovery and fails to satisfy the requirements of Fed. R. Civ. P. 56(d).

Summary judgment is mandated under the undisputed facts and applicable law. To rule otherwise would defy the plain language of MCA § 23-2-702 and -736 and render these statutes meaningless.

## ARGUMENT

### I. Meyer fails to satisfy the requirements of Rule 56(d).

Pursuant to Fed.R.Civ.P. 56(d), a party seeking to defer ruling on a motion for summary judgment must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify it opposition." Fed.R.Civ.P. 56(d). A party is not entitled to additional discovery under Rule 56(d) "if it fails diligently to pursue discovery before summary judgment." *Mackey v. Pioneer Nat. Bank,* 867 F.2d 520, 524 (9th Cir.1989).

Under Ninth Circuit law, a party moving under Rule 56(d) must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Center, Inc. v. Fed. Home Loan Mortgage*, 252 F.3d 822, 827 (9th Cir. 2008). "Courts will deny Rule 56[d] discovery applications where the moving party's evidence affirmatively negates the factual issues which the opposing party claims remain controverted." *Volk v. D.A. Davidson Co.*, 816 F.2d 1406, 1416 (9th Cir, 1987). Where a party "only expresse[s] the hope that evidence to contradict the affidavits would transpire at

deposition," Rule 56(d) motions are properly denied. *Continental Mar. v. Pacific Coast Metal Trades Dist. Council,* 817 F.2d 1391, 1395 (9th Cir.1987).

By failing to file an affidavit or declaration, Meyer fails to satisfy the most rudimentary requirement of Rule 56(d). For this reason alone, Meyer's request must be denied. *See* Fed.R.Civ.P. 56(d).

Meyer also failed to diligently pursue discovery. *See Mackey*, 867 F.2d at 524. Meyer initiated this action on December 17, 2017, nearly two years ago. (Doc. 3.) In the intervening 22 months, Meyer did not serve a single deposition notice nor request that Big Sky provide dates for a deposition of Big Sky or any of its employees. Now facing summary judgment, Meyer contends he has not had a full opportunity to conduct discovery because he "seeks to depose Big Sky Resort." *See* Doc. 106 at ¶¶ 48-49, 55, 57. This is untrue. Meyer has not requested deposition dates for Big Sky or any of its employees nor served any deposition notice in this case. Meyer had ample opportunity for discovery but failed to diligently pursue it.

Meyer also fails to identify the "specific facts" he hopes to uncover and makes ***no showing*** that such unidentified facts exist. *See Family Home and Fin. Center*, 252 F.3d at 827. Big Sky has presented evidence that "affirmatively negates the factual issues which [Meyer] claims remain controverted." *See Volk*, 816 F.2d at 1416; *see also* Doc. 106 at ¶¶ 48-49, 55, 57. Each of the facts Meyer

claims are controverted are refuted by sworn affidavits. *See* Doc. 106 at 48-49, 55, 57. Meyer only expresses speculative "hope that evidence to contradict the affidavits would transpire at deposition." *See Continental Mar.*, 817 F.2d at 1395. Under Ninth Circuit law, such speculation is insufficient. *See id.*

Meyer fails to satisfy the requirements of Rule 56(d). The Court should rule on Big Sky's motion for summary judgment without delay.

## II. Summary judgment is mandated because Meyer's injuries result from the inherent dangers and risks of skiing.

Meyer admits that his injuries were caused by the inherent dangers and risks of skiing. Meyer testified: "all I remember is going over a rollover and hitting a cat track." *See* Doc. 106 at ¶ 38; *see also* Doc. 98-1 at 45 (Meyer Depo. at 131:3-7); *id.* at 56-57 ("I contend that I skied over a rollover and hit a Cat track.").

This admission alone is sufficient to warrant summary judgment because under the express language of MCA §§ 23-2-702(f) and -736(4), Meyer must accept all responsibility for injuries resulting from the inherent dangers and risks of skiing that are part of the sport of skiing, which specifically includes: "variations in steepness or terrain, whether natural or the result of slope design, snowmaking, or snow grooming operations, including but not limited to roads, freestyle terrain, ski jumps, catwalks, and other terrain modifications." MCA §§ 23-2-702(f), -736(4).

Variations in steepness and terrain are an inherent danger and risk of skiing that is part of the sport of skiing. MCA § 23-2-702(f). Every single run at every

ski resort has variations in steepness and terrain. Variations in steepness and terrain are integral to the sport of skiing. *See id.*

The variation in steepness and terrain at issue is not the least bit unusual. *See e.g.* Doc. 98-2 at 37-39, 44. The undisputed photos of record show that the variation at issue is a simple, unremarkable transition from the terminus of a black diamond run on to a plainly visible catwalk. *See id.* There are far more extreme variations in steepness and terrain at Big Sky and at virtually every other ski resort, including rocky cliffs, mogul fields, ski jumps, steep rollovers, boulders, trees, tight chutes, downed trees, etcetera. Pursuant to Montana law, it is the ***skier's*** responsibility to navigate such variations in steepness and terrain, to know the range of his ability and to safely ski within the limits of that ability, and to maintain control of speed and course to prevent injury to himself and others. MCA §23-2-736(2).

