IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>        Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT,<br><br>        Defendant. | CV 18-2-BU-BMM<br><br><br>ORDER |

## **INTRODUCTION**

Defendant Big Sky Resort (Big Sky) has filed a Motion for Summary Judgment. (Doc. 100.) Plaintiff John Meyer (Meyer) opposes the motion. (Doc. 105.) The Court determines that the motion requires no hearing and for the reasons stated denies Big Sky's motion.

## **DISCUSSION**

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This standard provides that the "mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A court must recognize, however, that the evidence presented by the non-moving party must be "believed" at the summary judgment phase and "all justifiable inferences are to be drawn in his favor." *Id.* at 255. Meyer, as the non-moving party seeking to survive summary judgment, "need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

Big Sky raises three separate arguments in support of it motion. Big Sky argues first that Meyer's alleged injuries arise from the inherent dangers and risks of skiing enumerated in Montana's skier responsibility statute. (Doc. 100 at 13, *citing* Mont. Code Ann. § 23-2-702.) Big Sky next contends that it acted reasonably under the circumstances through the posting of warning signs. *Id.* at 19. Finally, Big Sky claims that Meyer's claims rely, in part, on groundless allegations regarding ski patrol supplies, working conditions, and closed area that prove irrelevant to Meyer's cause of action. *Id.* at 21. The Court generally agrees with Big Sky, but does not believe the argument warrants summary judgment in favor of Big Sky and will not address it in this order.

## I. Montana's Skier Responsibility Statute.

The Court must apply Montana substantive law in this diversity action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). Big Sky argues that Montana's skier responsibility statute requires a skier to accept "all legal responsibility for injury or

damage of any kind" that results from the inherent dangers and risks of skiing. (Doc. 99 at 13, *citing* Mont. Code Ann. § 23-2-736(4). The Montana statute defines these inherent dangers and risks to include "variations in steepness or terrain," such as "roads, freestyle terrain, ski jumps, catwalks, and other terrain modifications." *Id.* § 23-2-702(2)(f). Big Sky contends that the statute imposes upon Meyer the obligation to "know the range" of his ability and the duty to "maintain control of speed and course" to prevent injury to himself. (Doc. 99 at 13, *citing* Mont. Code Ann. § 23-2-736(2).

Big Sky claims that it is undisputed that it posted the language of the Montana statute at its ticket window for all skiers to see. (Doc. 98-2 at 2.) Meyer claims that he did not purchase his ticket from the window. He alleges instead that he obtained his ticket from a booth in a tent as part of a promotional campaign in exchange for his donation of canned food. (Doc. 106 at 4.) Big Sky suggests nevertheless that Meyer easily could have observed the cat track at issue from the Challenger Lift. (Doc. 99 at 10-11.) Meyer disputes this point as he claims not to have seen this view of the cat track while riding on the chairlift ride. (Doc. 106 at 7-8.)

Big Sky further contends that a sign that it displayed at the bottom of the Challenger Lift satisfied its duty under Montana's skier responsibility statute to provide general warnings of unmarked hazards. *Id.* at 3. The sign warned skiers

3

that the lift provided access "[m]ost [d]ifficult" and [e]xperts [o]nly" terrain. The sign further contained a large "WARNING!" to skiers that avalanches and moving snow represent "inherent risks" on and below the terrain accessed by the Challenger Lift. *Id.* This approach may work when the foreseeability of harm from the specific hazard in question would be apparent to the skier. Meyer alleges, however, that Big Sky failed to mark the cat track where Meyer crashed. Meyer further claims that he and his partner unknowingly skied into an area that remained closed to skiers, but Big Sky had failed to mark this closure before Meyer's accident. (Doc. 105 at 5.)

More importantly, Big Sky seems to suggest that a court's only role in ski area liability cases involves inquiry into whether a plaintiff's injuries resulted from a collision with a particular object that appears on the statutory lists of inherent risks of skiing. The district court *Kopeikin v. Moonlight Basin Management, LLC*, 981 F. Supp. 2d 936, 945 (D. Mont. 2013), noted, in denying a motion to dismiss, that "such application would render absurd results and render the statute unconstitutional." The Court agrees. The Montana legislature's action in listing "catwalks" among the inherent dangers of skiing does not absolve a ski area from liability in all cases when a skier, such as Meyer, suffers an injury associated with a fall on a catwalk. This application would render unconstitutional Montana's skier responsibility statute. *Kopeikin*, 981 F. Supp. 2d, at 945. The Court instead will

review the reasonableness of Big Sky's actions in this matter in conjunction with the language in Montana's skier responsibility statute. Mont. Code Ann. § 23-2-733.

