John Meyer, MT Bar No. 11206
P.O Box 412
Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>　　　　Plaintiff,<br>vs.<br><br>BIG SKY RESORT,<br><br>　　　　Defendant. | Case No. 2:18-CV-0002-BMM<br><br>PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 60 |

## INTRODUCTION

On December 11, 2015, Plaintiff John Meyer suffered a life-threatening ski accident at Big Sky Resort that left him in a coma for more than one week with several broken ribs and plated bones. Meyer spent approximately one month between the Billings Clinic and Missoula Community Hospital.

After the accident, Meyer received an email from a volunteer ski patroller stating Big Sky Resort runs out of signs to mark terrain. ECF No. 11-1. The day of Meyer's accident, he and his ski partner found themselves in an area that was closed but not marked. Testimony Deposition of Eggert at 56:1-13; Testimony Deposition of Meyer at 47:21-24; 112:12-15; 113:18-114:8. Meyer later skied through the black diamond section of the "Highway" ski run into an area of the run that is blue in difficulty. *See* Dixon Aff. at 1-2, ¶8.  Meyer skied over a significant and abrupt drop that should have been marked. ECF No. 27, ¶4. Meyer skied over the hazardous terrain that led to a flat cat track. ECF No. 27, ¶5. He was severely injured.



"The courts of this country should not be the places where resolution of disputes begins. They should be the places where the disputes end after alternative methods of resolving disputes have been considered and tried."

Justice Sandra Day O'Connor

Meyer, a Bozeman attorney that has dedicated his entire legal career to serving the public interest, tried to avoid filing this lawsuit by meeting with Taylor Middleton, the General Manager of Big Sky Resort, and offering to forego legal action if the resort purchased healthcare for its seasonal employees. ECF No. 27, ¶15. Ian McIntosh, one of three attorneys working for Big Sky on this case, was

invited, but did not join or oppose Meyer and Middleton meeting. ECF No. 106-8. During their first meeting at Zocalo Café, Middleton did some rough math and determined a copper health insurance plan for seasonal employees would cost Big Sky Resort approximately $4 million per year. *See* ECF No. 27 at 4, ¶20. Middleton figured providing health insurance to seasonal employees would increase the cost of a lift ticket by $10. ECF No. 27 at 4, ¶20. Ultimately, Big Sky decided to forego purchasing health care for its employees.

Meyer filed this lawsuit against Big Sky and alleged that he tried to avoid this litigation and stated any settlement or jury award would be used to purchase health care for seasonal employees and a pay raise for the ski patrol. ECF No. 1-3 at ¶3. Big Sky Resort answered Meyer's lawsuit by claiming that he abused the legal process by bringing this lawsuit and claiming all proceeds will go towards providing its employees with health care. *See* ECF No. 5 at 7, ¶5.

In addition to filing a counterclaim against Meyer, Big Sky engaged in other malicious litigation strategies. It sought to depose Meyer immediately before and after his wedding and told him if he did not want to be deposed he could simply dismiss the lawsuit. Exhibit 1 at 1. Big Sky opposed a three-week extension to file a Summary Judgment response when Meyer's wife was having twins and his attorney was getting married. ECF No. 100. At one point, Big Sky offered to drop its counter lawsuit against Meyer if he dropped his meritorious lawsuit and paid

Big Sky $5,000. Exhibit 1 at 3. At another point, Big Sky offered to dismiss its counterclaim against Meyer if he dismissed his lawsuit against Big Sky, with no money being exchanged. Exhibit 1 at 2.[1]

Meyer retained the former Accident Investigation Supervisor at Big Sky Resort as an expert. Evi Dixon will testify that the area where Meyer was injured should have been marked. Dixon Affidavit at 3, ¶ 19.[2] After Dixon was retained as an expert, Meyer reached out to McIntosh in another effort to settle the case. Exhibit 1 at 5-6. McIntosh told Meyer that he has a "great" case and that he would bring Meyer's offer to Big Sky and its insurer. Exhibit 1 at 8. A day later, McIntosh said that Big Sky would dismiss its counterclaim against Meyer if he dismissed his meritorious lawsuit and paid Big Sky $55,000. Exhibit 1 at 9. It is unclear whether McIntosh ever brought the settlement offer to Big Sky's insurer.

---

[1] "The hallmark of a [Strategic Lawsuit Against Public Participation] suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation… [b]ecause winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, and requests for sanctions) are inadequate to counter SLAPPs." *U.S. ex rel. Newsham v. Lockheed Missles & Space Co.*, 190 F.3d 963, 970-71 (9th Cir. 1999) (citations omitted).

[2] McIntosh claimed that information contained within the Dixon affidavit is privileged and should be redacted. Exhibit 1 at 8. Meyer asked McIntosh for cases supporting his contention (Exhibit 1 at 5), but McIntosh never responded.

