Ian McIntosh
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433
*Attorneys for Big Sky Resort*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>                Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT,<br><br>                Defendants. | CV-18-2-BU-BMM<br><br>**BIG SKY'S BRIEF IN SUPPORT OF MOTION IN LIMINE** |

# TABLE OF CONTENTS

**BACKGROUND** ...................................................................................1

**LEGAL STANDARD** ..........................................................................2

**ARGUMENT** ........................................................................................2

1. Evidence or argument concerning Ashley Nettles' emails with Meyer should be excluded. .....................................................................................3

2. Evidence or argument concerning any other ski accidents at Big Sky should be excluded. .....................................................................................5

3. Evidence or argument concerning an alleged lack of ski patrollers should be excluded. ...........................................................................................6

4. Evidence or argument concerning ski patrol allegedly running out of signs, gates, fences, or other safety equipment should be excluded.........................8

5. Evidence or argument that Meyer was skiing on a closed run on the run before Meyer was injured should be excluded. ...............................................9

6. Evidence or argument relating to privileged information possessed by Evi Dixon, a former supervisor at Big Sky, should be excluded. .......................10

7. Information or opinion testimony by Plaintiff's expert Smith that was not disclosed in Smith's expert report should be excluded. ...............................11

8. Evidence or argument concerning lost future income or Meyer's future medical care and expenses should be excluded.............................................14

9. Any opinion testimony by Meyer or Eggert as to whether the Cat Track should have been marked, what Meyer would have done had the Cat Track been marked, and whether Big Sky was negligent should be excluded........16

10. Evidence or documents not disclosed in discovery should be excluded in accordance with FRCP 37(c)(1). ..................................................................21

**CONCLUSION**......................................................................................22

**CERTIFICATE OF COMPLIANCE** .................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Zurich Ins. Co. v. Mont. Thirteenth Jud. Dist. Ct.*, 280 P.3d 240 (Mont. 2012) ............................................................................ 10, 11

*Brodit v. Cambra*, 350 F.3d 985 (9th Cir. 2003) (Berzon, J., dissenting) ................2

*Callister v. Snowbird Corp.*, 337 P.3d 1044 (Utah 2014) ........................................19

*Chapman v. Mazda Motor of Am., Inc.*, 7 F.Supp.2d 1123 (D.Mont. 1998) ............6

*Compania Administradora v. Titan Intern, Inc.*, 533 F.3d 555 (7th Cir. 2008) ......17

*Dayberry v. City of E. Helena*, 80 P.3d 1218 (Mont. 2003) ............................. 19, 20

*Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296 (D. Nev. 1998) .............................12

*Ficek v. Kolberg-Pioneer, Inc.*, 2011 WL 1316801 at *1 (D. Mont. 2011) ..............2

*Frisnegger v. Gibson*, 598 P.2d 574 (Mont. 1979) ..................................................15

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) ............................................ 10, 11

*Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011) ....12

*Hammond v. City of Junction City, Kansas*, 167 F.Supp.2d 1271 (D. Kan. 2001) ...5

*Highland Capital Mgmt. v. Schneider,* 551 F.Supp.2d 173 (S.D.N.Y. 2008) ...........2

*Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008) ...21

*Ibey v. Universal Ins. Co.*, 2013 WL 4433796, at *3 (D. Mont. Aug. 16, 2013) .. 13, 14, 15

*In re Coordinated Pretrail Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d at1355, 1361 (9th Cir. 1981) ............................................... 10, 11

*Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258 (Mont. 2005) ...........10

*Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848 (10th Cir. 1996) ...................................19

*Kloepfer v. Honda Motor Co.*, 898 F.2d 1452 (10th Cir. 1990) .............................18

*Kuiper v. Goodyear Tire & Rubber Co.*, 673 P.2d 1208 (Mont. 1983) ....................6

*Laslovich v. State Farm Fire and Cas. Co.*, 307 F.R.D. 533 (D. Mont. 2015) ................................................................. 13, 14, 15

*M.W. v. Ford Motor Co.*, 2016 WL 7220107, **9-10 (M.D. Fla. April, 27, 2016) 18

*Malinski v. BNSF Railway Co.*, 2017 WL 1278671, *2 ................................. 17, 19

*Messenger v. Bucyrus-Erie Co.*, 507 F.Supp. 41 (W.D. Pa. 1980) ........................18

*Moralli v. Lake County*, 839 P.2d 1287 (Mont. 1992) ..................................... 15, 16

*Not Afraid v. State*, 362 P.3d 71 (Mont. 2015) ......................................................19

*Oberson v. U.S*, 311 F.Supp.2d 917 (D.Mont. 2004) .............................................15

