Ian McIntosh
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433

*Attorneys for Big Sky Resort*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>              Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT,<br><br>              Defendant. | CV-18-2-BU-BMM<br><br>**BIG SKY RESORT'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS** |

## INTRODUCTION

Despite being warned numerous times by the Court about the imposition of sanctions for his conduct, Plaintiff John Meyer has again violated the Montana Rules of Professional Conduct, made false representations, failed to produce relevant evidence, and allowed relevant evidence to be destroyed by his expert. Meyer repeatedly violated Rule 4.2 of the Rules of Professional Conduct by corresponding with Evi Dixon while she was a supervisor at Big Sky, even after

the Court issued its first warning that it would not tolerate any further violations of the Montana Rules of Professional Conduct.  Further, Meyer helped Ms. Dixon submit a knowingly false subpoena response, failed to produce correspondence and photographs of the accident scene that were requested in discovery, and allowed other relevant evidence that had been requested in discovery to be destroyed even after the Court issued its third and final warning that it would not tolerate further breaches of the rules of procedure.  Pursuant to its inherent authority, the Court should dismiss Meyer's claims against Big Sky with prejudice and award Big Sky its attorney fees as a sanction for Meyer's conduct.  Alternatively, at the very minimum, Big Sky is entitled to an adverse inference jury instruction that the evidence that was destroyed would have been helpful to Big Sky's defense.

## **LEGAL STANDARD**

District courts have the inherent power to impose sanctions for a "full range of litigation abuses." *Evon v. L. Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 55 (1991).  Before awarding sanctions under its inherent powers, the court must make a finding that the conduct "constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir.1997) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980)).  A finding of bad faith is appropriate when a party engages in behavior that has the effect of "delaying or

disrupting the litigation or hampering enforcement of a court order." *Id*. at 649. Courts have found that sanctions are warranted in cases where a party makes false statements under oath, commits egregious discovery abuses, violates the Rules of Professional Conduct, or engages in other deceptive conduct. *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also Chambers*, 501 U.S. at 44-46. A court's inherent authority includes the power to dismiss claims, award attorney fees, and/or give an adverse inference jury instruction. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

## BACKGROUND

### I. The Court's Previous Sanctions Warnings.

Prior to and immediately after he filed suit, Meyer engaged in conduct that violated the Montana Rules of Professional Conduct. Among other things, Meyer communicated with Big Sky employees about this case knowing that Big Sky was represented by counsel and engaged in a campaign to publicly smear Big Sky, including by organizing rallies and protests, threatening to purchase a billboard disparaging Big Sky, making disparaging social media posts, and issuing press releases regarding this case. *See* Docs. 30 & 30-1 to 30-18; MRPC 3.6(a), 4.2 &

4.4. This Court discussed these violations and misconduct in its Order dated November 27, 2018 and warned Meyer:

> The Court will tolerate no further violations or deviations from these rules by Meyer.

(Doc. 48 at 4-5).

In disregard of this warning, Meyer continued to publish improper commentary about this lawsuit, Big Sky, and its counsel on social media. *See* Doc. 96-2. Meyer violated Local Rules and, in keeping with his efforts to make this case a public crusade against Big Sky, sought to publicly broadcast his deposition on social media. *See* Doc. 66. Additionally, in defiance of this Court's order denying Meyer leave to allege a claim for abuse of process against Big Sky, Meyer filed a pleading alleging such a claim anyway. Thus, on September 17, 2019, this Court again warned Meyer:

> [T]he Court again cautions Meyer and his co-counsel that they must follow this Court's orders.…This Court means what it says when it issues an order. And this Court's discretion to refrain from imposing sanctions can only stretch so far.

(Doc. 104 at 4-5).

Meyer disregarded this warning as well. Violating Local Rule 7.3, Meyer filed a baseless motion for reconsideration, in yet a further attempt to bring an abuse of process claim against Big Sky. *See* Doc. 117. And, in clear defiance of Fed. R. Civ. P. 26(b)(5)(B), Meyer filed material in the Court's public docket that

was subject to Big Sky's claim of attorney-client privilege. *See* Docs. 122 & 123. The privileged material was itself improperly obtained. *See* Doc. 123. Thus, on December 6, 2019, based on Meyer's repeated misconduct conduct and pursuant to the Court's inherent authority, the Court issued a $100 sanction against Meyer. And, for the third time, the Court warned Meyer against violating the Rules of Professional Conduct and rules of procedure:

> The game of chicken that Meyer seems to believe that this litigation involves must end…Meyer should interpret this sanction as the Court's final warning that it will tolerate no further breaches of the Rules of Professional Conduct and the rules of procedure – by any party.

(Doc. 124 at 7-8). Despite these clear warnings, Meyer has continued to intentionally violate the Rules of Professional Conduct and Rules of Civil Procedure, in direct violation of the Court's orders.

