Breean Walas (PHV)
Walas Law Firm
P.O. Box 4591
Bozeman, MT 59772
Telephone: (501) 246-1067
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER, | Case No. 2:18-cv-00002-BMM |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF MOTION IN LIMINE** |
| BIG SKY RESORT, | |
| Defendants. | |

1

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**………………………………………………..4

**EXHIBIT INDEX**…………………………………………………………….8

**BACKGROUND**……………………………………………………………..9

**LEGAL STANDARD**……………………………………………………….9

**ARGUMENT**………………………………………………………………..10

    1.    Use of the words "guilty" or "innocent" as same denote
        verdicts in criminal proceedings and are not applicable here………...12

    2.    Collateral sources, including but not limited to the amount paid
        by any collateral source and/or any reduced payment accepted
        by any medical provider……………………………………………..13

    3.    Any question, statement or suggestion that might indicate, directly
        or indirectly, that Big Sky will have to pay a judgment against it
        out of its own pocket…………………………………………………15

    4.    Meyer's history of alcohol and drug use, including
        any reference to his self-identification as an alcoholic
        who is sober and in recovery…………………………………………15

    5.    Meyer's prior arrests or criminal history……………………………..17

    6.    Any reference to "secondary gain" or malingering on the
        part of John Meyer…………………………………………………...18

    7.    Legal conclusions from expert and lay witnesses……………………19

    8.    Statements that Big Sky has not been violated, or is not
        in violation of, Montana law…………………………………………22

    9.    Written statements and patroller comments in the incident
        or accident report, when that statement or comment is
        made by someone other than the testifying witness…………………23

10.    Any party's decision to call (or not call) a witness at trial……………23

11.    Opinion testimony about, and improper comments on,
       the credibility of witnesses…………………………………………..23

12.    Meyer's products liability case against Salewa,
       including Meyer's negotiations and settlement with Salewa;………..24

13.    Amanda Eggert's statements that she would not have
       filed a lawsuit against Big Sky………………………………………25

14.    Statements and speculative testimony that Meyer
       was attempting to do a flip prior to his wreck………………………..26

15.    Statements to the effect that anyone who pays a
       filing fee can file a lawsuit, whether it is justified or not……………..27

16.    Meyer's political aspirations………………………………………...27

**CONCLUSION**…………………………………………………………………..28

**CERTIFICATE OF SERVICE**………………………………………………….29

**CERTIFICATE OF COMPLIANCE**…………………………………………...29

# TABLE OF AUTHORITIES

## CASES

*Bridges v. U.S.,*
    199 F.2d 811, 830 (1952)…………………………………………………...25

*Campbell Industries v. M/V Gemini,*
    619 F.2d 24 (9th Cir. 1980)………………………………………………..9

*Chiate v. Morris*,
    972 F.2d 1337 (9th Cir. 1992)……………………………………………20

*Dahlin v. Holmquist,*
    766 P.2d 239 (1989)…………………………………………………18, 19

*Daubert v. Merrell Dow Pharm, Inc.*,
    43 F.3d 1311 (9th Cir. 1995)……………………………………………..26

*Diviero v. Uniroyal Goodrich Tire Co.*,
    114 F.3d 851 (9th Cir. 1997)……………………………………………..26

*Doyle v. Clark,*
    254 P.3d 570, (Mont. 2011)………………………………………………...20

*Estate of Ramirez v. City of Billings,*
    2019 U.S. Dist. LEXIS 15646 (D. Mont. Jan. 31, 2019)………………………17

*Ficek v. Kolberg-Pioneer, Inc.*,
    2011 WL 1316801 (D. Mont. 2011)………………………………………...27

*Gaworksi v. ITT Commercial Fin. Corp.*,
    17 F.2d 1104 (8th Cir. 1993)……………………………………………..14

*Lasar v. Ford Motor Co.*,
    239 F.Supp.2d 1022 (D. Mont. 2003)………………………………………16

*Linden v. Huestis,*
    807 P.2d 185 (Mont. 1991)………………………………………..15, 18-19

*Luce v. United States,*
     469 U.S. 38 (1984). …………………………………………………...10

*McClammy v. Halloran,*
     2019 U.S. Dist. LEXIS 164506 (D. Mont. Sept. 25, 2019)……………..17, 20

*Marten v. Montana,*
     2019 U.S. Dist. LEXIS 169193 (D. Mont. Sept. 30, 2019). ………………...18

*Meek v. Mont. Eighth Jud. Dist. Ct,*
     349 P.3d 493 (Mont. 2015)…………………………………………...13-14

*Nichols v. Am. Nat'l Ins. Co.,*
     154 F.3d 875 (8th Cir. 1998)…………………………………………..19

