Breean Walas (PHV)
Walas Law Firm
P.O. Box 4591
Bozeman, MT 59772
Telephone: (501) 246-1067
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| JOHN MEYER, | Case No. 2:18-cv-00002-BMM |
|---|---|
| Plaintiff, | |
| vs. | **RESPONSE TO** |
| BIG SKY RESORT, | **BIG SKY RESORT'S** |
| | **MOTION FOR SANCTIONS** |
| Defendants. | |

Plaintiff John Meyer, by and through his counsel, hereby responds to *Big Sky Resort's Motion for Sanctions* (ECF No. 154) and *Big Sky Resort's Brief in Support of Motion for Sanctions* (ECF No. 156), and states:

## BACKGROUND

Big Sky seeks sanctions based on Meyer's alleged course of misconduct. The following information is relevant to the Court's analysis of whether sanctions are warranted (they are not). Specifically, this timeline reflects relevant points of this litigation contemporaneously communications between Dixon and Meyer relevant the issues raised by Big Sky's *Motion for Sanctions*.

The relevant dates are:

1

- December 11, 2015: Meyer injured while skiing at Big Sky.

    o August 15, 2016: Meyer invites Evi Dixon, who has become a friend, to dinner.[1]

    o December 15, 2017 (8:42 am) : Dixon sends email list to Meyer.[2]

    o December 15, 2017 (9:10 am): Meyer emails Dixon a copy of the lawsuit he is about to file, and say "Please do not discuss the lawsuit with me at any point from now on."[3]

- December 15, 2017 (11:02 am): Meyer files lawsuit in state court.[4]

- December 27, 2017: Big Sky's counsel instructs Meyer to direct all communications that are in any way related to his lawsuit through counsel; specifically stating: "Pursuant to Rule 4.2 of the Montana Rule of Professional Conduct, I am writing to instruct you to discontinue all communications with employees of Big Sky Resort."[5]

- January 3, 2018: Big Sky removes to federal court.[6]

- April 6, 2018: Big Sky serves discovery requests.[7]

    o June 4, 2018: Meyer sends political text blast to Ms. Dixon.[8]

---

[1] *Sanctions Ex. 5* (Doc. 156-5); *Sanctions Ex. 6* (Meyer Depo) at 269:23-270:1.
[2] *Sanctions Ex. 4* (Doc. 156-4)
[3] *Sanctions Ex. 4* (Doc. 156-4)
[4] *Complaint* (Doc. 3).
[5] *Sanctions Ex. 2* (12.27.17 Letter) (Doc. 156-2).
[6] *Notice of Removal* (Doc. 1).
[7] *Sanctions Ex. 3* (Big Sky 1st Discovery Requests) (Doc. 156-3).
[8] *Sanctions Ex. 5* (Doc. 156-5).

- - October 19, 2018: Meyer and Dixon text about Meyer getting an alpaca wool hat from Dixon.[9]
  - October 23, 2018: Dixon texts a picture of the available wool colors.[10]
  - November 2, 2018: Dixon follows up via Facebook message about a hat for Meyer.[11]
  - November 19, 2018: Dixon texts her days off so that Meyer can come pick out yarn.
- November 27, 2018: Order denying Big Sky's motion to dismiss and denying the imposition of sanctions against Meyer for alleged violations of the Montana Rules of Professional Conduct, and recommending Meyer retain counsel to represent him.[12]
  - December 3, 2018: Meyer apologizes for not being around.[13]
  - December 4, 2018: Meyer texts Dixon to see if she is around.[14]
  - December 7, 2018: Meyer invites Dixon to a small house party;[15] she did not attend.[16]

---

[9] *Sanctions Ex. 5* (Doc. 156-5).
[10] *Sanctions Ex. 5* (Doc. 156-5).
[11] *Sanctions Ex. 5* (Doc. 156-5)
[12] *Order* (Doc. 48)
[13] *Sanctions Ex. 5* (Doc. 156-5)
[14] *Sanctions Ex. 5* (Doc. 156-5).
[15] *Sanctions Ex. 5* (Doc. 156-5).
[16] *Exhibit D* (Dixon Depo II Excerpts) at 86:6-88:7.