"Skiing is a sport in which thrill-seeking skiers embrace its inherent dangers and risks. It is a sport that occurs on 'a mighty mountain, with fluctuation in weather and snow conditions that constantly change.'" *Kopeikin v. Moonlight Basin Mgt., LLC*, 90 F. Supp. 3d 1103, 1107 (D. Mont. 2015), *aff'd.* 691 Fed. Appx. 355 (9th Cir. 2017). Skiing "presents an obvious array of dangers to a skier" so that "[f]undamentally, a skier bears much of the responsibility for

avoiding injury to himself, which is a principal that is consistent with Montana law." *Id.*

Totally disregarding the plain and express language of Montana law, Meyer seeks to turn the fundamental principal of skier responsibility on its head. Meyer was skiing fast, on expert terrain, even though, by his own admission and in the opinion of his wife, he was only an intermediate skier. Doc. 106 at ¶¶ 6-7, 25, 39. From far above it, the **catwalk** or **road** at issue was "obvious." Doc. 98-1 at 40-41 (Meyer Depo. at 125:5-10, 126:15-18.). Indeed, the **catwalk** or **road** at issue was visible from the lift. Doc. 106 at ¶ 19. Meyer nonetheless skied fast and headlong over a variation in terrain and onto the cat track, and lost control. *Id.* at ¶ 39. After he hit the cat track, going too fast for his ability, he lost control of his course: "I tried to stay, drive hard into my boots and turn left and got blown out." *Id.*; *see also* Meyer Depo. at 197:14-24.

Under these facts, there is simply no genuine dispute that Meyer's ski wreck and injuries were caused by the ***inherent dangers and risks of skiing***. MCA §§23-2-702(f). The plain language of Montana statutes control. To conclude otherwise would be to render the statutes meaningless and assume that the Montana Legislature passed useless and meaningless legislation. *See Mont. Sports Shooting Ass'n, v. State*, 185 P.3d 1003, 1006 (Mont. 2008). Meyer's claims fail as a matter of law pursuant to the plain and express language of Montana statute.

### III. Even if the Court examines the reasonableness of Big Sky's conduct, summary judgment is warranted.

There is no need to undertake a reasonableness analysis due to the plain language of Montana statute and the undisputed facts. Regardless, Big Sky is entitled to summary judgment.

The proper analysis in this case is to first examine the plain language of the statute to determine if Meyer's injuries result from the inherent dangers and risks of skiing. If they do, "no further interpretation is needed," and Big Sky is entitled to judgment as a matter of law. *See Waschle*, 144 F.Supp.3d 1174, 1178. Only if Meyer's injuries do *not* result from the inherent dangers and risks of skiing is there any need for the Court to engage in a reasonableness analysis. *See id*. If, for example, Meyer's injuries resulted from a problem with the ski lift or from an in-bounds avalanche on a groomed run, the Court would need to engage in a reasonableness analysis. *See* MCA §23-2-702(c), -734. But, here, because there is no genuine dispute that Meyer's injuries resulted from the inherent dangers and risks of skiing, there is no reason to analyze the reasonableness of Big Sky's conduct.

Even engaging in a reasonableness analysis leads to the same result. Meyer admits that cat tracks are critical to Big Sky's operations. (Doc. 106 at ¶ 45.) Meyer also admits that cat tracks are common at ski resorts and that every ski resort he has been to has cat tracks. *Id.* at ¶ 46. Thus, transitions from runs onto

cat tracks are known, inherent, features of ski resorts that all skiers must navigate, and that Meyer expected to navigate.

More critically, Meyer admits that a skier standing at the top of the Highway run "can obviously see" the cat track at issue:

> **Q: So you agree that someone standing at the top of Highway as is shown in Exhibit 24, can obviously see the Cat track. Correct?**
> A: Sure. Yeah.

Doc. 98-1 at 41 (Meyer Depo. at 126:15-18.). Meyer repeatedly admitted that the cat track at the bottom of the Highway run is obvious:

> **Q: And you can clearly see the Cat track at the bottom of Exhibit 24. Correct?**
> A: Yes.
> **Q: It's obvious. Right?**
> A: Not overwhelming. Is it obvious? Yeah. Sure. It's obvious. We'll go with that.