## II. The Reasonableness of Big Sky's Effort to Notify Skiers of Potential Hazards.

Big Sky points to the decision in *Kopeikin v. Moonlight Basin Management*, LLC, 90 F. Supp. 3d 1103 (D. Mont. 2015), as support for the reasonableness of its conduct. The skier in *Kopeikin* suffered injuries that resulted from a crash when he encountered a cat track that allegedly obscured the terrain below it, including a group of unmarked rocks. *Id.* at 1105. The skier encountered these obstacles on a run named Elkhorn designated with a black diamond for "most difficult." *Id.* Plainly visible grass and rocks could be seen poking through the snow on the side of the run. *Id.* The skier testified that he "would not have fallen because of the cat track," but fell because his "skis hit rocks." *Id.*

The district court initially rejected the ski area's argument presented in a motion to dismiss that a court's only role in ski area liability cases involves inquiry into whether a plaintiff's injuries resulted from a collision with a particular object appearing on the statutory lists of inherent risks of skiing. *Id.* at 1107, *citing Kopeikin*, 981 F. Supp. 2d at 945. The district court eventually granted summary judgment to the ski area, however, based upon its determination that the ski area had acted consistent with its duty of reasonable care as a ski area operator.

*Kopeikin*, 90. F. Supp. 3d at 1108. The district court cited the ski area's actions in warning generally of unmarked hazards, posting multiple signs designating the difficulty of the run on which the skier had been injured, and taking steps to remove the cat track and return the slope to its normal condition. *Id.* The injured skier had not "suddenly and blindly encounter[ed] an unmarked cat track." *Id.* The skier instead admitted that the cat track "could be seen clearly from above." *Id.* And finally, the rocks with which the skier had collided, "like all of the rocks on the Elkhorn run, were naturally occurring." *Id.*

By contrast, Meyer alleges that he suddenly and blindly encountered an unmarked cat track that "was not obvious at all." (Doc. 106 at 11.) Meyer claims that Big Sky failed to mark the cat track because its ski patrollers ran out of signs to mark hazards rather than any decision by Big Sky that the presence of the cat track did not warrant any warning signs. *Id.* at 17-18. Meyer further alleges that the cat track had not been naturally occurring. Ski area operators that have altered the natural landscape "have a duty of care to warn of such man-made hazards." *Solis v. Kirkwood Resort Co.*, 94 Cal.App.4th 354, 114 Cal. Rptr. 2d 265, 272 (2001). The mere fact that Montana's skier responsibility statute lists "catwalks" as "one of those dangers or conditions that are part of the sport of skiing" does not necessarily shield Big Sky from any potential liability in this case. Mont. Code Ann. § 23-2-736(2)(f); *Kopeikin*, 981 F. Supp. 2d at 945.

6

Cat tracks represent an alteration to the natural environment that differs in kind from natural hazards, such as partially covered rocks in the ski run, *Kopeikin*, 90 F.Supp.3d at 1108, or a snow-covered tree stump in the middle of a run, *Wright v. Mt. Mansfield Lift, Inc.*, 96 F. Supp. 786, 790 (D. Vt. 1951). A ski area operator may violate its duty of reasonable care if it has the ability to eliminate a risk, through specific warnings or otherwise, and fails to do so. *Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.*, 144 F. Supp. 3d 1174, 1181 (D. Mont. 2015) (citing *Oberson v. U.S. Dep't of Agr.*, 514 F.3d 989, 999 (9th Cir. 2008)).