This Court denied Big Sky's motion for summary judgment and determined that "[a] jury must decide whether the any undue risk posed by the cat track where Meyer crashed could have been abated through 'posting a warning sign.'" ECF No. 115 at 9. The area should have been posted according to the former Supervisor of the Big Sky Resort Accident Investigation team. Dixon Affidavit at 3, ¶ 19. Before the case was filed, Meyer wrote on a public forum, "The day of my accident I was skiing fast. No question about it. But if there had been a fence or markers in front of the cat track I hit I never would have been skiing that fast." Testimony Deposition of John Meyer, 151:11-22. In short, Meyer has a valid case that will be decided by a jury.

The Montana Supreme Court has held that "pressing valid legal claims to their regular conclusion, even with an ulterior motive, does not constitute an abuse of process." *Brault v. Smith*, 209 Mont. 21, 29; 679 P.2d 236, 240 (Mont. 1984). Even though Meyer is pressing valid legal claims to their regular conclusion, Big Sky continues to press its frivolous abuse of process counterclaim. Montana Supreme Court Justices predicted and warned of Big Sky's behavior in this case:

> Plaintiffs, who often have limited means, must now consider not only whether they have a reasonable expectation of recovering damages; they must assess whether they can afford to defend an abuse of process suit if they are unsuccessful.

*Siepel v. Olympic Coast Investments*, 344 Mont. 415, 426 ¶39 (Mont. 2008) (J. Warner and J. Rice dissenting). At one point in this litigation, Big Sky's tactics

5

forced Meyer to entertain thoughts of bankruptcy and suicide. ECF. No. 17-1 at 4-5. Instead of putting a gun in his mouth, Meyer filed a bar complaint against Ian McIntosh, lead attorney for Big Sky.

Pursuant to Federal Rule of Civil Procedure 60, Meyer now respectfully requests that this Court reconsider its order (ECF No. 104 at 5) dismissing the portion of his answer to Big Sky's counterclaim designated as a counterclaim pursuant to Fed. R. Civ. P. 7(a)(3). Reconsideration is appropriate because Big Sky continues to misuse its frivolous counterclaim to demand Meyer pay for filing this meritorious lawsuit. Exhibit 1 at 9.[3] Reconsideration is also appropriate because Meyer explained during his deposition that he cannot secure representation because of Big Sky's counterclaim. Deposition Transcript of Meyer at 37:6-14; Exhibit 1 at 5.

Nadine Nadow, Meyer's former attorney, withdrew because she lives in Colorado, this was the first lawsuit she has ever worked on, and she has completed the limited scope representation to which she and Meyer agreed. McIntosh opposed requesting a joint status conference with the Court so that Meyer can request counsel because "this is not a criminal case" and Meyer is "not entitled to

---

[3] Meyer's latest settlement offer seeks compensation for Big Sky's abusive litigation strategies. Exhibit 1 at 6-7. Reconsideration of the order dismissing the portion of Meyer's answer to Big Sky's counterclaim designated as a counterclaim will allow a jury to decide whether Big Sky abused the legal process by filing the abuse of process counterclaim.

have counsel." Exhibit 1 at 4. This Court's scheduling order allows the parties to request an interim status conference. ECF No. 91 at 5, ¶10. Local rule 83.6(b)(1), which goes into effect December 1, 2019, states "Counsel may be appointed on a pro se party's motion or on the court's own motion with the party's consent." Meyer will gratefully accept appointment of counsel by this Court or will make a motion if the Court so desires.

## STANDARD OF REVIEW

By empowering a district court to vacate its own order "when the equities so demand," *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998), Federal Rule of Civil Procedure 60 "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Delay v. Gordon*, 475 F.3d 1039, 1045 (9th Cir.2007) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure§ 2851 (2d ed. 1995)). Therefore, upon "just terms, the court may relieve a party ... from a final judgment, order, or proceeding" based on, inter alia: "excusable neglect;" "fraud ... misrepresentation, or misconduct;" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(l), (3), (6).

To prevail under the misrepresentation, misconduct, or fraud provision of Rule 60, "the moving party must establish that ... the conduct complained of

prevented the moving party from fully and fairly presenting the case." *See In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404-05 (9th Cir. 1987). "Excusable neglect encompass[ es] ... omissions caused by carelessness and, as its name suggests, includes cases of negligence." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (alteration in original) (internal citations omitted). When a party argues for relief based on his "excusable neglect" under Rule 60(b)(l), "the court must consider all relevant circumstances." *MD. by and through Doe v. Newport-Mesa Sch.*, 840 F.3d 640, 642 (9th Cir. 2016) (per curiam) (citations and internal quotation marks omitted).

To decide whether neglect is excusable, district courts should explicitly use the *Pioneer-Briones* framework for analysis. *Lemoge*, 587 F.3d at 1192. The equitable *Pioneer-Briones* analysis requires a district court to examine "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id. (quoting Bateman v. US. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000)). Furthermore, while discussion and analysis under the *Pioneer-Briones* framework is required, "the district court may consider [] the factors without discussing how much weight it gives to each." *Newport-Mesa Sch.*, 840 F.3d at 643. Additionally, though not an explicit *Pioneer-Briones* factor, prejudice to the movant may be "one of the 'relevant

circumstances' that should be considered when evaluating excusable neglect." *Lemoge*, 587 F.3d at 1195.