*Obrien v. Ski Sundown, Inc.*, 2003 WL 1228070, *2 (Conn. Feb. 7, 2003) ............19

*Robertus v. Farmers Union Mut. Ins. Co.*, 189 P.3d 582 (Mont. 2008) ........... 15, 16

*Scanton Prod. Inc. v Bobrick Washroom Equip. Inc.*, 190 F.Supp.3d 419 (M.D. Pa. 2016) ..........................................................................4

*Simpson v. New Stevens, LLC*, 2008 WL 5207314 (Wash. App. Dec. 15, 2008) ...19

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) ...............................2
*U.S. v. Espinoza-Baza*, 647 F.3d 1182 (9th Cir. 2011)...............................................3
*U.S. v. Sierra Pac. Ind.*, 857 F.Supp.2d 975 (E.D. Cal. 2011) ..................................4
*Unigard Sec. Ins. Co. v. Lakewood Engr. & Mfg. Corp.*, 982 F.2d 363
    (9th Cir. 1992)......................................................................................................2
*Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993)................... 18, 20
*Wilderness Development LLC v. Hash*, 606 F.Supp.2d 1275 (D. Mont. 2009) 18, 20
*Willink v. Boyne*, 987 F.Supp.2d 1082, 1084 (D.Mont. 2013) ........................ 18, 19
*Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10 (1st Cir. 2001)..................18
*Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101
    (9th Cir. 2001) ............................................................... 14, 15, 16, 21

**Statutes**

Mont. Code Ann. § 27-1-203 ............................................................... 15, 16

**Rules**

Fed. R. Civ. P. 26 ................................................................................ passim
Fed. R. Civ. P. 37 ............................................................... 14, 15, 16, 21
Fed. R. Evid. 402 ............................................................................... passim
Fed. R. Evid. 403 ............................................................................... passim
Fed. R. Evid. 501 ............................................................................... 10, 11
Fed. R. Evid. 602 ............................................................................... passim
Fed. R. Evid. 701 ............................................................................... 17, 21
Fed. R. Evid. 702 ...............................................................................17
Fed. R. Evid. 801 ...............................................................................4
Fed. R. Evid. 802 ...............................................................................4, 5
Montana Rule of Professional Conduct 4.2 ..................................... 3, 4, 5

## <u>EXHIBITS</u>

Exhibit 1 – E. Dixon Deposition

Defendant Big Sky Resort ("Big Sky") respectfully seeks the exclusion, during the first part of trial, of all evidence of and arguments or references to:

(1)    Ashley Nettles's emails to Meyer;

(2)    other ski accidents at Big Sky;

(3)    alleged lack of ski patrollers at Big Sky;

(4)    ski patrol allegedly running out of signs, gates, fences, or other safety equipment;

(5)    Meyer skiing on a closed run on the run before he was injured;

(6)    privileged information possessed by Evi Dixon, a former supervisor at Big Sky;

(7)    information or opinion testimony by Meyer's expert Gregory Smith that was not disclosed in Smith's expert report;

(8)    alleged lost future income or future medical care or expenses;

(9)    any opinion testimony by Meyer or his wife on whether the Cat Track should have been marked, what Meyer would have done had the Cat Track been marked, and whether Big Sky was negligent; and

(10)   evidence or documents not disclosed by Meyer in discovery to support Meyer's liability claims or damages claims.

## <u>BACKGROUND</u>

On December 11, 2015, Plaintiff John Meyer was skiing at Big Sky. Meyer was "hot-dogging" down the Highway ski run at a high rate of speed and wrecked while navigating a variation in terrain, i.e. a catwalk or road. Meyer's expert admits that the wreck was entirely Meyer's fault.

## LEGAL STANDARD

District courts possess "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Engr. & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (citation omitted). Motions in limine are intended to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt. v. Schneider,* 551 F.Supp.2d 173, 176 (S.D.N.Y. 2008). Motions in limine are useful "precisely because such motions allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cambra*, 350 F.3d 985, 1004-1005 (9th Cir. 2003) (Berzon, J., dissenting).

## ARGUMENT

"Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Ficek v. Kolberg-Pioneer, Inc.*, 2011 WL 1316801 at *1 (D. Mont. 2011). Irrelevant evidence is inadmissible. Fed. R. Evid. 402 (hereinafter "Rule" or "Rules").

Relevant evidence can be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. "Where the evidence is of very slight (if any) probative value…even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence." *U.S. v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1605 (2012).