## II.  Meyer Violated Rule 4.2 of the Rules of Professional Conduct Numerous Times After the Court's First Sanctions Warning.

Meyer has repeatedly violated Rule 4.2 of the Rules of Professional Conduct by corresponding with Evi Dixon while she was employed as a supervisor at Big Sky, in disregard of the Court's prior warning about further violations of the Rules of Professional Conduct. *See* Ex. 1, Deposition of Evi Dixon ("Dixon Depo.") at 57:10-60:4. Rule 4.2 of the Montana Rules of Professional Conduct prohibits a lawyer from communicating with a person the lawyer knows to be represented by another lawyer. Despite Big Sky's instruction that Meyer not have any contact

with Big Sky employees throughout this case, Meyer repeatedly communicated with Ms. Dixon when she was a supervisor at Big Sky. *See id.*

On December 27, 2017, approximately two weeks after Meyer filed this lawsuit, Big Sky's counsel instructed Meyer to discontinue all communications with employees of Big Sky pursuant to Rule 4.2 of the Montana Rules of Professional Conduct. (Dixon Depo. at 60:13-61:6; *see also* Ex. 2, Letter). Despite this instruction and the requirements of Rule 4.2, Meyer had numerous communications with Ms. Dixon while she was employed by Big Sky. (Dixon Depo. at 73:10-13). Significantly, several of these communications occurred after the Court's November 27, 2018 Order discussing Meyer's prior violations of the Rules of Professional Conduct and warning that "[t]he Court will tolerate no further violations or deviations from these rules by Meyer." *See* Doc. 48 at 4-5.

For example, Meyer was communicating with Ms. Dixon in October 2018, when she was employed by Big Sky, about what he claimed he was going to do with any money he received in the lawsuit. (Dixon Depo. at 57:10-58:7). In response, Ms. Dixon told Meyer she was not allowed to talk to him. (*Id.* at 58:8-12). This, however, did not deter Meyer from continuing to communicate with Ms. Dixon. (*Id.*) Just a few months later, in December 2018, after the Court warned Meyer it would tolerate no further violations of the rules, Meyer exchanged text messages with Ms. Dixon, who was a supervisor at Big Sky at the time, and even

invited Ms. Dixon to his house for a drink and some appetizers. (Dixon Depo. at 59:21-61:6; *see also* Doc. 48). Again, in January 2019, after the Court warned Meyer it would tolerate no further violations of the rules, Meyer texted Ms. Dixon, still a supervisor at Big Sky and asked if he could stop by Ms. Dixon's place. (Dixon Depo. at 73:14-74:4; *see also* Doc. 48).

### III.  Meyer Assisted Ms. Dixon in Submitting a Knowingly False Subpoena Response After the Court Issued Its Third and Final Sanctions Warning.

Meyer intentionally attempted to hide his communications with Ms. Dixon through false discovery responses, false deposition testimony, and lastly, assisting Ms. Dixon submit a knowingly false subpoena response. On April 6, 2018, Big Sky served its first discovery requests on Meyer. (Ex. 3, Big Sky's First Discovery Requests to Plaintiff). These discovery requests included Request for Production No. 7, which asked Meyer to "produce all written communications you have had with any employee or ex-employee of Big Sky or Boyne after December 11, 2015." (*Id.* at p. 3). Request for Production No. 7 also specifically informed Meyer that it was seeking "all letters, emails, social media posts, texts, and any other written communications." (*Id.*) In response to Request for Production No. 7, Meyer only produced two communications between himself and Ms. Dixon – one email from Meyer to Ms. Dixon informing her that he filed a lawsuit against Big

Sky and one email from Ms. Dixon to Meyer with a list of Big Sky ski patroller email addresses. *See* Ex. 4, 000099-000100.

Meyer never supplemented this response with additional documents even though he exchanged over a hundred text messages with Ms. Dixon between 2016 and 2019. *See* Ex. 5, E.Dixon 061 to E.Dixon 099. Also, despite these text messages, Meyer falsely testified at his deposition in April, 2019, that his last communication with Ms. Dixon was when she gave him a craniosacral massage sometime in 2018. (Ex. 6, Deposition of John Meyer ("Meyer Depo.") at 269:23-270:17).

Big Sky also served Ms. Dixon with a subpoena on November 19, 2019, requiring Ms. Dixon to produce all correspondence with Meyer. (Ex. 7, Subpoena). On December 11, 2019, in response to the subpoena, Meyer delivered a letter to Big Sky's counsel, representing that Ms. Dixon did not have any documents other than what he had previously produced. (Ex. 8). This statement, however, was false because although Meyer and Ms. Dixon had exchanged over a hundred text messages, Meyer had only produced two emails between himself and Ms. Dixon. *Compare* Ex. 4 (two email correspondence) *with* Ex. 5, (hundreds of text messages).