*N.Y. Marine & Gen. Ins. Co. v. Junkermier, Clark, Campanella, Stevens, P.C.,*
     2020 U.S. Dist. LEXIS 18210 (D. Mont. Feb. 3, 2020)……………………..19

*Plentyhawk v. Sheikh,*
     2015 U.S. Dist. LEXIS 128635 (D. Mont. Sept. 24, 2015)…………………14

*Pritchard-Sleath v. Opper,*
     2014 U.S. Dist. LEXIS 26911 (D. Mont. Mar. 3, 2014)……………19-20, 22

*Roberts v. College of the Desert,*
     870 F.2d 1411 (9th Cir. 1988)…………………………………………24

*Romine v. Parman,*
     831 F.2d 944 (10th Cir. 1987)…………………………………………16

*Salitros v. Chrysler Corp.,*
     306 F.33d 562 (8th Cir. 2002)…………………………………………14

*Sears, Roebuck & Co. v. Peterson,*
     76 F.2d 243 (8th Cir. 1935)…………………………………………26

*Simco v. Ellis,*
     303 F.3d 929 (8th Cir. 2002)…………………………………………..16

*Simpson v. Smith,*
 771 SW.2d 368 (8th Cir. 1989)……………………………………………..16

*Speaks v. Mazda Motor Corp.,*
 2015 U.S. Dist. LEXIS 109727 (D. Mont. Aug. 19, 2015)…………………10

*U.S. v. Barnard,*
 490 F.2d 907 (9th Cir. 1973)…………………………………………………..23

*U.S. v. Binder,*
 769 F.2d 595 (9th Cir. 1985)…………………………………………………..23

*U.S. v. Heller,*
 551 F.3d 1108 (9th Cir. 2009)…………………………………………………..9

*U.S. v. Scholl,*
 166 F.3d 964 (9th Cir. 1999)…………………………………………………..20

*U.S. v. Vera,*
 770 F.3d 1232 (9th Cir. 2014)…………………………………………………26

*Wise v. Rust,*
 2010 U.S. Dist. LEXIS 126029 (D. Mont. Nov. 30, 2010)……………..15-16

*Wood v. Montana Dep't of Revenue,*
 2011 WL 4348301 (D. Mont. Sept. 16, 2011)……………………………...20

**STATUTES**

Mont. Code Ann. §27-1-307(1)…………………………………………………..13

Mont. Code Ann. §27-1-308…………………………………………………...13, 14

**RULES**

Fed. R. Civ. P. 8(c)…………………………………………………………...24

Fed. R. Evid. 401…………………………………………………………….*passim*

FED. R. EVID. 402……………………………………………………………….*passim*

FED. R. EVID. 403……………………………………………………………….*passim*

FED. R. EVID. 404(b)………………………………………………………...17, 18

FED. R. EVID. 408…………………………………………………………….25

FED. R. EVID. 411…………………………………………………………….15

FED. R. EVID. 702…………………………………………………………….26

FED. R. EVID. 801…………………………………………………………….23

FED. R. EVID. 802…………………………………………………………….23

FED. R. EVID. 805…………………………………………………………….23

MONT. R. PROF'L COND. 3.4(e)…………………………………………...24, 27

## EXHIBIT INDEX

*Exhibit A* (Meyer Depo. Excerpts)……………………………………..9, 16, 17, 26, 27

*Exhibit B* (McMakin Depo. Excerpts)……………………………………..9, 26

*Exhibit C* (Middleton Depo. Excerpts)…………………………………...21, 27

*Exhibit D* (Petrozzi Report)……………………………………………21, 22

*Exhibit E* (E. Dixon Depo. Excerpts)………………………………………24

*Exhibit F* (Depo. Exhibit 77)………………………………………………23

*Exhibit G* (Eggert Depo. Excerpts)……………………………………...25

## BACKGROUND

On December 11, 2015, Plaintiff John Meyer was skiing the Highway trail, under control, when he came upon a huge rollover and steep transition to a hidden, unmarked cat track (Morning Star Road, aka Loop Road) and was launched head-over-heels onto a log.[1] Meyer filed this negligence lawsuit against Defendant Big Sky Resort seeking compensatory for the serious, life-threatening, and permanent physical and mental injuries he suffered in the wreck. Big Sky Resort denied it was negligent, and brought an abuse of process counterclaim against Meyer. The Court ordered that a seriatim trial, meaning that the negligence case would be tried before the abuse of process counterclaim.[2] The parties have agreed, and the Court has excluded, all evidence and reference to the abuse of process claim during the first phase of trial.[3]

## LEGAL STANDARD

This Court has broad discretion to make evidentiary rulings conducive to the conduct of a fair and orderly trial. *Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980). Motions in limine are procedural devices used to limit, in advance of trial, testimony and evidence in a particular area that fails to meet the requirements for admissibility. *U.S. v. Heller,* 551 F.3d 1108, 1111 (9th Cir. 2009). Evidence shall

---

[1] *Exhibit A* (Meyer Depo. Excerpts) at 129:10:20, 137:8-11, 150:16-21, 185:2-7, 274:13-19, 275:2-5; *Exhibit B* (McMakin Depo. Excerpts) at 12:9-13:5, 13:22-24, 15:22-23, 16:15-17:1, 31:10-15.
[2] *Order* (ECF No. 48) at 7-8.
[3] *Order* (ECF No. 141) at 2.