- o January 14, 2019: Meyer sends a Facebook message about stopping by Dixon's home to take photos.[17]

- April 2019: The 2018/2019 season ended at Big Sky, and Dixon's seasonal employment ended.[18]

  - o August 1, 2019: Dixon reaches out via text and Facebook message about Meyer's babies and a divorce attorney.[19]

  - o September 13, 2019: Dixon texts Meyer to congratulate him about the babies.[20]

- September 17, 2019: Order recognizing the "overall acrimonious nature" of this litigation and refraining from imposing sanctions against either side, yet cautioning to follow the Court's orders.[21]

- October 6, 2019: Dixon is informed by Big Sky that they will not be re-hiring her for the 2019/2020 season and her relationship with Big Sky is officially terminated.[22]

- November 19, 2019: Big Sky issues a subpoena for documents to Evi Dixon.[23]

---

[17] *Sanctions Ex. 5* (Doc. 156-5).
[18] *Exhibit D* (Dixon Depo II Excerpts) at 74, 78-79.
[19] *Sanctions Ex. 5* (Doc. 156-5).
[20] *Sanctions Ex. 5* (Doc. 156-5).
[21] *Order* (Doc. 104).
[22] *Exhibit D* (Dixon Depo II Excerpts) at 74, 76-77.
[23] *Sanctions Ex. 7* (Doc. 156-7).

- November 22, 2019: Order denying Big Sky's summary judgment motion, and recommending that Meyer retain counsel now that his co-counsel had withdrawn.[24]

- December 6, 2019: Order granting Meyer's request for a protective order relating to the timing of Ms. Dixon's deposition so that he could explore obtaining counsel, granting Big Sky's motion for a protective order related to Evi Dixon's affidavit and imposing a $100 sanction against Meyer, and warning both parties that the court "will tolerate no further breaches of the Rules of Professional Conduct and the rules of procedure – by any party."[25]

- December 11, 2019: Meyer responds to Big Sky's subpoena issued to Ms. Dixon.[26]

    o January 11, 2020: Ms. Dixon texts picture of loop road to Meyer, with opinion statement about photo.[27]

- January 24, 2020: Big Sky takes Evi Dixon's deposition, during which she testifies about when she was hired, her understanding and lack of understanding about what she was supposed to provide in response to the subpoena, and her other businesses.[28]

---

[24] *Order* (Doc. 115).
[25] *Order* (Doc. 124).
[26] *Sanctions Ex. 8*.
[27] *Sanctions Ex. 5* (Doc. 156-5) at E.Dixon081-082.
[28] *Exhibit A* (E. Dixon Depo I) at 7-9, 12-21, 112, 119.

- January 31, 2020: Meyer serves supplemental discovery requests regarding communications with current and former Big Sky employees.[29]

- February 4, 2020: Meyer's counsel follows up about subpoena issues brought up during Dixon's deposition.[30]

- February 7, 2020: Meyer serves additional documents responsive to the subpoena. That same day, Big Sky responds and requests additional information.[31]

- February 12, 2020: Meyer provides additional information about the photos referenced in the text messages, as well as updated, larger versions of the documents.[32]

- February 19, 2020: Big Sky follows up on the documents produces and requests to re-depose Ms. Dixon at Meyer's cost.[33]

- February 20, 2020: Meyer confirms that Ms. Dixon will be made available for a second deposition as plaintiff's cost. Big Sky serves a second subpoena for documents and notice of deposition of Evi Dixon.[34]

---

[29] *Exhibit B* (Meyer Supp. Disc. Responses).
[30] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).
[31] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).
[32] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).
[33] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).
[34] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).

- March 9, 2010: Meyer produces additional documents responsive to the second subpoena.[35] Dixon is deposed for a second time, during which she offers testimony about the misunderstanding surrounding the first subpoena and what was required, when her employment ended with Big Sky, the 2020 photos she had a friend take and what she did with them, her general practice of deleting emails and messages, how Meyer did not assist her in preparing a false subpoena, and how she did not intend to hide anything from Big Sky, she thought it was limited to the lawsuit.[36]

Under these facts, sanctions should not be imposed.

## OPPOSITION

Big Sky seeks sanctions for failure to product and to supplement Meyer's discovery responses; producing false subpoena responses; alleged professional misconduct and violation of court orders; and destruction of evidence.[37] Federal Rule Civil Procedure 37(c)(1) governs this request, and provides for the following sanctions when a party fails to provide information:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and

---

[35] *Exhibit C* (Correspondence re: Dixon Subpoena Response Issues).
[36] *Exhibit D* (E. Dixon Depo II Excerpts) at 5-7, 15-17, 45-46, 49-52, 76-81, 83-84, 86-88; *Sanctions Ex. 1* (E. Dixon Depo II Excerpts) at 30-32, 34-35, 67-68, 74, 76.
[37] *Motion for Sanctions* (Doc. 144); *Brief in Support of Motion for Sanctions* (*"Sanctions Brief"*) (Doc. 156).

7

>(C) may impose other appropriate sanctions, including [dismissal, as] listed in rule 37(b)(2)(A)[v]).

Big Sky argues that each of these sanctions would be appropriate here. Meyer disagrees and opposes sanctions. Each of the actions complained of, whether taken individually or as a whole, were substantially justified, harmless, or both. He has not engaged in any willful or fraudulent conduct. He has not acted in bad faith in producing documents responsive to subpoenas served on Evi Dixon. He has not violated Montana Rule of Professional 4.2.