Doc. 98-1 at 40 (Meyer Depo. at 125:5-10). Thus, just as in *Kopeikin*, Meyer "admits that … the cat track could be clearly seen from above." *Kopeikin*, 90 F.Supp.3d at 1108. This admission is fatal to Meyer's claim, even under a reasonableness analysis. *See Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 950 P.2d 748, 755–56 (Mont. 1997).

Conceding the cat track was visible from above, Meyer quibbles about the immaterial fact that some *part* of the cat track was obscured so that a skier could not see *the whole* cat track from above:

> Q: **Mr. Meyer, looking at Exhibit 24, is it your testimony that the Cat track shown in Exhibit 24 is hidden?**
> A: Part of it, yes.
> Q: **Which part of it?**
> A: The part closer to me.
> Q: **Mr. Meyer, a skier standing on the Highway as shown in Exhibit 24 looking down can obviously see that there is a Cat track at the bottom of the run. Correct?**
> A: They wouldn't see the whole Cat track.

Meyer also argues that even if the cat track was visible, *the transition* from the black diamond run onto the cat track was hidden.

These arguments make no sense. By virtue of seeing the cat track from above, Meyer was on notice that a transition from the steeper black diamond run onto the flatter cat track existed. The cat track was obviously less steep than the run. It was thus obvious that a person skiing from the end of Highway onto Loop Road would need to navigate a transition, a variation in steepness and terrain, from the black diamond run onto the cat track.

Just as a person walking from a flat floor onto a set of stairs need not and cannot see the entirety of a first step down, by virtue of being able to see that a set of stairs exists, he is put on notice that a transition from the flat floor onto the stairs exists. The *transition* from a flat floor onto a stair below is not *entirely* visible from above, but we nevertheless expect people to perceive that a transition exists and to act accordingly.

The same is true "on a mighty mountain." *See Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786, 791 (D.Vt. 1951).  Indeed, unlike a person walking in a building, a skier must be more vigilant, given the higher travelling speeds, the changing conditions, and the inherent dangers and risks of skiing.  *See Kopeikin*, 90 F.Supp.3d at 1107 ("the duty of reasonable care owed by a ski area operator to a skier must be viewed in the unique context of skiing").

Meyer's complaint about not seeing *all* of a clearly visible cat track is immaterial.  A skier does not need to see *all* of a tree in order to be on notice that he must navigate around it.  Likewise, a skier may only see the front of a building, but this does not give him license to run into the side of it.

Furthermore, as much as Meyer strains to turn this very ordinary variation in steepness and terrain into something unusually hazardous, the evidence of record does not support his self-serving contentions.  Photographs taken immediately after Meyer's wreck show an unremarkable, gradual transition from the end of the run onto the cat track below:



(Doc. 98-2 at 44.) The transition is also shown to be gradual and unremarkable in side-views of the terrain:



*Big Sky Resort's Reply Brief in Support of Motion for Summary Judgment – 11*

(Doc. 98-2 at 32.)

It is also undisputed that Big Sky warned that Highway was a black diamond run for experts only, and warned repeatedly of unmarked hazards, early season conditions, and to use caution.  Big Sky posted no less than **10** warning signs that Meyer would have encountered between the time he purchased his ticket and when he unloaded the Challenger chairlift for the first time.  *See* Doc. 106 at ¶¶ 3-5, 10, 11, 14, 16, 20.  Meyer encountered a number of these same warning signs on each of his subsequent two runs off Challenger.  *See id.* at ¶¶ 14, 16, 20.  Despite these warnings, Meyer chose to ski fast in early season conditions on a black diamond run that was, at best, at the very limit of his ability.  *See id.* at ¶¶ 6-8, 24-27, 39.

When asked to describe how Meyer was skiing immediately before his wreck, Ms. Eggert testified as follows:

> **Q:     Describe for me how Mr. Meyer was skiing before his wreck where he was injured.**
> A:     He was—
> **Q:     Immediately before.**
> A:     Probably the same as he had been skiing the previous runs, pretty fast.
> …
> **Q:     Did he appear to be in control?**
> A:     There were times he was skiing faster than I would have been given the conditions, but.

(Doc. 106-2 at 18 (Eggert Depo. at 69:6-19)).

In other words, Meyer ignored the warnings that Big Sky posted.  Big Sky warned Meyer of expert terrain, unmarked obstacles, early season conditions, to

use caution, and informed him of his duty to "maintain control of speed and course," to "safely ski within the limits of [his] ability," and to "Always Stay in Control and Be Able to Stop or Avoid Other People or Objects." *See* Doc. 106 at ¶¶ 3-5, 10, 11, 14, 16, 20.  Meyer failed to heed these warnings.