Based on the evidence presented, a reasonable juror could find either that Meyer would have heeded warning flags and thereby prevented his injury, or that a warning would not have changed Meyer's behavior. *See Hoar v. Great E. Resort*, 506 S.E.2d 777, 786 (Vt. 1998). The Vermont Supreme Court concluded in *Hoar* that the injured skier's inability to testify as to whether a warning would have altered his behavior allowed a jury to reach a verdict "based upon reasonable inferences drawn from the facts." *Id.* A genuine issue of material fact remains as to whether Big Sky's failure to post warning signs or take other preventative measures caused Meyer's injuries. *See Graven v. Vail Assocs., Inc.*, 909 P.2d 514, 520–21 (Colo.1995) (en banc). The Colorado Supreme Court reached a similar conclusion in *Graven* where a factual dispute existed as to whether slush, trees, a

7

ravine, or the failure to post warning signs caused the skier's to fall into a ravine and suffer resulting injuries. *Id.*

Finally, a decision from the district court in *Oberson*, 514 F.3d at 1000, supports this approach. The snowmobiler in *Oberson* suffered a serious injury after being hit in the head by a snowmobile below an unmarked, steep drop in a designated snowmobile trail. *Id.* at 994-95. The district court rejected the Forest Service's argument that the drop represented a "variation in terrain" enumerated under the inherent risk provision of Montana's snowmobile statutes. *Id.* at 999. The district court instead characterized the risk as "a hazardous condition of the trail" that readily could have been eliminated with reasonable care by "posting a warning sign" among other actions. *Id.* The district court found from the proof presented at trial that a warning sign would have changed the snowmobiler's expectations and informed them of steeper grade. *Id.* at 1000. A jury likewise "might" return a verdict in Meyer's favor when it resolves these disputes. *Anderson*, 477 U.S. at 257.

Meyer's evidence as the non-moving party must be "believed" at this stage of the proceedings and the Court must draw all justifiable inferences in his favor. *Id.* at 255. Meyer claims that the lack of warning signs for the cat track caused his accident. He further alleges that he had been skiing fast, but under control. Meyer testified that he "was comfortable riding black diamond" terrain. (Doc. 106, at 6.)

8

A jury must decide whether the any undue risk posed by the cat track where Meyer crashed could have been abated through "posting a warning sign." The jury must evaluate this risk in conjunction with Meyer's obligation to "obey all posted or other warnings and instructions of the ski area operator." Mont. Code Ann. § 23-2-736(2)(d). Big Sky contends that Meyer ignored these posted warning, skied at speeds that exceeded his ability, and that it took reasonable steps to minimize the transition from the slope to the cat track. A jury ultimately will decide these questions. *Waschle*, 144 F. Supp. 3d at 1183. A genuine issue of material fact exists regarding Meyer's knowledge of the risk posed by the cat track and the effectiveness of Big Sky posting warnings. These disputes preclude summary judgment. *Anderson*, 477 U.S. at 257.

### III. Other Issues.

The Court closes with a final word on this matter. The Court recommended in its November 27, 2018, Order that Meyer retain counsel to represent him. (Doc. 48 at 5.) Nadine O. Nadow filed a Notice of Appearance on behalf of, and as co-counsel to, Meyer on May 27, 2019. (Doc. 85.) It appears that Ms. Nadow filed a number of documents after her notice of appearance. (Doc. 92, 95, 100, 101, 105, 106, and 113.) Ms. Nadow filed a motion to withdraw as counsel, to which Meyer agreed, on November 12, 2019. (Doc. 113). The Court granted Ms. Nadow's motion to withdraw. (Doc. 114) Meyer acknowledged in his consent to Ms.

9

Nadow's motion to withdraw his obligation "to immediately appear *pro se* or retain substitute counsel." (Doc. 113-1, at 1.)

No substitute counsel has appeared to date on behalf of Meyer. The Court acknowledges the wisdom of the United States Supreme Court that "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation." *Kay v. Ehrler*, 499 U.S. 432, 437 (1991). The Court has observed numerous missteps committed by Meyer during the course of his self-representation in this contested litigation. An attorney proceeding *pro se* proves "deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witness, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id*. The Court anticipates that multiple "unforeseen developments" will arise in the courtroom during the trial of this matter. The Court again urges Meyer to obtain the services of a qualified trial counsel to complete this case. Meyer proceeding *pro se* would lack the agency relationship that the word attorney assumes. *Id*. at 435.

**ORDER**

Accordingly**, IT IS ORDERED** that Big Sky's Motion for Summary Judgment (Doc. 100) is **DENIED**.

DATED this 22nd day of November, 2019.

/s/ Brian Morris
Brian Morris
United States District Court Judge