## ARGUMENT

I. **Reconsideration is appropriate because Big Sky's frivolous abuse of process counterclaim is preventing Meyer from fully and fairly presenting his case.**

Meyer explained during his deposition that Big Sky's abuse of process counterclaim is preventing him from securing counsel. Meyer testified that he had "given up" on trying to retain experienced counsel "[b]ecause I just – I don't think it is going to be fruitful given that Big Sky has filed a counterclaim against me." Deposition Transcript of Meyer at 37: 6-14. Judge Christensen recently granted Meyer's Motion for Reconsideration after he argued that another defendant's misconduct prevented him from securing counsel. *Meyer v. UnitedHealthCare Insurance Company*, 2019 WL 5550338 (D. Mont. Oct. 28, 2019). Big Sky's abuse of process counterclaim is preventing Meyer from fully and fairly presenting his case because he is not able to secure counsel. *See In re M/V Peacock on Complaint of Edwards*, 809 F.2d at 1404-05.

II. **Reconsideration is appropriate because Meyer's failure to include the abuse of process counterclaim as part of his original answer is excusable neglect.**

Reconsideration is appropriate when all relevant circumstances are considered.

Reconsideration will not cause Big Sky to suffer any prejudice; it will not cause delay; any delay can be attributed to Big Sky's continuous attempts to misuse its frivolous counterclaim; and Meyer has acted in good faith. Meyer is facing prejudice because he cannot secure counsel because of Big Sky's counterclaim.

First, Big Sky will not suffer any prejudice because it continues to use its frivolous counterclaim in bad faith to demand that Meyer pay for bringing a meritorious lawsuit as part of a settlement. Exhibit 1 at 9. Second, reconsideration will not cause delay because Big Sky continues to delay meaningful settlement negotiations by improperly relying on the frivolous counterclaim. Exhibit 1 at 9. Third, reconsideration will behoove the parties because it will allow Meyer to retain counsel that can seek damages for Big Sky's abuse of process. Meyer has not delayed requesting reconsideration because Big Sky continues to demand that Meyer pay for filing a meritorious lawsuit. Exhibit 1 at 9.  Meyer has acted in good faith by requesting reconsideration, which will facilitate him securing counsel. Prejudice to Meyer because he is unable to secure counsel because of the frivolous abuse of process counterclaim is "one of the 'relevant circumstances' that should be considered when evaluating excusable neglect." *Lemoge*, 587 F.3d at 1195.

"[W]hether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Briones v. Riviera Hotel & Casino*, 167 F.3d 379, 382 (9th Cir. 1997) (citation

omitted). Taking into account all of the relevant circumstances in this case, reconsideration is appropriate.

### III. The extraordinary circumstances of this case merit reconsideration.

Reconsideration is appropriate because Big Sky continues to engage in misconduct by attempting to leverage the frivolous abuse of process counterclaim to force Meyer to drop his meritorious lawsuit and pay $55,000 to settle this lawsuit. Exhibit 1 at 9. Although couched in broad terms, subparagraph (6) of Rule 60 requires a showing that the grounds justifying relief are extraordinary. *Twentieth Century—Fox Film Corp. v. Dunnaho*, 637 F.2d 1338, 1341 (9th Cir. 1981). Big Sky Resort has acknowledged that Meyer has a "great" case, but continues to ignore the holding of *Brault* that a plaintiff does not abuse the legal process by filing a meritorious lawsuit. 209 Mont. at 29; 679 P.2d at 240.

The Nevada Supreme Court has distinguished between cases that are legitimately filed and those that are improperly used for the ulterior purpose of coercing settlement. *Dutt v. Kemp*, 894 P.2d 354, 360 (Nev. 1995) (overruled on other grounds by *LaMantia v. Redisi*, 38 P. 3d 877, 880 (Nev. 2002). The district of Nevada held that "abusive measures" such as "minimal settlement offers" should be considered in determining whether the tort of abuse of process has been adequately alleged. *Rashidi v. Albright,* 818 F. Supp. 1354, 1359 (D. Nev. 1993).

Big Sky's continued use of the frivolous abuse of process counterclaim to leverage settlement is an abuse of process. *Id*. Reconsideration is appropriate.

## CONCLUSION

For the foregoing reasons, Meyer respectfully requests that the Court reconsider its order and allow Meyer's answer to Big Sky's counterclaim that alleges Big Sky is abusing the legal process to proceed.

Respectfully submitted this 30th day of November, 2019.

<u>/s/ John Meyer</u>
JOHN MEYER

*Attorney pro se*

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this brief has been served on all registered counsel via the Court's CM/ECF System.

/s/John Meyer<br>JOHN MEYER

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and quoted, indented material; and the word count calculated by Microsoft Word for Macintosh is 2,609 words, excluding the caption, tables of contents and authorities, certificate of service, and certificate of compliance.