1. **Evidence or argument concerning Ashley Nettles' emails with Meyer should be excluded.**

On November 17, 2017, Ashley Nettles, a volunteer ski patroller at Big Sky, wrote an email to Meyer which stated, in part, "Sometimes we run out of signs." *See* Doc. 11-1 at 2. Ms. Nettles' e-mail is inadmissible hearsay, irrelevant, unduly prejudicial, and was obtained in violation of Montana Rule of Professional Conduct 4.2. Reference to, evidence of, or argument concerning Ms. Nettles' email should be excluded.

Meyer has no evidence to dispute the following facts: On the day of Meyer's ski wreck, Big Sky did not run out of signs, gates, fences or other safety equipment. (Doc. 106, ¶51.) The Loop Road was not marked on December 11, 2015 because ski patrol determined that marking it was unnecessary. *Id.*, ¶47. Meyer's expert, Evi Dixon, agrees it was industry standard not to mark Loop Road on December 11, 2015. (Doc. 143, ¶58.) Ms. Dixon agrees Big Sky had no obligation to mark Loop Road on December 11, 2015. *Id.*, ¶57. Ms. Nettles was not volunteering at Big Sky on December 11, 2015. (Doc. 143-15, ¶3.) Ms.

Nettles' statement to Meyer regarding signs was not related in any way to Meyer's wreck. *Id.*, ¶6.

Given these undisputed facts, Ms. Nettles' unsworn, out-of-court, and general statement regarding signs is irrelevant. Big Sky did not run out of signs on the day of Meyer's wreck. (Doc. 106, ¶51.) Whether Big Sky ran out of signs on some other day is irrelevant. To the extent Ms. Nettles' unsworn, out-of-court statement has any relevance, its probative value is outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. Accordingly, evidence of or reference to Ms. Nettles' e-mail should be excluded pursuant to Rules 402 and 403.

Ms. Nettles' email is also obviously hearsay without an exception. *See* Rule 801(c). It is therefore inadmissible pursuant to Rule 802.

Finally, at the time Ms. Nettles' e-mail was sent to Meyer, Meyer knew Big Sky was represented by counsel. *See* Doc. 106 at ¶64. Ms. Nettles' email should thus be excluded because it was obtained in violation of Mont. R. Pro. Cond. 4.2. *See Scanton Prod. Inc. v Bobrick Washroom Equip. Inc.*, 190 F.Supp.3d 419, 434 (M.D. Pa. 2016) ("Courts routinely preclude use of evidence obtained in violation of ethical rules in order to appropriately remedy that violation."); *U.S. v. Sierra Pac. Ind.*, 857 F.Supp.2d 975, 984 (E.D. Cal. 2011) ("The proper remedy [for violation Rule of prohibiting ex-parte contact] is to exclude all evidence or

information obtained through the improper contacts."); *Hammond v. City of Junction City, Kansas*, 167 F.Supp.2d 1271, 1293 (D. Kan. 2001).

All reference to, evidence of, or argument concerning Ms. Nettles' email should be excluded pursuant to Rules 402, 403, and 802, and as a sanction for Meyer's violation of Mont. R. Pro. Cond. 4.2.

## 2. Evidence or argument concerning any other ski accidents at Big Sky should be excluded.

There were no substantially similar reported ski accidents in the area of Meyer's wreck from the 2007/2008 ski season to the 2015/2016 ski season. (Doc. 143, ¶¶ 87-88.) During discovery, Big Sky searched records for the past 10 years and found evidence of only one prior reported accident that occurred in the general area of Meyer's wreck, in March of 2011. *Id.*, ¶89. This prior accident had nothing to do with Loop Road, the marking of Loop Road, or any alleged unmarked obstacle or variation in terrain. *See id.*

The skier involved in the March 2011 incident reported that she "followed my son, I stopped, went backwards couple feet downhill, fell backwards." *See id.* citing Doc. 143-2, ¶22 and Ex. B to Doc. 143-2. This accident occurred in the area *below* Loop Road, in a large area known as "Bermuda Triangle." *Id.* Meyer, by contrast, alleges he wrecked as he navigated the variation in terrain above Loop Road and/or on Loop Road, above Bermuda Triangle.

Because the March 2011 accident is not "substantially similar" to Meyer's wreck, it is irrelevant and inadmissible under Montana law. *See e.g. Chapman v. Mazda Motor of Am., Inc.*, 7 F.Supp.2d 1123, 1128 (D.Mont. 1998); *Kuiper v. Goodyear Tire & Rubber Co.*, 673 P.2d 1208, 1219 (Mont. 1983). Nor would the March 2011 accident have any bearing on whether Big Sky had notice that it should have marked Loop Road on December 11, 2015. A skier falling in March of 2011 in the Bermuda Triangle (the area below Loop Road) because she "went backwards couple feet" and "fell backwards" does not in any way provide notice to Big Sky that it should have marked the Highway run above Loop Road on December 11, 2015. Furthermore, Meyer cannot lay the requisite foundation to establish "substantial similarity" between his wreck and the March 2011 accident. Because there is no evidence of any accidents substantially similar to Meyer's, all evidence or argument concerning any other skier accidents at Big Sky should be excluded in accordance with Rules 402, 403, 602 and Montana law.