Ms. Dixon even admitted Meyer's statement was false:

> **Q. And in the third paragraph there it states – Mr. Meyer states, Ms. Dixon has indicated that she does not have any documents other than what I have produced, do you see that?**
> A. Yep.
> **Q. And that statement from Mr. Meyer was false, wasn't it?**
> A. Um, obviously false because we have now all the other documents that I provided to Ms. Walas.

(Dixon Depo. at 29:24-30:8; *see also* Ex. 8). The documents Ms. Dixon provided to Ms. Walas, Meyer's counsel, which were eventually provided to Big Sky in February 2020, after both Meyer's and Ms. Dixon's depositions, included over a hundred text messages between Meyer and Ms. Dixon between 2016 and 2019. *See* Ex. 5. Ms. Dixon further testified that Meyer knew the subpoena response was false because he knew he had not produced all of his correspondence with Ms. Dixon. (Dixon Depo. at 32:12-34:14). Meyer assisted in submitting the false response to Ms. Dixon's subpoena less than one week after the Court's December 6, 2019 Order, which contained a third and "final warning" that the Court would tolerate no further violations of the rules. *See* Ex. 8; Doc. 124.

## IV. Just Over One Month After the Court Issued Its Third and Final Sanctions Warning, Meyer Allowed Destruction of Evidence that Had Been Requested in Discovery.

One of the documents produced to Big Sky in February 2020 in response to Ms. Dixon's subpoena was a text message dated January 13, 2020 from Ms. Dixon to Meyer stating: "Got someone to take pictures today. It's not really what I wanted to see. The loop [r]oad is still visible from up close." (Ex. 5 at

E.Dixon081). The text message continues with a photo that shows that skiers can clearly see Loop Road and indicates that this photo is "one of many." (*Id.* at E.Dixon082). No other photos, however, were produced. When Big Sky inquired about the other photos that should have been produced, Meyer's counsel informed Big Sky that those photos were deleted after Ms. Dixon reviewed them. *See* Ex. 9, Email.

At the time Ms. Dixon received and deleted the photos, there was an obligation to preserve the photos because they were responsive to discovery requests that had been served on Meyer on April 6, 2018. (Ex. 3). The photos, which undercut Ms. Dixon's original claim that Loop Road is not visible from up close, were deleted sometime after January 13, 2020 even though they were responsive to several of those discovery requests. *See* Exs. 3 & 9. For example, Request for Production No. 12 asked Meyer to produce all photographs of the scene of the accident that he contends are relevant to his allegations and Request for Production No. 15 asked Meyer to produce any and all photographs that in any way relate to this incident and lawsuit. *See* Ex. 3 at pp. 5-6. Despite these discovery requests, Meyer never produced the photograph of the scene of his ski accident that Ms. Dixon sent to him.

Meyer also failed to inform Ms. Dixon that he had an obligation to produce any pictures of the accident scene or tell Ms. Dixon not to destroy the photographs.

(Dixon Depo. at 65:24-67:6). Meyer's failure to produce the photo that Ms. Dixon sent him and failure to preserve the other photographs taken on Ms. Dixon's behalf occurred approximately one month after the Court issued its third and final warning that it would not tolerate further violations of the rules. *See* Doc. 124.

## DISCUSSION

I. **The Totality of Meyer's Misconduct Throughout This Case Warrants Dismissal of Meyer's Claims Against Big Sky.**

For dismissal to be proper, the conduct to be sanctioned must be due to "willfulness, fault, or bad faith." *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985)). It is well settled that dismissal is appropriate where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle*, 709 F.2d at 589 (upholding dismissal of complaint pursuant to court's inherent power where plaintiff's denials of material fact were knowingly false and plaintiff willfully failed to comply with discovery orders); *see also North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir. 1986) (affirming dismissal of defendant's counterclaim under court's inherent power for concealing documents and violating court's discovery order). In evaluating the propriety of dismissal, courts consider **all**

incidents of the party's alleged misconduct.  *See Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1411 (9th Cir. 1990).

The Court has already issued Meyer warnings on three separate occasions due to his misconduct, including violations of the Rules of Professional Conduct and filing pleadings in violation of the Court's orders and the rules of procedure. Even after the Court issued Meyer these warnings, he continued to violate the Rules of Professional Conduct, made false representations about documents requested in discovery, and allowed relevant evidence to be destroyed.