9

be excluded in limine when it is shown that the evidence "is inadmissible on all potential grounds" and it should not be put before the jury. *Speaks v. Mazda Motor Corp.*, 2015 U.S. Dist. LEXIS 109727, at *1-2 (D. Mont. Aug. 19, 2015) (internal citation and quotation omitted). A motion in limine should not be used to resolve factual disputes or weigh evidence. *Id.* Finally, rulings on motions in limine are provisional because the trial judge may always change his mind during the course of trial. *Id.; Luce v. United States,* 469 U.S. 38, 41 (1984).

## ARGUMENT

In filing his *Motion in Limine* (ECF No. 155), Meyer seeks an order excluding all reference to, evidence of, mention of, and argument concerning the following:

1.  Use of the words "guilty" or "innocent" as same denote verdicts in criminal proceedings and are not applicable here;

2.  Collateral sources, including but not limited to the amount paid by any collateral source and/or any reduced payment accepted by any medical provider;

3.  Any question, statement or suggestion that might indicate, directly or indirectly, that Big Sky will have to pay a judgment against it out of its own pocket;

4.  Meyer's history of alcohol and drug use, including any reference to his self-identification as an alcoholic who is sober and in recovery;

5.  Meyer's prior arrests or criminal history;

6.  Any reference to "secondary gain" or malingering on the part of John Meyer;

7.    Legal conclusions from expert and lay witnesses;

8.    Statements that Big Sky has not violated, or is not in violation of, Montana law;

9.    Written statements and patroller comments in the incident or accident report, when that statement or comment is made by someone other than the testifying witness;

10.   Any party's decision to call (or not call) a witness at trial;

11.   Opinion testimony about, and improper comments on, the credibility of witnesses;

12.   Meyer's products liability case against Salewa, including Meyer's negotiations and settlement with Salewa;

13.   Amanda Eggert's statements that she would not have filed a lawsuit against Big Sky; and

14.   Statements and speculative testimony that Meyer was attempting to do a flip prior to his wreck.

These matters are inadmissible, irrelevant, prejudicial, misleading, hearsay, and/or otherwise inadmissible under the Federal Rules of Evidence and/or Montana law. Therefore, they should not be presented to the jury, directly or indirectly, by way of argument, physical evidence, testimonial evidence, or comment, during voir dire, opening statement, closing argument, or during the examination or cross-examination of any witness.

Meyer also seeks exclusion, during the first phase of trial, of all references to, evidence of, and argument concerning the following:

15.   Statements to the effect that anyone who pays a filing fee can file a lawsuit, whether it is justified or not; and

16.   Meyer's political aspirations.

These matters should be excluded <u>during voir dire and the first phase of trial</u> because they are irrelevant to Meyer's negligence claim and are prejudicial, misleading, and/or otherwise inadmissible under the Federal Rules of Evidence or Montana law.[4]

In sum, Topics 1-14 are not admissible for any purpose during the trial, and should be excluded as such. Topics 15 and 16 are not relevant to Meyer's negligence claim and, therefore, are inadmissible during voir dire and the first phase of trial.

## 1.   Use of the words "guilty" or "innocent" denote verdicts in criminal proceedings and are not applicable here.

To be relevant, evidence must have a "tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. Relevant evidence is admissible unless otherwise prohibited by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 402. "Irrelevant evidence is not admissible." *Id.* Relevant evidence should be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury,

---

[4] In limiting exclusion of these topics to the first phase of trial, Meyer acknowledges (without conceding) that these topics may be relevant to Big Sky's abuse of process claim, but reserves the right to object to introduction of such evidence during that phase of trial.

undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Evidence, testimony, and commentary that uses the words "guilty" or "innocent" are not relevant to the jury's determination of any fact "of consequence in determining the action." FED. R. EVID. 401. This is not a criminal trial; it is a civil trial. The words "guilty" and "innocent" involve verdicts in criminal cases; whereas civil cases deal with "liability" and "fault." To permit the use of "guilty" and "innocent" in a civil setting has a substantial likelihood of confusing the issues and misleading the jury into applying a criminal standard, rather than following the instructions given by the court in this case. Accordingly, all parties and their witnesses should be prohibited from using the words "guilty" and "innocent" in the presence of the jury.