In sum, Meyer has not engaged in sanctionable conduct.

**A.    Dismissal is <u>not</u> proper.**

Dismissal, as a sanction, is a rare event. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1260 (9th Cir. 19921) ("dismissal is a harsh penalty and, therefore, it should only be imposed in extreme circumstances"). This is consistent with the public policy favoring disposition of cases on their merits, and the availability of less drastic sanctions. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

Rule 37(c)(1) has a safety valve to prevent these harsh results when the failure, or noncompliance, was substantially justified or is harmless. *Ibey v. Trinity Universal Ins. Co. of Kan.,* 2013 U.S. Dist. LEXIS 116491, at *17 (D. Mont. Aug. 16, 2013). Another layer of review is added when dismissal is sought as a sanction. *Id.* In such instances, the court must consider whether

the claimed noncompliance involved willfulness, fault, or bad faith, and also consider the availability of lesser sanctions. *Id.* Alternatives to dismissal may include "allowing further amended complaints, allowing additional time, or insisting that [the party] associate experienced counsel." *Nevijel v. North Coast Life Insurance Co.,* 651 F.2d 671, 674 (9th Cir. 1981).

The circumstances here do not warrant dismissal of Meyer's case against Big Sky. Meyer has not violated the court's orders. Meyer has taken action in response to the court's orders, including obtaining legal counsel to resolve the complications posed by his dual role as plaintiff-attorney.[38]

Meyer's communications with Evi Dixon did not violate Rule 4.2, which advises that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." MONT. R. PROF'L COND. 4.2.  Meyer reasonably believed[39] that Rule 4.2 did not apply to communications with Ms. Dixon about matters outside this lawsuit.[40] And,

---

[38] *Exhibit E* (Meyer VSOF);
[39] "'Reasonable belief' or 'reasonably believes' when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable." MONT. R. PROF'L COND. 1.0(k).
[40] *Exhibit E* (Meyer VSOF);

9

after Ms. Dixon's seasonal employment ended and she was not rehired by Big Sky, Rule 4.2 no longer applied to <u>any</u> communications with Ms. Dixon.

Meyer has not engaged in any willful or fraudulent[41] conduct.[42] He has not acted in bad faith. In assisting Ms. Dixon in responding to the subpoena, he had a reasonably belief that his initial production was complete. It was not until January 24, 2020, during Ms. Dixon's deposition, that Meyer knew or had reason to believe that his production was incomplete.[43] His "noncompliance" with the subpoena was based on a misunderstanding.[44] It was, therefore, "justifiable." Meyer's "noncompliance" with the subpoena was harmless. As soon as it was brought to light that there was an issue, Meyer (through his counsel) acted to remedy the situation. Meyer agreed to pay the costs of re-deposing Ms. Dixon about the February and March 2020 document production. Big Sky has thoroughly questioned Ms. Dixon about all of the "misconduct" it bases its request for sanctions on.

Spoliation of evidence *may* give rise to a dismissal sanction; however, to be available, a party must have "engaged deliberately in deceptive practices that undermine the integrity of the judicial proceedings because courts have

---

[41] "'Fraud' or 'fraudulent' denotes conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive." MONT. R. PROF'L COND. 1.0(f).
[42] *See Exhibit E* (Meyer VSOF);
[43] *See Exhibit E* (Meyer VSOF);
[44] *Exhibit E* (Meyer VSOF);

10

inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Systems, Corp.* 464 F.3d 951, 958 (9th Cir. 2006) (internal quotations and citation omitted). Meyer has not intentionally destroyed evidence. He has not engaged in deliberately deceptive practices. He did not tell Ms. Dixon to delete the 2020 photos she obtained from a friend; he didn't even respond to her text containing the photo. Ms. Dixon made the decision to delete the photos. Her decision was justifiable because nine of the ten photos weren't in the location she needed. The other photo was produced to Big Sky as part of the text message communications between Meyer and Dixon.[45] She testified about the photo, the differences between the 2020 photo and the 2015 photos, and her reasons for deleting the photos. Ms. Dixon's reasons for deleting the photos was justifiable, and consistent with her course of practice.

Finally, *even if Meyer had engaged in sanctionable conduct,* an analysis of the following factors reveals that dismissal should <u>not</u> be imposed as a sanction: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

---

[45] *Sanctions Ex. 5* (E. Dixon Subpoena Docs.) at E.Dixon081-082. Meyer, in assisting counsel in responding to this motion, realized that he had a copy of the photo on his phone. A copy of that photo is attached to *Exhibit E* (Meyer Verified SOF).

defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits. *Pagtalunan v. Galaza,* 291 F.3d 639 (9th Cir. 2002). "To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Malone v. United States Postal Service,* 833 F.2d 128, 131 (9th Cir. 1987).