Big Sky also had no reason to believe that a specific warning of this unremarkable and obvious transition was necessary.  It is undisputed that there were no prior similar reported accidents at or near Meyer's wreck in the last 10 years. *See* Doc. 106 at ¶¶ 48-49; *supra* at § I.  Even putting aside the Skier Responsibility Statute, this undermines Meyer's claim that Big Sky had a duty to specifically warn of the plainly visible cat track. *See Oberson v. U.S. Dept. of Agric.*, 514 F.3d 989, 999 (9th Cir. 2008) ("Under Montana law, the duty element of negligence turns primarily on foreseeability.").

Indeed, even outside the context of skiing, under Montana law, "the possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Richardson*, 950 P.2d at 755–56.  In *Richardson*, the Montana Supreme Court affirmed summary judgment in favor of the school-landowner when the plaintiff slipped on a snow-packed path that

"was known and obvious to her" and there was no evidence that the school should have anticipated such injury. *Id.* at 757-58.

The same result is mandated here. Meyer was skiing an expert run designated for expert skiers. Catwalks are common at ski areas and critical to Big Sky's operations, the catwalk at issue was clearly visible from above, and no similar injuries had occurred there in the last 10 years. Big Sky warned Meyer of unmarked obstacles, of the importance of staying in control and skiing within his ability, and to use caution. Thus, even if the Court ignores the Montana Skier Responsibility Act entirely, Big Sky used ordinary care as a matter of law in maintaining its premises in a reasonably safe condition considering the use the property is put to, its setting, location, and other physical characteristics. *See Richardson*, 950 P.2d at 755.[1]

Meyer's effort to compare this case to *Oberson* is unavailing. In *Oberson*, the snowmobiler encountered an absolutely blind hill at night that the U.S. Forest Service ***knew*** was hazardous based upon a wreck that had occurred there only days earlier. *See Oberson*, 311 F.Supp.2d 917, 926-938 (D. Mont. 2004). The Forest Service admitted there was not "another hill on the system with a more abrupt slope that is not posted with a warning sign." *Id.* at 934. The prior accident put the

---

[1] Ms. Nettles' e-mail is inadmissible hearsay, irrelevant, and obtained in violation of the Montana Rule of Professional Conduct 4.2. *See* Doc. 99 at 27-29. Meyer cannot defeat summary judgment by relying on inadmissible evidence. Fed.R.Civ.P. 56(e).

*Big Sky Resort's Reply Brief in Support of Motion for Summary Judgment – 14*

Forest Service on actual notice that "the hill was a hazard due to the inability of southbound riders to see a 10–foot tall groomer with flashing lights atop until reaching the crest of the hill." *Id.* at 959.  The Forest Service had also arbitrarily increased the speed limit on the trail, "mislead[ing] snowmobile operators and creat[ing] false expectations of safety." *Id.* at 941.  Furthermore, the blind hill was on a straight and flat groomed portion of the trial that the Forest Service knew encouraged speed. *Id.* at 941.  In short, the facts of this case present a study in contrast to those in *Oberson*.

Furthermore, the district court's determination in *Oberson* that "only those variations in terrain that are either impossible to eliminate or warn of are 'inherent risks'" conflicts with the plain language of MCA § 23-2-702.  *See id.* at 959.  MCA § 23-2-702 identifies several variations in terrain that could easily be eliminated, but are still defined as inherent risks, including "freestyle terrain, ski jumps, … and other terrain modifications."  MCA §23-2-702(2)(f).  To adopt *Oberson*'s construction of the MCA §23-2-702 would defy the statute's plain and express terms.

//

## **CONCLUSION**

Meyer's injuries result from the inherent dangers and risks of skiing and summary judgment should be granted.

DATED this 15th day of October 2019.

                                 CROWLEY FLECK PLLP

                                 By /s/ *Ian McIntosh*
                                     Ian McIntosh

                                 *Attorneys for Big Sky Resort*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word 2007, is 3,236 words long, excluding the Caption and the Certificates of Service and Compliance.

Dated this 15th day of October 2019.

By /s/ *Ian McIntosh*
Ian McIntosh

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 15th day of October, 2019.

[ ] U.S. Mail            John Meyer
[ ] Hand Delivery        P.O. Box 412
[ ] Facsimile            Bozeman, MT 59771
[ ] FedEx                john@cottonwoodlaw.org
[x] ECF                  *Attorney for Plaintiff*

[ ] U.S. Mail            Brad Condra
[ ] Hand Delivery        Milodragovich, Dale & Steinbrenner, P.C.
[ ] Facsimile            P.O. Box 4947
[ ] FedEx                Missoula, MT 59806-4947
[x] ECF                  bcongra@bigskylawyers.com
                         *Attorney for Salewa USA, LLC*

[ ] U.S. Mail            Nadine O. Nadow
[ ] Hand Delivery        601 Cheyenne St., #2020
[ ] Facsimile            Golden, CO 80403
[ ] FedEx                nnadow@gmail.com
[x] ECF                  *Co-Counsel for Plaintiff*

/s/ *Ian McIntosh*
Ian McIntosh