### 3. Evidence or argument concerning an alleged lack of ski patrollers should be excluded.

Meyer has no evidence to support his allegation that there was a lack of adequate ski patrollers on December 11, 2015. All evidence or argument concerning this unfounded allegation should be excluded pursuant to Rules 602, 402, and 403.

Meyer admits that the ski patrol response to his wreck was swift and lifesaving. (Doc. 106 at ¶ 55.) There were approximately 50 professional ski patrollers working on December 11, 2015. *Id.*, ¶56. There were more than enough ski patrollers working in the Challenger area on December 11, 2015.  *Id.* Meyer has no evidence to dispute these facts. *See id.* Meyer's allegation that there were insufficient ski patrollers working at Big Sky on December 11, 2015, or any other day, is without foundation and should be excluded pursuant to Rule 602.

Furthermore, the ski patrol made an affirmative decision not to mark Loop Road on December 11, 2015 because it determined that doing so was unnecessary. Doc. 143, ¶90. In other words, even if there were hundreds of ski patrollers at Big Sky on December 11, 2015, Loop Road still would not have been marked because ski patrol determined that marking Loop Road was unnecessary. *Id.* Meyer's expert agrees that it was industry standard not to mark Loop Road on December 11, 2015, and that Big Sky had no obligation to mark Loop Road on December 11, 2015. *Id.*, ¶¶57-58. Thus, Meyer's allegation regarding lack of adequate ski patrollers, whether on December 11, 2015 or any other day, is irrelevant to his wreck. Even assuming some possible relevance, admission of such foundationless allegation or argument will only mislead the jury, confuse the issues, waste time, and unfairly prejudice Big Sky.

All reference to, evidence of, or argument concerning Meyer's unfounded allegation that Big Sky lacked adequate ski patrollers, should be excluded pursuant to Rules 602, 402, and 403.

### 4. Evidence or argument concerning ski patrol allegedly running out of signs, gates, fences, or other safety equipment should be excluded.

Meyer's unfounded allegation that ski patrol ran out of, or runs out of, signs, gates, fences, or other safety equipment should be excluded pursuant to Rules 602, 402, and 403. Meyer's allegation in this regard is speculative, lacks foundation, and is refuted by the sworn affidavit of Ryan Ayres, Big Sky Patrol Director, and the deposition testimony of Bob Dixon, the former ski patrol director. *See* Doc. 143, ¶¶92-93; Doc. 143-13, ¶4; 143-14 at 49:15-24. Furthermore, this issue is ultimately irrelevant because Big Sky ski patrol decided not to mark Loop Road on December 11, 2015 because it determined doing so was unnecessary. *Id.*, ¶¶90-91. Thus, even if Big Sky had thousands of signs, gates, fences or other safety equipment, Loop Road would not have been marked on December 11, 2015. Meyer's expert agrees that not marking Loop Road on December 11, 2015 was consistent with industry standards and that Big Sky had no obligation to mark Loop Road on December 11, 2015. *Id.*, ¶¶ 57-58. Whether Big Sky allegedly ran out of signs on some other day (there is no admissible evidence that it did) is also irrelevant and admission of such evidence would only confuse the issues and unfairly prejudice Big Sky.

Accordingly, all reference to, evidence of, or argument concerning Meyer's allegation that Big Sky runs out of, or ran out of, signs, gates, fences, or other safety equipment should be excluded pursuant to Rules 602, 402, and 403.

### 5. Evidence or argument that Meyer was skiing on a closed run on the run before Meyer was injured should be excluded.

Meyer initially attempted to make some connection between his skiing on a closed run before his ski wreck and his ski wreck. *See* Doc. 27, ¶3. Meyer, however, could make no logical connection between allegedly skiing in this closed area and the cause of his accident because he conceded that he skied out of the closed area and into an open area before his wreck. *See id* at ¶4; *see also* Doc. 143-1 (Meyer Depo.) at 231:19-233:24. Ultimately, however, Meyer concedes that he skied on a closed run on the run *prior to* the run on which he wrecked. *See* Doc. 106 at ¶ 64. As Eggert explained, Meyer and Eggert encountered the allegedly closed run on their second run off Challenger and Meyer wrecked on his third run off Challenger. *See* Doc. 143-3 (Eggert Depo.) at 55:1-8; 55:21-56:13; 61:1-62:21.