Meyer communicated with Ms. Dixon, a supervisor at Big Sky, in defiance of this Court's November 27, 2018 Order, Rule 4.2, and Big Sky's counsel's instruction.  Less than one week after the Court's December 6, 2019 Order, which contained the Court's third and final warning that the Court would not tolerate any further violations of the rules, Meyer assisted Ms. Dixon in submitting a knowingly false subpoena response, which concealed relevant evidence. Subsequently, Meyer allowed the destruction of photos depicting the location of his ski wreck, which had been specifically requested in discovery.

Meyer's bad faith disregard of the Court's Orders and the rules undermines the integrity of this judicial proceeding and is inconsistent with the orderly administration of justice.  This Court's Orders and warnings have not, and apparently cannot, deter Meyer's improper conduct.  As the Court has already

*Big Sky Resort's Brief in Support of Motion for Sanctions – 12*

recognized, "[t]he game of chicken that Meyer seems to believe that this litigation involves must end" (Doc. 124 at 7), and it should end now.  All of Meyer's conduct – past and present – when considered together warrants dismissal of Meyer's claims against Big Sky with prejudice.  *See Adriana Int'l Corp.*, 913 F.2d at 1411.

## II.   Meyer's Conduct Warrants an Award of Attorney Fees.

In addition to dismissing Meyer's claims, the Court's inherent authority includes the ability to award attorney fees as a sanction.  *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 (2017).  An award of attorney fees usually consists of an order instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the opposing party.  *Id.*  The complaining party may recover only the portion of his fees that he would not have paid but for the misconduct.  *Id.* at 1187.

Because of Meyer's most recent round of bad faith conduct, Big Sky has been forced to incur attorney fees it otherwise would not have incurred.  Even after the Court's numerous orders warning Meyer that he must follow the rules, Big Sky has been forced to spend significant time and resources in an attempt to uncover the truth.  Because of Meyer's conduct, Big Sky has expended time and efforts trying to locate documents that Meyer intentionally did not produce, lied about, or destroyed.  It is only just that Big Sky be awarded its costs and attorney fees

incurred as a result of Meyer's most recent violations of the Court's orders and the rules governing these proceedings.

### III. At the Very Least, Big Sky is Entitled to an Adverse Inference Jury Instruction.

At the very least, Meyer's destruction of relevant evidence, warrants an adverse inference jury instruction. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (9th Cir. 1999). The court has "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F.3d 1318, 1329 (9th Cir. 1993). Such broad power includes permitting an adverse inference from the spoliation of relevant evidence against the spoliating party. *Id.* The adverse inference sanction is based on evidentiary and policy rationales that seek to deter a party who has notice of an item's relevance to litigation from destroying it. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A finding of bad faith is not a prerequisite for an adverse inference. *Glover*, 6 F.3d at 1329.

As mentioned above, photos of the location of Meyer's ski wreck were destroyed after being specifically requested in discovery. These photos had been requested by Big Sky in discovery and were requested and reviewed by Meyer's expert witness. Because the photos were relevant to the allegations and defenses in

this case and were intentionally destroyed after being requested in discovery, Big Sky is entitled to an adverse inference jury instruction that these photos would have been helpful to Big Sky's defense and would have shown that Loop Road was visible and obvious to skiers on the Highway run. *See In re Napster, Inc. Copy. Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); *Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005).

## CONCLUSION

Meyer has ignored the Court's previous orders and warnings by continuing to violate the Rules of Professional Conduct, making false statements about responsive documents, and allowing the destruction of relevant evidence specifically requested in discovery. The Court should follow through on its third and final warning to Meyer, put an end to Meyer's "game of chicken," and dismiss Meyer's claims against Big Sky with prejudice. The Court should also award Big Sky the attorney fees it has been forced to incur due to Meyer's numerous violations of the Court's orders and the rules. Alternatively, at the very minimum, Big Sky is entitled to an adverse inference jury instruction that the photos depicting the location of Meyer's ski wreck that were intentionally destroyed after being requested in discovery would have been helpful to Big Sky's defense.

//

//

DATED this 27th day of March 2020.

                CROWLEY FLECK PLLP

                By /s/ Ian McIntosh
                   Ian McIntosh
                   P.O. Box 10969
                   Bozeman, MT 59719-0969

                Attorneys for Big Sky Resort

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word 2007, is 3,407 words long, excluding the Caption and the Certificates of Service and Compliance.

Dated this 27th day of March, 2020.

                CROWLEY FLECK PLLP

                By /s/ Ian McIntosh
                   Ian McIntosh
                   P.O. Box 10969
                   Bozeman, MT 59719-0969

                Attorneys for Big Sky Resort

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 27th day of March, 2020.

| | |
|---|---|
| [ ] U.S. Mail | Breean Walas |
| [ ] Hand Delivery | Walas Law Firm |
| [ ] Facsimile | P.O. Box 4591 |
| [ ] FedEx | Bozeman, MT |
| [x] ECF | 59772 |

/s/ Ian McIntosh
Ian McIntosh