2. **Collateral sources, including but not limited to the amount paid by any collateral source and/or any reduced payment accepted by any medical provider.**

A collateral source is "a payment for something that is later included in a tort award and that is made to or for the benefit of a plaintiff or is otherwise available to the plaintiff." MONT. CODE ANN. §27-1-307(1). Montana Code Annotated §27-1-308(3), also known as the collateral source rule, prohibits the introduction of all evidence of collateral sources during the trial. This includes exclusion of payments made by a health insurer, Medicare, Medicaid, gratuitous or discounted medical

services, unemployment compensation benefits, medical sick leave, or payments from any other collateral source. *Meek v. Mont. Eighth Jud. Dist. Ct,* 349 P.3d 493, 496 (Mont. 2015); *Plentyhawk v. Sheikh,* 2015 U.S. Dist. LEXIS 128635, at *4 (D. Mont. Sept. 24, 2015)*; see also Salitros v. Chrysler Corp.*, 306 F.33d 562, 573 (8th Cir. 2002) (excluding evidence of medical sick leave benefits as a collateral source); *Gaworksi v. ITT Commercial Fin. Corp.*, 17 F.2d 1104, 1112-13 (8th Cir. 1993) (excluding evidence of backpay, social security, and unemployment compensation). Introduction of what a medical provider ultimately accepts as payment for the services provided is, likewise, prohibited by the collateral source rule. *Meek,* 349 P.3d at 496. Simply put, "[t]he statute prohibits the jury from considering any collateral sources and evidence of collateral source payments is not admissible on the issue of a personal injury claimant's medical expenses." *Id.*

Meyer had health insurance at the time of his ski wreck, and that insurance did cover some of his medical bills. Evidence of such is not admissible for the reasons stated above. Accordingly, evidence of collateral source payments should be excluded, and the parties should be directed to redact evidence of collateral sources from any evidence put before the jury.

3.   **Any question, statement or suggestion that might indicate, directly or indirectly, that Big Sky will have to pay a judgment against it out of its own pocket.**

Big Sky's ability to pay a judgment against it is <u>not</u> relevant to the jury's determination of whether Big Sky was negligent. FED. R. EVID. 401. Its ability to pay a judgment is not relevant to the jury's determination of Meyer's damages. *Id.* And, notwithstanding their irrelevance, such statements are contrary to the facts. Big Sky has liability insurance, which would cover any damages award obtained by Meyer.[5] Meyer is prohibited from introducing evidence of Big Sky's liability insurance to show that Big Sky acted negligently or wrongfully. FED. R. EVID. 411. It only follows that Big Sky should be prohibited from arguing, stating, or suggesting that it Big Sky would have to pay any judgment out of its own pocket. *Accord Linden v. Huestis,* 807 P.2d 185, 190-191 (Mont. 1991). If, however, the Court disagrees and permits Big Sky to argue that it will have to pay any judgment out of its own pocket, then Meyer should be permitted to introduce evidence of Big Sky's liability insurance.

4.   **Meyer's history of alcohol and drug use, including any reference to his self-identification as an alcoholic who is sober and in recovery.**

Evidence of a person's prior use of alcohol and illegal drugs is not admissible *absent* some connection to the case at hand. *Wise v. Rust,* 2010 U.S. Dist. LEXIS

---

[5] To avoid needlessly putting Big Sky's insurance policy on the record, Meyer has chosen not to attach proof of the existence of the policy hereto. In the event that Big Sky disputes that it has liability insurance, Meyer reserves the right to attach a copy of the policy to his reply in support of this motion.

126029, at *10-11 (D. Mont. Nov. 30, 2010) (citing *Romine v. Parman,* 831 F.2d 944, 945 (10th Cir. 1987)); *see also Simpson v. Smith,* 771 SW.2d 368, 371 (8th Cir. 1989) (holding that evidence that the party was impaired at the time of accident is necessary for the introduction of evidence of drug use). And, even in situations where such evidence may be relevant, it is generally excluded because it is unfairly prejudicial, and has a substantial likelihood of confusing the issues and misleading the jury. *See Lasar v. Ford Motor Co.*, 239 F.Supp.2d 1022, n10 (D. Mont. 2003) (After granting the plaintiff's motion in limine to exclude evidence of alcohol consumption, the court concluded that counsel's "statements about alcohol were so prejudicial that a limiting instruction would not have been effective and the jury would have been prejudiced against" the plaintiff); *Simco v. Ellis,* 303 F.3d 929, 933 (8th Cir. 2002) ("The mere mention of cocaine would inflame the jury and be extremely prejudicial").