Here, the public policy favoring resolution of cases on their merits outweighs the public's interest in expeditious resolution of litigation. This is particularly true since this case is currently set for trial on July 13, 2020. Dismissal of this case is not necessary for this court to manage its docket. The risk of prejudice to Big Sky in proceeding to trial is low, particularly since Big Sky has had the opportunity to re-depose Ms. Dixon and question her about the communications provided on February 7, February 12, and March 9, 2020. Much less drastic alternative exist, including the imposition of attorney's fees or instructions to the jury (both of which have been requested by Big Sky). Meyer has already taken on the expense associated with re-deposing Dixon.

For these reasons, Big Sky's request for dismissal as a sanction should be denied.

B.     **Attorney fees should <u>not</u> be awarded.**

Attorney fees are an authorized, lesser sanction for misconduct. *See* Fed. R. Civ. P. 37(c)(1). However, for attorneys fees to be awarded as a sanction, the party to be sanctioned must have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon,* 464 F.3d at 961. Bad faith is demonstrated by "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Conduct is "tantamount to bad faith" if there is "recklessness … combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001).

Here, Meyer has not acted in bad faith. After learning that there was a problem with the original subpoena response, Meyer (through his counsel) provided responsive documentation within fourteen days of Ms. Dixon's January 24, 2020 deposition. The delay between the Meyer's first subpoena response and the second subpoena response was less than two months. Supplementation continued, and Ms. Dixon was re-deposed approximately one month later. Litigation was not disrupted or delayed by Meyer's mistaken understanding of what the subpoena covered. Big Sky has not been prejudiced by the "noncompliance" and, because of Meyer's good faith efforts upon learning of the issue, Big Sky did not have to seek an order from the court

13

compelling Meyer to comply with the subpoena. Meyer even agreed to pay the costs associated with a second deposition of Ms. Dixon. Accordingly, and in light of the lack of substantial prejudice to Big Sky, attorney fees are not warranted as a sanction.

**C.     There is no evidence of intentional spoliation; therefore, an adverse inference jury instruction is unnecessary.**

Sanctions are only appropriate when a party destroys evidence that it knew, or reasonably should have known, was potentially relevant to the litigation. *Peschel v. City of Missoula,* 664 F.Supp.2d 1137, 1141 (D. Mont. 2009). To sanction a party for destroying relevant evidence, a court may: (1) order the exclusion of certain evidence; (2) admit evidence of the circumstances surrounding the destruction of evidence; or (3) instruct the jury that it may draw an adverse inference against the spoliating party. *Id.* at 1142. Big Sky requests the latter as a "very least" sanction. The adverse inference instruction sanction is not warranted.

Meyer has not destroyed evidence. Ms. Dixon produced the 2020 photo taken of Loop Road, and Big Sky has had an opportunity to depose Ms. Dixon about that photo and the reasons why she deleted the other photos. That testimony reveals that (1) her friend did not take photos of the correct locations on the mountain relevant to Meyer's wreck, and (2) the snow conditions in January 2020 were different than the snow conditions on

14

December 11, 2015. It is clear from this testimony that the 2020 photos were not substantially similar to the conditions at the time of Meyer's wreck and, therefore, were not relevant. An adverse jury instruction is <u>not</u> appropriate under these facts. Therefore, Big Sky's request for one should be denied.

## CONCLUSION

Meyer has not engaged in sanctionable conduct. Therefore, Big Sky's *Motion for Sanctions* should be denied.

Dated: April 10, 2020　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Breean Walas*
　　　　　　　　　　　　　　　　　　　BREEAN WALAS (PHV)
　　　　　　　　　　　　　　　　　　　P.O. Box 4591
　　　　　　　　　　　　　　　　　　　Bozeman, MT 59772
　　　　　　　　　　　　　　　　　　　Breean@walaslawfirm.com
　　　　　　　　　　　　　　　　　　　(501) 246-1067

　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 10th day of April 2020.

| | |
|---|---|
| [ ] U.S. Mail | Ian McIntosh |
| [ ] Hand Delivery | Mac Morris |
| [ ] Facsimile | CROWLEY FLECK PLLP |
| [ ] FedEx | 1915 South 19th Avenue |
| [x] ECF | P.O. Box 10969 |
| [ ] Email | Bozeman, MT 59719-0969 |
| | Telephone: (406) 556-1430 |

*Attorneys for Defendant Big Sky Resort*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count is 2984 words, excluding the Caption and Certificates. Dated this 10th day of April 2020.

*/s/ Breean Walas*
BREEAN WALAS (PHV)
P.O. Box 4591
Bozeman, MT 59772
Breean@walaslawfirm.com
(501) 246-1067