Thus, there is no connection whatsoever between this event and the alleged cause of Meyer's accident. *See id.* Evidence or argument concerning this event is irrelevant and admission of such irrelevant material will only confuse the issues, mislead the jury, unfairly prejudice Big Sky, and waste time. Accordingly, all such evidence or argument concerning this irrelevant event should be excluded pursuant to Rules 402 and 403.

**6.  Evidence or argument relating to privileged information possessed by Evi Dixon, a former supervisor at Big Sky, should be excluded.**

Meyer's liability expert, Evi Dixon, is a former supervisor at Big Sky. *See* Doc. 112. In her role as supervisor, Big Sky's counsel had privileged communications with her. Meyer has sought to use privileged information he improperly obtained from Ms. Dixon to his benefit in this lawsuit. *See* Doc. 112-1; *see also Gomez v. Vernon*, 255 F.3d 1118, 1131-32 (9th Cir. 2001); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 368 & 382. Any evidence or argument concerning Ms. Dixon's privileged communications with Big Sky's counsel—whether appearing in Meyer's disclosure of Dixon or otherwise—should be excluded from trial pursuant to Rule 501 and Montana law.

Montana recognizes the attorney-client privilege. *See Am. Zurich Ins. Co. v. Mont. Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012). The attorney-client privilege cannot be waived, except by the client. *Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258, 263 (Mont. 2005); *see also In re Coordinated Pretrail Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d 1355, 1361, n. 7 (9th Cir. 1981). Big Sky has not waived the attorney-client privilege and has taken reasonable steps to protect any privileged information that Meyer improperly obtained from Dixon. *See* Docs. 122 &123; *see also* Exhibit 1, Dixon Depo. at 36:17-37:7.

As a former employee, Ms. Dixon cannot waive Big Sky's attorney-client privilege. *See In re Coordinated Pretrail Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d at 1361, n. 7. Any confidential communications Big Sky's counsel had with Ms. Dixon for the purpose of providing legal advice to Big Sky are privileged. *See Am. Zurich Ins. Co.*, 280 P.3d at 245. As an attorney, Meyer should not have obtained such privileged information from Ms. Dixon, much less attempted to profit from doing so. *See Gomez*, 255 F.3d at 1131-32. Pursuant to Rule 501 and Montana law, Meyer must be prohibited from admitting any evidence of or argument concerning any privileged information Ms. Dixon possesses or that Meyer improperly obtained from Ms. Dixon.

**7. Information or opinion testimony by Plaintiff's expert Smith that was not disclosed in Smith's expert report should be excluded.**

Meyer's disclosure of purported damages expert Gregory Smith does not comply with Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B). *See* Doc. 111, 111-1. Pursuant to FRCP 26(a)(2)(B), specially retained experts must provide a written report "prepared and signed by the witness" disclosing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming" his opinions. *See* FRCP 26(a)(2)(B).

Meyer is paying Smith $135 per hour for his "study and testimony in the case." (Doc. 111.) To the extent Meyer intends for Smith to offer any opinions

beyond those formed during the course of his treatment of Meyer, Smith is subject to the requirements of FRCP 26(a)(2)(B). *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011); *see also Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296 (D. Nev. 1998) ("if a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report.")

The only document that could possibly qualify as a "report…prepared and signed" by Smith is Smith's four-paragraph affidavit that discloses: (1) his credentials; (2) a statement that he "began seeing [Meyer] after his ski accident"; and (3) a reference, without commentary, to Smith's treatment notes for seven appointments with Meyer between June 6, 2018 (4.5 years after Meyer's wreck) and August 3, 2018. *See* Doc. 111-1.[1] Smith's affidavit fails to meet the requirements of a written report under FRCP 26(a)(2)(B). To the extent it discloses any statement of opinions or the bases for such opinions at all, it is limited to that contained in the treatment notes for Meyer's appointments with Smith between June 6, 2018 and August 3, 2018. Thus, at most, Smith's testimony must be limited

---

[1] Mr. Smith's affidavit does not reference any exhibits that will be used to support or summarize his opinions, include a list of any publications he has authored in the past 10 years, nor contain a statement of his compensation. *See* Fed. R. Civ. P. 26(a)(2)(B)(iii)-(vi). Meyer's filing (Doc. 111) contains some of this information, but it is not in the form of a report signed and prepared by Mr. Smith, as required by Fed. R. Civ. P. 26(a)(2)(B).

to opinions formed during Meyer's appointments between June 6, 2018 and August 3, 2018.