There is no reason to allow such evidence here. Meyer was not intoxicated or under the influence of any substance at the time of his ski wreck.[6] In fact, at the time of his ski wreck, he had been sober and in recovery for more than a year.[7] Meyer has maintained that sobriety.[8] There is simply no relevance to the introduction of Meyer's prior alcohol use and/or alcoholism, illegal drug use and/or addiction, or

---

[6] *Exhibit A* (Meyer Depo. Excerpts) at 60:6-9.
[7] *Exhibit A* (Meyer Depo. Excerpts) at 331:21-23.
[8] *Exhibit A* (Meyer Depo. Excerpts) at 22:25-23:1, 23:20-24:25.

16

that he is sober and in recovery. It is, therefore, inadmissible. FED. R. EVID. 402; *see also Estate of Ramirez v. City of Billings,* 2019 U.S. Dist. LEXIS 15646, at *3 (D. Mont. Jan. 31, 2019) (granting Plaintiff's motion to exclude evidence of the effects of the decedent's drug use and/or medical condition on his life expectancy).

Finally, any attempt to introduce this evidence is solely for the purpose of inflaming the jury; therefore, any relevance that could exist (it does not) is substantially outweighed by the danger of unfair prejudice rendering it inadmissible under Rule 403.

For these reasons, Meyer's history of alcohol use and illegal drug use, as well as his self-identification as a sober alcoholic in recovery, is inadmissible and should be excluded.

## 5. Meyer's prior arrests or criminal history.

The Federal Rules of Evidence prohibit admission of "[e]vidence of a crime, wrong, or other act … to prove a person's character to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). This rule applies here. Prior to getting sober, Meyer was arrested on the charges of minor in possession, public drunkenness, and urinating in public.[9]  Evidence of these arrests, or prior bad acts, is not admissible under Rule 404(b). *See McClammy v. Halloran,* 2019 U.S. Dist. LEXIS 164506, at *13-14 (D. Mont. Sept. 25, 2019).

---

[9] *Exhibit A* (Meyer Depo. Excerpts) at 22:17-23:16.

Moreover, even if such evidence fell within one of the exceptions to Rule 404(b) (it does not), Meyer's prior arrests and criminal history are inadmissible because this information is not relevant to any issue of fact to be decided by the jury. FED. R. EVID. 401, FED. R. EVID. 402. Any attempt to introduce Meyer's past arrests would be for the sole purpose of inflaming the jury and would be unfairly prejudicial, thereby requiring exclusion under Rule 403. There is "no reason why [Big Sky] should need to introduce evidence concerning [Meyer's] criminal convictions." .

*Marten v. Montana,* 2019 U.S. Dist. LEXIS 169193, at \*8-9 (D. Mont. Sept. 30, 2019).

For these reasons, evidence of Meyer's prior arrests or criminal history is inadmissible and should be excluded.

**6     Any reference to "secondary gain" or malingering on the part of John Meyer.**

"Secondary gain" is a concept that suggests that a plaintiff's allegations of continuing pain or medical problems are the result of either a conscious or subconscious expectation of financial, emotional, or other type of gain. *See, e.g., Linden,* 807 P.2d at 188-189; *Dahlin v. Holmquist*, 766 P.2d 239, 241 (Mont. 1989). The admission of secondary gain testimony is improper because it is irrelevant and highly prejudicial, especially when there is no evidence suggesting that plaintiff's injuries were influenced by secondary gain motives. *Id.* One of these reasons for excluding such testimony was enunciated in *Linden,* when the court held:

18

> [The expert] was no more qualified than anyone on the jury to speculate about the plaintiff's possible motivation for making complaints which [the expert] felt could not be substantiated by his physical findings. … He was not qualified as a human polygraph. His testimony in this regard is not an appropriate expert opinion.

807 P.2d at 188. Another reason evidence of secondary gain "is not helpful [is because] it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883-884 (8th Cir. 1998). In other words, "evidence of secondary gain [does] not meet the test of relevancy as it [does] not naturally and logically tend to make either the extent or validity of plaintiff's alleged continuing injury more or less probable." *Dahlin,* 766 P.2d at 241.

Here, there is no evidence suggesting that Meyer's reports of his injuries and medical problems is influenced by secondary gain motives. There is, likewise, no evidence that he is malingering. Accordingly, any testimony or argument to this effect is irrelevant and inadmissible. FED. R. EVID. 401, FED. R. EVID. 402; *Linden, supra; Dahlin, supra.*

7.     **Legal conclusions from expert and lay witnesses.**

An opinion on the ultimate legal issue is properly left to the jury. *N.Y. Marine & Gen. Ins. Co. v. Junkermier, Clark, Campanella, Stevens, P.C.,* 2020 U.S. Dist. LEXIS 18210, at *4 (D. Mont. Feb. 3, 2020). Testimony from any witness, lay or expert, that amounts to a legal conclusion is inadmissible. *Pritchard-Sleath v. Opper,*