Meyer's disclosure of Smith fails even to comply with FRCP 26(a)(2)(C). Under FRCP 26(a)(2)(C), Meyer must disclose (1) the subject matter on which any non-retained expert will testify; and (2) a summary of the facts and opinions to which such expert is expected to testify.

"Rule 26(a)(2)(C) doesn't allow parties to sidestep their obligations … by making a broad, generic reference to previously disclosed discovery documents." *Ibey v. Universal Ins. Co.*, 2013 WL 4433796, at *3 (D. Mont. Aug. 16, 2013); *id.* ("Rule 26(a)(2)(C) doesn't allow the disclosing party to force other parties to play the 'Guess the Testimony' game."). Rather, when disclosures are made pursuant to FRCP 26(a)(2)(C), "[a]n opposing party should be able (and be entitled) to read an expert disclosure [and] determine what, if any, adverse opinions are being proffered." *Laslovich v. State Farm Fire & Cas.*, 307 F.R.D. 533, 536 (D. Mont. 2015). Courts "will not place the burden on Defendants to sift through medical records in an attempt to figure out what each expert may testify to." *Ibey*, at *2.

Even treating Meyer's disclosure of Smith as a Rule 26(a)(2)(C) disclosure of a treating provider, the disclosure of Smith falls short of Rule 26(a)(2)(C)'s requirements. Smith's disclosure simply references Smith's treatment notes, without further comment, and requires Big Sky to guess what facts Smith may

testify to and what opinions Smith may attempt to offer at trial. *See* Docs. 111, 111-1. Such a vague disclosure is deficient, even under FRCP 26(a)(2)(C). *See Laslovich*, 307 F.R.D. at 536; *Ibey*, 2013 WL 4433796, at *3. Pursuant to the Court's scheduling order, Meyer's deadline to disclose damages experts was November 8, 2019. (Doc. 91.) Discovery closed on February 7, 2020. *Id.*

If Smith is allowed to testify despite Meyer's inadequate disclosures, Smith should be allowed to testify only as to information contained within the medical records referenced in Smith's affidavit. *See* Doc. 111-1. Any testimony that exceeds this scope has not been adequately disclosed and must be excluded pursuant to FRCP 37(c)(1) and Rule 403. *See also Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

**8. Evidence or argument concerning lost future income or Meyer's future medical care and expenses should be excluded.**

Meyer has not disclosed an expert with respect to any alleged future lost wages or future medical treatment, care, or expenses. The only disclosed expert relating to Meyer's damages is Gregory Smith, who last saw Meyer on August 3, 2018. *See* Docs. 111 & 111-1. Nothing in Meyer's disclosure of Smith, nor in Smith's affidavit or treatment notes, discusses or references the need for any future medical treatment, nor the cost of any past or future treatment. *Id.*

Smith has not prepared a written report under FRCP 26(a)(2)(B) detailing any opinions about the need for, or cost of, future treatment. *See* FRCP

26(a)(2)(B); Doc. 111, 111-1; *supra* at § 7. Even holding Smith only to the requirements of FRCP 26(a)(2)(C), Meyer's disclosure of Smith does not indicate that Smith will offer opinion testimony regarding future medical treatment, nor the cost of any future medical treatment. Even under FRCP 26(a)(2)(C), Big Sky is not forced to guess what opinions Smith, or any other medical provider, may offer. *See Laslovich*, 307 F.R.D. at 536; *Ibey*, 2013 WL 4433796, at *3. Because nothing in Meyer's expert disclosures indicates Smith or any other provider will offer opinion testimony regarding the need for, or cost of, any future medical treatment for Meyer, Meyer must be precluded from presenting any such testimony at trial. Doc. 91; FRCP 37(c)(1); *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

In order to recover future damages, Meyer must establish entitlement to such damages with reasonable certainty by substantial evidence. *See* Mont. Code Ann. § 27-1-203; *Frisnegger v. Gibson*, 598 P.2d 574, 582 (Mont. 1979); *Oberson v. U.S*, 311 F.Supp.2d 917, 960 (D.Mont. 2004). Expert testimony is required to support damages for future medical care or expenses. *Moralli v. Lake County*, 839 P.2d 1287, 1291 (Mont. 1992). Likewise, evidence supporting an award of future lost wages, including expert testimony, must be disclosed in pre-trial discovery. *See Robertus v. Farmers Union Mut. Ins. Co.*, 189 P.3d 582, 591 (Mont. 2008).

Meyer has not disclosed any expert testimony regarding the need for or the cost of any future medical expenses. Nor has Meyer disclosed any evidence of or

expert testimony to support an award of future lost wages. Indeed, Meyer denies that his injuries have materially impaired his ability to practice law and Meyer still practices law. (Doc. 143-1 (Meyer Depo.) at 217:18-218:2.)