2014 U.S. Dist. LEXIS 26911, at *11 (D. Mont. Mar. 3, 2014); *U.S. v. Scholl,* 166 F.3d 964 (9th Cir. 1999); *Chiate v. Morris*, 972 F.2d 1337 (9th Cir. 1992). An expert may testify that a defendant did not adhere to an industry's standard practices, but must not be permitted to testify that a defendant violated the law. *Pritchard-Sleath,* 2014 U.S. Dist. LEXIS 26911, at *11 (citing *Wood v. Montana Dep't of Revenue,* 2011 WL 4348301  (D. Mont. Sept. 16, 2011)). Expert testimony concerning the reasonableness of a party's belief or actions constitutes a legal conclusion, which is an inappropriate matter for expert testimony. *Scholl,* 166 F.3d at 973. "Expert witnesses should not use any language that sounds like jury instructions and invades the province of the jury." *McClammy,* 2019 U.S. Dist. LEXIS 164506, at *15. In sum, matters of law are for the court's determination, not a witness. *Scholl,* 166 F.3d at 973*; accord Doyle v. Clark,* 254 P.3d 570, 575 (Mont. 2011) (explaining that "legal conclusions offered by an expert witness invade the province of the jury whose duty it is to apply the law as given in the jury instructions to the facts of the case" because "such expert opinions on the law can be highly prejudicial") (internal citation and quotations omitted).

These admissibility rules apply here. Expert and lay witnesses should be prohibited from offering testimony that amounts to a legal conclusion, *i.e.,* tells the jury the result to reach. Examples of legal conclusions made by witnesses during discovery, and which should be excluded, are:

- "Meyer hasn't told me anything that Big Sky Resort has done in violation" of the code;[10]

- "Mr. Meyer, at the time of his injury and immediately preceding it, did not comply with his obligations and duties under MCA §23-2-735" and the reasons why he was not in compliance with the code.[11]

- "The evidence clearly indicates, as one descends the lower portion of the Highway trail that the area containing the catwalk, as well as the innumerable rocks and forest growth protruding from the snow was open, obvious, and visible for hundreds of feet uphill. In other words, it was Mr. Meyer's sole duty "to see what was to be seen". Mr. Meyer, descending along his chosen path of travel would have had clear, unobstructed lines of sight and the uncompromised opportunity to see the variation in terrain (catwalk) and the "plainly visible" rocks forest growth had he been keeping a proper lookout."[12]

- "[I]t is clear that the plaintiff breached his duties as a skier under Montana law, in that he didn't "obey all posted or other warnings and instructions (the black-diamond designation), didn't "maintain control of his speed and course so as to prevent injury to himself. He was unable to maintain control when he either encountered the catwalk and/or snow conditions and/or stuck rocks and/or forest growth and proceeded to become airborne, sustaining his injuries. Collectively, as a participant in the sport of skiing in Montana, Mr. Meyer was obligated to adhere to the rules contained within the Skier Responsibility code and he did not."[13]

- "Big Sky Resort was compliant with all duties imposed on ski area operators by the State of Montana with respect to MCA §23-2-733."[14]

---

[10] *Exhibit C* (Middleton Depo. Excerpts) at 18:17-18
[11] *Exhibit D* (Petrozzi Report) at 18 (§15.0,¶ 4).
[12] *Exhibit D* (Petrozzi Report) at 19 (§15.0, ¶5)
[13] *Exhibit D* (Petrozzi Report) at 19 (§15.0, ¶8).
[14] *Exhibit D* (Petrozzi Report) at 20 (§16.0, ¶2).

- "John Meyer was solely responsible for his injuries" and his failure to perform certain acts was "the cause of those injuries."[15]

- Big Sky "was reasonable in all aspects of its operations, did not act unreasonably, did comply with all requirements imposed by MCA §23-2-733, as well as all generally-accepted ski industry practices, and as a result did not expose its guests, and in particular the plaintiff, John Meyer, to unreasonable risks."[16]

Each of these statements not only tells the jury the result to reach, but also whether a law or duty was violated. Therefore, is a legal conclusion. Again, witnesses are not permitted to give legal conclusions; therefore, each of these legal conclusions must be excluded. All witnesses should be prohibited from offering testimony which invades the province of the jury by telling it the result to reach on the question of Big Sky's negligence, Meyer's alleged contributory negligence, and Meyer's alleged abuse of process.

## 8.   Testimonial statements that Big Sky has not violated, or is not in violation of, Montana law.

Witnesses are not permitted to tell the jury that a parry did, or did not, violate the law. *Pritchard-Sleath, supra.* Accordingly, all testimonial statements that Big Sky has not violated, or is not in violation of, Montana law should be excluded.

---

[15] *Exhibit D* (Petrozzi Report) at 21 (§16.0, ¶3).
[16] *Exhibit D* (Petrozzi Report) at 21.