Meyer's failure to disclose any evidence of or expert testimony regarding future lost wages or future medical expenses means he is prohibited from presenting the requisite evidence at trial to support an award for future medical expenses or lost wages. *See* Mont. Code Ann. § 27-1-203; *Moralli*, 839 P.2d at 1291; *Robertus*, 189 P.3d at 591; Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd.*, 259 F.3d at 1106. Accordingly, any evidence or argument concerning future medical expenses or future lost wages should be excluded from trial.

**9. Any opinion testimony by Meyer or Eggert as to whether the Cat Track should have been marked, what Meyer would have done had the Cat Track been marked, and whether Big Sky was negligent should be excluded.**

Meyer and Eggert admit they are not experts in ski area operations. Meyer admits he has never worked for a ski resort, has never worked as a ski patroller, and has no expertise in ski patrol operations. (Doc. 143-1 (Meyer Depo.) at 156:1-13.) When asked how many signs he contends were required to warn him of Loop Road, Meyer testified that he could not say because "then I'm acting like the expert, and I'm not the expert." *Id.* at 257:7-12. Meyer admits his contention that Loop Road should have been marked is merely his "personal opinion." *Id.* at 257:20-21. Eggert likewise admits that she has never worked as a ski patroller and

is not an expert in ski mountain operations. (Doc. 143-3 (Eggert Depo.) at 12:24-13:7.) Like Meyer, when asked if she believed Loop Road should have been marked, she testified, "I'm not an expert on mountain safety." *Id.* at 111:22-112:2.

Despite these unequivocal admissions, Big Sky anticipates Meyer and Eggert may attempt to offer opinion testimony at trial as to whether Loop Road should have been marked on December 11, 2015, what Meyer would have done had Loop Road been marked, and/or offer the legal conclusion that Big Sky was negligent for not marking Loop Road. Because neither Meyer nor Eggert are qualified as experts, however, such opinion testimony – and any similar opinion testimony – should be excluded as speculative and inadmissible pursuant to Rules 602, 701, and 702.

As lay witnesses, Meyer and Eggert may not offer opinion testimony that is "within the scope of Rule 702." Fed. R. Evid. 701(c). Subpart (c) of Rule 701 was added to curb "the admission of lay opinion on subjects appropriate for expert testimony." *Compania Administradora v. Titan Intern, Inc.*, 533 F.3d 555, 559-561 (7th Cir. 2008). Lay opinion testimony regarding the appropriateness of warnings with respect to specialized premises is not allowed under Rule 701. *See Malinski v. BNSF Railway Co.*, 2017 WL 1278671, *2 (prohibiting lay testimony regarding the hazardous nature of railway crossing and what devices would be appropriate to adequately warn of the same).

Likewise, "multiple courts have held…a lay witness's testimony concerning what they *would have done* had a defendant provided a warning is speculative and is not based on that witness's perception." *M.W. v. Ford Motor Co.*, 2016 WL 7220107, **9-10 (M.D. Fla. April, 27, 2016) (emphasis in original) (citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993); *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1459 (10th Cir. 1990)); *see also Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 15, n.8 (1st Cir. 2001). Such testimony is routinely excluded because it is not "based upon [the witness's] perception, but upon his self-serving speculation." *Washington*, 8 F.3d at 300; *see also Messenger v. Bucyrus-Erie Co.*, 507 F.Supp. 41 (W.D. Pa. 1980).

"Under Montana law, expert testimony is required to establish the standard of care unless the conduct complained of is readily ascertainable by a lay person." *Willink v. Boyne*, 987 F.Supp.2d 1082, 1084 (D.Mont. 2013); *see also Wilderness Development LLC v. Hash*, 606 F.Supp.2d 1275, 1280 (D. Mont. 2009) (holding expert testimony required to establish the standard of care applicable to "a professional or one involved in a skilled trade" because such topics "are outside the common experience and knowledge of lay jurors") (holding expert testimony required to establish standard of care for tree farmer/nursery owner).

In the context of premises liability, when the premises at issue is unique, whether a duty to warn exists will require expert testimony. *See Dayberry v. City*

*of E. Helena*, 80 P.3d 1218, 1220-21 (Mont. 2003) (holding expert testimony required as to whether city had duty to warn patrons against diving in swimming pool); *see also Not Afraid v. State*, 362 P.3d 71, 75 (Mont. 2015) (holding expert testimony required to establish standard of care for highway maintenance activities); *see also Malinski*, 2017 WL 1278671 at *2 (railroad crossings).