9.    **Written statements and patroller comments in the incident or accident report, when that statement or comment is made by someone other than the testifying witness.**

Big Sky has produced an accident report, which includes information obtained by Big Sky during its investigation into Meyer's ski wreck.[17]  Within this report are patroller's comments, patroller's statements, and witness statements.[18]   These statements are hearsay and contain hearsay within hearsay; therefore, they are inadmissible. FED. R. EVID. 801; FED. R. EVID. 802; FED. R. EVID. 805.

10.    **Any party's decision to call (or not call) a witness at trial.**

Final decisions have not yet been made on what witnesses will be called at trial. However, any decisions regarding what witnesses to call at trial has no relevance to the questions before the jury and should be excluded. FED. R. EVID. 401, FED. R. EVID. 402. Moreover, even if such decisions were relevant, commentary on a party's decision to call (or not to call) a witness should be excluded as highly prejudicial and very likely to mislead the jury into speculating as to the reasons for the decision. FED. R. EVID. 403.

11.    **Opinion testimony about, and improper comments on, the credibility of witnesses.**

Credibility is a matter to be decided by the jury. *U.S. v. Binder,* 769 F.2d 595, 602 (9th Cir. 1985); *U.S. v. Barnard,* 490 F.2d 907, 912-13 (9th Cir. 1973). The

---

[17] *Exhibit F* (Depo. Exhibit 77).
[18] *Exhibit F* (Depo. Exhibit 77) at BIG SKY 1-4, BIG SKY 13-18, BIG SKY 23-26

Montana Rules of Professional Conduct likewise prohibit Big Sky's counsel from commenting on, or stating personal opinions, as to "the credibility of a witness." MONT. R. PROF'L COND. 3.4(e). For these reasons, the Court should exclude all opinion testimony and improper comments on the credibility of witnesses. This includes exclusion of questioning witnesses about whether he or she agrees that Meyer is a liar.[19]

## 12.   Meyer's products liability case against Salewa, including Meyer's negotiations and settlement with Salewa.

Big Sky has raised numerous affirmative defenses to Meyer's negligence claim against it, including that Meyer's injuries were caused by his own negligence.[20] Big Sky does <u>not</u> allege that Salewa's negligence or "faulty" bindings were an intervening cause that cuts off its negligence. Big Sky's failure to raise this defense, or any other "empty chair" defense, in its answer means that the defense is waived. *See* FED. R. CIV. P. 8(c); *Roberts v. College of the Desert,* 870 F.2d 1411, 1414 (9th Cir. 1988). Accordingly, Meyer's products liability case against Salewa, including his negotiations and settlement with the company, are not relevant to any matter before the jury. FED. R. EVID. 401. Irrelevant evidence is not admissible. FED. R. EVID. 402.

---

[19] *See, e.g., Exhibit E* (E. Dixon Depo. Excerpts) at 34:16-35:22.
[20] *Answer to First Amended Complaint, Affirmative Defenses, Counterclaim, and Jury Demand* (ECF No. 33) at 9-10.

Furthermore, evidence of settlement negotiations is inadmissible. FED. R. EVID. 408. Finally, even if relevant, introduction of Meyer's lawsuit against and settlement with Salewa has the danger of prejudicing the jury, confusing the issues, and misleading the jury in making its damages calculations. Accordingly, evidence of Meyer's products liability case against Salewa, including Meyer's negotiations and settlement with Salewa regarding his Dynafit bindings.

**13.    Amanda Eggert's statements that she would not have filed a lawsuit against Big Sky.**

Personal opinions about a person's decision to file a lawsuit are not admissible. *Bridges v. U.S.,* 199 F.2d 811, 830 (1952) (citing Wigmore of Evidence, 3rd ed., §1980)). Moreover, whether or not Eggert would have filed a lawsuit is not relevant to whether Big Sky was negligent or Meyer's damages. FED. R. EVID. 401. This is particularly true when her reasoning for this opinion is because she doesn't "enjoy confrontation. Lawsuits are long, drawn out, unpleasant things," and "the skier responsibility code or something to that effect would make for a challenging lawsuit."[21]

Moreover, even if her personal opinions regarding Meyer's decision to file a lawsuit were relevant, the introduction of such evidence is highly prejudicial and is substantially likely to confuse and mislead the jury. Accordingly, this testimony,

---

[21] *Exhibit G* (Eggert Depo. Excerpts) at 109:16-20, 110:3-13.

25

evidence referencing this sentiment, and any statements regarding her personal opinion should be excluded.