Courts around the country hold that expert testimony is required to establish the standard of care applicable to ski area operators. *See Willink*, 987 F.Supp.2d at 1084; *Callister v. Snowbird Corp.*, 337 P.3d 1044, 1048-50 (Utah 2014) ("in negligence cases against ski resorts and related industries with specialized equipment and operations, expert testimony is required because an average person would not have knowledge of standards of care in those industries"); *Simpson v. New Stevens, LLC*, 2008 WL 5207314 (Wash. App. Dec. 15, 2008); *Obrien v. Ski Sundown, Inc.*, 2003 WL 1228070, *2 (Conn. Feb. 7, 2003) ("expert testimony is necessary to establish the standard of care in the ski industry"); *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir. 1996) (affirming summary judgment for ski resort when plaintiff "produced only speculation, not expert testimony" that resort's conduct violated industry standard).

As Meyer admitted during his deposition, whether and how a ski area operator should mark a particular hazard or obstacle at a ski resort requires the specialized knowledge, training, and experience of an expert, and Meyer is "not the

expert." (Doc. 143-1 at 257:7-12.) Eggert also admits she is not an expert in ski area operations. (Doc. 143-3 at 12:24-13:7, 111:22-112:2.) The risks and benefits of marking a particular hazard or obstacle at a ski resort, and the manner of marking a particular hazard or obstacle at a ski resort, is beyond the common experience and knowledge of lay jurors, just as Meyer and Eggert admit it is beyond their knowledge and experience. *See Wilderness Development LLC*, 606 F.Supp.2d at 1280; *Dayberry*, 80 P.3d at 1220-21; Doc. 143-1 at 257:7-12; (Doc. 143-3 at 12:24-13:7, 111:22-112:2.).

Thus, pursuant to Meyer's own admission and Montana law, expert testimony is required on the subject of whether or how Big Sky should have marked Loop Road on December 11, 2015, and whether Big Sky's decision not to mark Loop Road was negligence. Furthermore, any speculative testimony about what Meyer *would have done* had Big Sky warned of Loop Road is not "based upon [Meyer's] perception, but upon his self-serving speculation" only. *See Washington*, 8 F.3d at 300. As such, all such testimony is properly excluded.

Because Meyer and Eggert are not qualified to offer opinion testimony on Big Sky's alleged duty to warn or Big Sky's alleged negligence, and have not been disclosed as experts or hybrid experts, the Court should prohibit Meyer and Eggert from expressing any opinion testimony as to whether or how Big Sky should have marked Loop Road on December 11, 2015, and whether Big Sky's decision not to

mark Loop Road was negligence. Likewise, because testimony about what Meyer would have done had Big Sky warned of Loop Road is speculative, any such testimony should be excluded in accordance with Rules 602 and 701.

### 10. Evidence or documents not disclosed in discovery should be excluded in accordance with FRCP 37(c)(1).

Pursuant to FRCP 37(c)(1), "a party failing to provide information required by Rule 26(a) or (e) 'is not allowed to use that information…to supply evidence…at a trial, unless the failure was substantially justified or harmless.'" FRCP 37(c)(1); *Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Id.* (quoting *Yeti*, 259 F.3d at 1106). Rule 37(c)(1) imposes "a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Id.* at 1180. "The implementation of the sanction is appropriate even when a litigant's entire cause of action will be precluded." *Id.*

In accordance with FRCP 37(c)(1), Meyer must be precluded from admitting any evidence or documents at trial that he failed to properly disclose or produce in response to Big Sky's discovery requests, or as otherwise required by FRCP 26(a) or (e).

## **CONCLUSION**

Big Sky respectfully requests that the Court grant its Motion in Limine.

DATED this 25th day of March, 2020.

CROWLEY FLECK PLLP


By: __/s/ Ian McIntosh__
Ian McIntosh
P.O. Box 10969
Bozeman, MT  59719-0969

*Attorneys for Big Sky Ski Resort*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(d)(2)(E), I certify that *Big Sky's Brief in Support of Motion in Limine* is 5,079 words long, excluding the caption, certificates of service and compliance, tables of contents and authorities, and exhibit index, as calculated by Microsoft Office Word 2007.

DATED this 25th day of March 2020.

CROWLEY FLECK PLLP


By:    /s/ Ian McIntosh
       Ian McIntosh
       P.O. Box 10969
       Bozeman, MT  59719-0969
       *Attorneys for Moonlight Basin Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 25th day of March, 2020.

[ ] U.S. Mail           Breean Walas
[ ] Hand Delivery     Walas Law Firm
[ ] Facsimile          P.O. Box 4591
[ ] FedEx             Bozeman, MT 59772
[x] ECF               *Counsel for Plaintiff*


       /s/ Ian McIntosh
       Ian McIntosh