**14.   Statements and speculative testimony that Meyer was attempting to do a flip prior to his wreck.**

Speculative testimony is not admissible, and its admission is plain error. *U.S. v. Vera*, 770 F.3d 1232, 1248 (9th Cir. 2014); *see also Sears, Roebuck & Co. v. Peterson,* 76 F.2d 243, 247 (8th Cir. 1935) (holding that "[t]he jury may not base a verdict on mere speculation, but neither should the court indulge in mere speculation as to a possible defense unsupported by any proven facts"). This is because speculative testimony is inherently unreliable. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997). Likewise, personal opinion testimony is inadmissible as a matter of law under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharm, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

Meyer was not attempting to jump or flip over the cat track.[22] Nevertheless, Tom McMakin repeatedly testified that he believes Meyer was attempting to jump, or flip over, the cat track immediately prior to his wreck.[23] Yet, he admits this is pure speculation and conjecture.[24] This admission conclusively establishes that any testimony or evidence referencing Meyer's alleged attempt to do a flip is pure speculation that must be excluded.

---

[22] *Exhibit A* (Meyer Depo. Excerpts) at 196:2-3.
[23] *Exhibit B* (McMakin Depo. Excerpts) at 14:18-15:8, 16:5-12, 17:25-18:14, 24:17-18, 30:20-31:5, 38:13-16.
[24] *Exhibit B* (McMakin Depo. Excerpts) at 17:25-18:14, 30:20-31:5.

**15.    Statements to the effect that anyone who pays a filing fee can file a lawsuit, whether it is justified or not.**

In connection with its abuse of process defense and counterclaim, Big Sky has insinuated that Meyer was able to file this allegedly unjustified lawsuit because he is a lawyer.[25] This line of questioning has absolutely no relevance to Meyer's negligence claim against Big Sky. FED. R. EVID. 401; *see also Ficek v. Kolberg-Pioneer, Inc.*, 2011 WL 1316801 at *1 (D. Mont. 2011) (explaining that relevancy "exists only as a relation between an item of evidence and a matter properly provable in the case"). Statements that anyone who pays a filing fee can file a lawsuit, whether justified or not, have no relevance to the negligence claim or Meyer's damages. *Id.* And finally the Montana Rules of Professional Conduct prohibit Big Sky's counsel from alluding to, or stating, "a personal opinion as to the justness of a cause." MONT. R. PROF'L COND. 3.4(e).   For these reasons, the Court should exclude statements and testimony that anyone can file a lawsuit, regardless of whether it is justified or not.

**16.    Meyer's political aspirations.**

Big Sky has, in connection with its abuse of process counterclaim, alleged that Meyer sought to "leverage" Big Sky for political gain.[26] Meyer has political aspirations, and he has run for government office.[27] Nevertheless, his decision to run for office and his political aspirations are not relevant to the question of Big Sky's

---

[25] *Exhibit A* (Meyer Depo. Excerpts) at 244:11-14.
[26] *Exhibit C* (Middleton Depo. Excerpts) at 11:7-12.
[27] *Exhibit A* (Meyer Depo. Excerpts) at 231:1-2, 244:15-18

negligence or the damages Meyer sustained as a result of Big Sky's negligence. FED. R. EVID. 401. Evidence that is not relevant is not admissible. FED. R. EVID. 402.

Evidence of Meyer's political aspirations must also be excluded based on the court's prior ruling excluding evidence of Big Sky's abuse of process counterclaim during the first phase of trial[28] and  the parties agreement that evidence and testimony about Meyer's alleged attempts to "leverage" Big Sky should be excluded during the first phase of trial.[29]

Accordingly, evidence of Meyer's political aspirations is inadmissible during voir dire and the first phase of trial.

## CONCLUSION

For the reasons stated herein, Meyer respectfully requests that the Court grant his *Motion in Limine*  and exclude all reference to, evidence of, and argument concerning Topics 1-16.

Dated: March 27, 2020

Respectfully submitted,

*/s/ Breean Walas*
BREEAN WALAS (PHV)
P.O. Box 4591
Bozeman, MT 59772
Breean@walaslawfirm.com
(501) 246-1067
*Attorney for Plaintiff*

---

[28] *Order* (ECF No. 141).
[29] *Second Set of Joint Motions in Limine* (ECF No. 153).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 27th day of March 2020.

| | |
|---|---|
| [ ] U.S. Mail | Ian McIntosh |
| [ ] Hand Delivery | Mac Morris |
| [ ] Facsimile | CROWLEY FLECK PLLP |
| [ ] FedEx | 1915 South 19th Avenue |
| [x] ECF | P.O. Box 10969 |
| [ ] Email | Bozeman, MT 59719-0969 |
| | Telephone: (406) 556-1430 |

*Attorneys for Defendant Big Sky Resort*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count is 5989 words, including footnotes and excluding the Caption and Certificates.

Dated this 27th day of March 2020.

/s/ Breean Walas
BREEAN WALAS (PHV)