Ian McIntosh
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433

*Attorneys for Big Sky Resort*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER, <br><br> Plaintiff, <br><br> vs. <br><br> BIG SKY RESORT, <br><br> Defendant. | CV-18-2-BU-BMM <br><br> **BIG SKY RESORT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS** |

John Meyer's hindsight justifications for his repeated and flagrant violations of this Court's orders and the rules must be rejected under well-established Ninth Circuit authority. Meyer has provided no legally valid reason for his failure to produce responsive documents, assistance in submitting a false subpoena response, allowance of the destruction of requested evidence, and numerous violations of Montana Rule of Professional Conduct 4.2. Meyer's violations of this Court's Orders and the rules must stop now. The record supports dismissing Meyer's

claims due to his disobedient conduct and awarding Big Sky the attorney fees it incurred in attempting to uncover the truth Meyer tried to hide.

## ARGUMENT

**I.     Dismissal is Proper Under the Rules of Civil Procedure.**

While Meyer claims dismissal is inappropriate because his violations were not due to his "willfulness, bad faith, or fault," Meyer fails to provide any definition of these terms or explain why his conduct was not willful, in bad faith, or his fault. *See* Doc at 8-12. The Ninth Circuit has specifically held that "[d]isobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath*, 24 F.3d 1162, 1166 (9th Cir. 1994). Here, it is undisputed that Meyer's disobedient conduct was not outside his control. Meyer's failure to answer discovery, assistance in submitting a false subpoena response, allowance of destruction of evidence, and violations of Rule of Professional Conduct 4.2 were all within his control and a result of his own intentional decisions.

The Ninth Circuit has routinely affirmed a district court's imposition of a dismissal sanction based on a party's failure to comply with the discovery rules. *See Hyde*, 24 F.3d at 1167 (affirming dismissal sanction based on party's failure to appear at a deposition); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 949 (9th Cir. 1993) (affirming dismissal sanction for failure to timely answer discovery because

such matters were "hardly outside the control of the litigant" and plaintiff's alleged "misunderstanding" was doubtful in light of the record); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589-592 (9th Cir. 1983) (affirming dismissal sanction for untimely tender of documents and information in discovery). When considering a dismissal sanction, a court is to consider all incidents of the party's misconduct. *See Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1411 (9th Cir. 1990). Meyer's own timeline highlights the egregious and repetitive nature of his conduct and disregard of the Court's orders and the rules throughout this case. *See* Doc. 167 at 1-7. Based on the totality of Meyer's conduct, dismissal of this case is warranted.

Meyer claims that his failure to comply with the rules should be excused because his conduct was "substantially justifiable" and/or "harmless." *See id.* at 8-11. It is Meyer's burden to prove that his conduct was "substantially justifiable" and/or "harmless" and as detailed below, he cannot do so. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001).

### A. Meyer's Failure to Answer and Supplement Discovery and False Deposition Testimony.

Meyer acknowledges that Big Sky's Motion for Sanctions is based in part on his "failure to product [sic] and to supplement [his] discovery responses" (Doc. 167 at 7) but provides no explanation or argument addressing his failure to comply with these discovery obligations. In its opening brief, Big Sky set forth facts

establishing that Meyer intentionally attempted to hide his communications with Evi Dixon by not producing all his communications with Ms. Dixon even though they were responsive to discovery requests, and then lying about the last time he communicated with Ms. Dixon during his deposition. *See* Doc. 156 at 7-8. Because Meyer failed to address his discovery responses and deposition testimony in his response brief (*see* Doc. 167), he has conceded his responses and deposition testimony were false and Big Sky's Motion should be granted on this ground alone. *See Estate of Shapiro v. U.S.*, 634 F. 3d 1055, 1060 (9th Cir. 2011) (finding plaintiff abandoned arguments not raised in response brief).

Further, Meyer's own timeline establishes that he submitted false discovery responses and deposition testimony about his communications with Ms. Dixon. Meyer's timeline includes at least 14 written communications between Meyer and Ms. Dixon, but to date Meyer has only produced two written communications between himself and Ms. Dixon in response to Big Sky's discovery requests. *See* Doc. 167 at 2-7; *see also* Doc. 156 at 7-8. Some of the communications identified in Meyer's timeline occurred before Big Sky served its discovery requests and some occurred after Big Sky served its discovery requests, but all were responsive to Big Sky's discovery requests and should have been produced with Meyer's initial or supplemental responses. Meyer's timeline also includes at least three written communications between Meyer and Ms. Dixon in 2019, which shows that

Meyer's deposition testimony that his last communication with Ms. Dixon was sometime in 2018 was false.  *See* Doc. 167 at 2-7; *see also* Doc. 156 at 7-8.  Meyer's false discovery responses and deposition testimony alone warrant a dismissal sanction.  *Hyde*, 24 F.3d at 1167; *Henry*, 983 F.2d at 949.

      **B.**    **Meyer's Assistance in Submitting a Knowingly False Subpoena Response.**

Meyer does not dispute that the subpoena response he submitted was false. *See* Doc. 167 at 10.  Rather, he claims that his false subpoena response was "justifiable" because it was based on a misunderstanding, but he does not detail what this alleged "misunderstanding" was.  *See id.*  Meyer further claims that he had a reasonable belief that his initial production was complete because he thought the subpoena only requested documents and communications about the case.  *See id.*; *see also* Doc. 167-5 at 2.  This claim is disingenuous as the subpoena unambiguously requests all correspondence, including emails or texts, between current and former Big Sky employees and Meyer or anyone acting on his behalf, without any limitation as to subject matter.  Doc. 156-7.

Meyer obviously knew that he had over 100 written communications with Ms. Dixon between 2016 and 2019 and that he had only produced two of those communications in discovery.  *See* Doc. 156 at 8; *see also* Doc. 156-5 & Doc. 156-6.  Yet, in response to Ms. Dixon's subpoena, he represented all communications between he and Ms. Dixon had been produced.  *See* Doc. 156-8.  This is not a

situation in which documents existed that Meyer simply did not know about or had not yet located; Meyer had first-hand knowledge of these communications and knew they could be found on his and Ms. Dixon's cell phones. Despite this, Meyer did not produce them in response to discovery requests and affirmatively represented that they did not exist in response to the subpoena.

Meyer also claims that his false subpoena response was "harmless" because he eventually produced the documents and paid the costs for re-deposing Ms. Dixon about these documents. *See* Doc. 167 at 10. Meyer cites no authority for this proposition and, in fact, the Ninth Circuit has specifically rejected it. *See North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir. 1986) (order of dismissal affirmed: "Belated compliance with discovery orders does not preclude the imposition of sanctions."); *G–K Properties v. Redevelopment Agency of San Jose,* 577 F.2d 645, 647–48 (9th Cir. 1978) (order of dismissal affirmed: "last minute tender" of discovery does not cure effects of discovery misconduct). Meyer's submission of a knowingly false subpoena response was neither substantially justified nor harmless and warrants dismissal.

### C. Meyer's Allowance of the Destruction of Evidence Requested in Discovery.

Meyer claims that because he personally did not destroy photographs requested in discovery, a dismissal sanction is not appropriate. Meyer, however, knew Ms. Dixon had responsive photographs and failed to inform her that he had

an obligation to produce any pictures of the accident scene or tell her not to destroy the photographs. Meyer cannot stand by while evidence requested in discovery is destroyed and then claim he is blameless for the destruction. Meyer, as a lawyer and party, knew or should have known his discovery obligations and cannot try to blame someone else for his failure to fulfill those obligations. Meyer's failure to do anything to preserve evidence requested in discovery is "utterly inconsistent with the orderly administration of justice" and supports dismissal of this case. *See Leon v. IDX Systems, Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Meyer further claims that Ms. Dixon's decision to delete pictures "was justifiable because nine out of the ten photos weren't in the location she needed." Doc. 167 at 11. Ms. Dixon's text message that accompanies the photo suggests otherwise:



*Big Sky Resort's Reply in Support of Motion for Sanctions – 7*

(Doc. 156-5 at 21-22). Ms. Dixon's post-hoc assertion that the photos she deleted did not show Loop Road is simply not credible given her text message that accompanied the photo. More importantly, because the relevance of the destroyed evidence cannot clearly be ascertained, Meyer and Ms. Dixon "can hardly assert any presumption of irrelevance" as to the destroyed evidence. *See Leon*, 464 F.3d at 959. Big Sky and the Court will never know what those photos really showed. *See id.*

### D. Meyer's Violation of Professional Rule of Conduct 4.2.

Meyer claims that he reasonably believed that Rule 4.2 did not apply to communications with Ms. Dixon about matters outside this lawsuit (Doc. 167 at 9-10), but despite any alleged uncertainty, he never sought a court order, as recommended by the comments to the Model Rules of Professional Conduct. *See* Model Rule of Professional Conduct, cmt. 6 ("A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order").

In any event, what Meyer allegedly believed about the applicability of Rule 4.2 to communications about matters outside the lawsuit completely misses the mark and is simply a red herring. Significantly, Meyer fails to address his documented communications with Ms. Dixon **about this lawsuit**, thereby admitting they occurred and were in violation of Rule 4.2. First, on December 15, 2017, the day Meyer filed the lawsuit, Ms. Dixon emailed the Big Sky patroller

email list to Meyer, at Meyer's request. *See* Doc. 156-4; *see also* Doc. 167 at 2. On that same day, Meyer emailed Ms. Dixon a copy of his complaint in this lawsuit even though he knew Big Sky was represented by the undersigned. *Id.*

Then, while the lawsuit was pending and after being instructed by Big Sky's counsel to discontinue communications with Big Sky employees, Meyer texted Ms. Dixon about what he claimed he was going to do with any money he received in the lawsuit. Doc. 165-1 at 4; *see also* Doc. 156-5 at 4. Ms. Dixon responded: "I am not allowed to talk to you about this **anymore**." *Id.* (emphasis added). Ms. Dixon's use of the term "anymore" makes clear that Ms. Dixon and Meyer had been communicating about the lawsuit while the lawsuit was pending and Ms. Dixon was a supervisor at Big Sky. *See id.* Meyer intentionally omitted this communication from his timeline. *See* Doc. 167 at 2-7. Meyer's attempt to divert the Court's attention from his numerous Rule 4.2 violations should be rejected.

### E. Dismissal is the Appropriate Sanction.

Finally, under the five-part test set forth by the Ninth Circuit, dismissal of Meyer's claims is the appropriate sanction.[1] The Ninth Circuit has emphasized that this test is not a mechanical means of determining what discovery sanction is

---

[1] Meyer fails to point out that the Ninth Circuit has specifically held that the sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

just. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Rather, "[t]he list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof." *Id.*

The record in this case amply supports dismissal of Meyer's claims. "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Id.* at 1097. Additionally, "[w]hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." *Id.* Here, Meyer has been untruthful in his discovery responses and in response to Ms. Dixon's subpoena and that untruthfulness threatened to interfere with the rightful decision of the case. If Big Sky had not pointed out the deficiencies in Ms. Dixon's subpoena response, it never would have received important evidence supporting its position, including the photo showing that Loop Road is clearly visible to skiers.

Even more troubling is that Meyer's false subpoena response was submitted less than one week **after** the Court imposed a $100 sanction against Meyer and issued its final warning that it "will tolerate no further breaches of the Rules of Professional Conduct and the rules of procedure – by any party." (Doc. 124; *see*

*Big Sky Resort's Reply in Support of Motion for Sanctions* – 10

*also* Doc. 167 at 5 (Meyer's timeline indicating the Court sanctioned Meyer and issued its final warning on December 6, 2019 and Meyer responded to Big Sky's subpoena issued to Ms. Dixon on December 11, 2019)). And, even after Big Sky filed its Motion for Sanctions, Meyer filed an unredacted copy of Ms. Dixon's affidavit, which contains privileged information, that the Court already sanctioned Meyer for filing. *See* Doc. 163-12; Doc. 124 at 6-8.[2] Because the Court's previous sanction and final warning has not been enough to deter Meyer from disregarding the Court's orders, violating the rules, and jeopardizing the integrity of the judicial process, dismissal is the only way to do so.

## II.     Big Sky is Entitled to Attorney Fees.

As Meyer points out, if the Court awards fees under its inherent authority, the Court must make a finding that Meyer's conduct "constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). As explained above, disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness. *See Hyde & Drath*, 24 F.3d at 1166. Also, as explained above, Meyer's failure to answer and supplement discovery, assistance in submitting a knowingly false subpoena response, acquiescence in the destruction of evidence requested in discovery, and

---

[2] Meyer did end up filing a motion to seal the affidavit but only after Big Sky's counsel pointed out Meyer's violation.

*Big Sky Resort's Reply in Support of Motion for Sanctions – 11*

violation of Professional Rule of Conduct 4.2 were intentional decisions by him and constitute bad faith.

Even if Meyer's conduct was not willful, the Court may still impose attorney fees as a sanction under Fed. R. Civ. P. 37. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1427 (9th Cir. 1985). A negligent failure to allow reasonable discovery may be punished. *Id.*; *see also Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978). In fact, such awards may be imposed more frequently to discourage unnecessary involvement of the Court. *See Marquis*, 577 F.2d at 642.

Courts have specifically approved the award of attorney fees and costs to a party when the other party commits discovery abuses. *See 3E Mobile, LLC v. Glob. Cellular, Inc.*, 222 F. Supp. 3d 50 (D.D.C. 2016) (awarding attorney fees as sanction for late production of documents requested in discovery); *Moncada v. Evan Energy Co.*, 2003 WL 25444191, at *1 (E.D. Va. Dec. 10, 2003) (awarding attorney fees as sanction for discovery abuses); *Thomas v. Hoffmann-LaRoche, Inc.*, 126 F.R.D. 522, 525 (N.D. Miss. 1989) (awarding attorney fees as sanction for discovery abuses). Big Sky is entitled to be put into the position it would have been in if Meyer would have complied with his discovery obligations. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017).

Meyer's argument that the attorney fee sanction is not appropriate because he eventually produced documents responsive to the subpoena is contrary to Ninth

Circuit precedent. Belated compliance with discovery obligations does not cure the effects of discovery misconduct or preclude the imposition of sanctions. *See North Am. Watch Corp.*, 786 F.2d at 1451; *G–K Properties*, 577 F.2d at 647-48. Meyer should not be rewarded for his discovery abuses just because he cured them **after** Big Sky brought them to his attention. Big Sky is entitled to the attorney fees it incurred in attempting to uncover the truth.

### III. Big Sky is Entitled to An Adverse Inference Jury Instruction.

Meyer admits that photographs requested in discovery were deleted by Ms. Dixon. *See* Doc. 167 at 14. Meyer, however, claims that an adverse inference jury instruction is not appropriate because he did not destroy the evidence and the evidence was not relevant. *Id.* at 14-15. As explained above, both of these arguments fail.

First, Meyer knew that Ms. Dixon had photographs responsive to discovery but did nothing to inform Ms. Dixon that the photographs needed to be preserved and produced. Meyer could have accessed the photographs and produced them and has provided no explanation for why he did not do so. Meyer's attempt to blame Ms. Dixon, "his retained expert," for his own failure to comply with discovery obligations rings hollow.

Second, Ms. Dixon's text message that accompanied the photo that was actually produced strongly implies that the destroyed photos were of the site of

Meyer's accident and showed that Loop Road was visible to Meyer. *See* Doc. 156-5 at 21. Further, the destroyed photos were specifically requested and reviewed by Ms. Dixon to formulate her opinions in this case. Meyer and Ms. Dixon "can hardly assert any presumption of irrelevance" as to the destroyed evidence because it is impossible to know what that evidence showed. *See Leon*, 464 F.3d at 959. Therefore, an adverse inference jury instruction is appropriate and necessary to cure the prejudice suffered by Big Sky.

## CONCLUSION

For all of the foregoing reasons, Big Sky respectfully requests that the Court grants its Motion for Sanctions, dismiss Meyer's claims, and award Big Sky its attorney fees incurred in dealing with Meyer's failure to follow Court orders and the rules. Alternatively, and at the very least, Big Sky respectfully requests the Court give an adverse inference jury instruction based on the destruction of photographs requested in discovery.

DATED this 22nd day of April 2020.

CROWLEY FLECK PLLP

By /s/ Ian McIntosh
    Ian McIntosh
    P.O. Box 10969
    Bozeman, MT 59719-0969

    Attorneys for Big Sky Resort

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Office Word 2007, is 3,078 words long, excluding the Caption and the Certificates of Service and Compliance.

Dated this 22nd day of April, 2020.

                                                 CROWLEY FLECK PLLP

                                               By /s/ Ian McIntosh
                                                  Ian McIntosh
                                                  P.O. Box 10969
                                                  Bozeman, MT 59719-0969

                                               Attorneys for Big Sky Resort

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 22nd day of April, 2020.

| | |
|---|---|
| [ ] U.S. Mail | Breean Wallace |
| [ ] Hand Delivery | Walas Law Firm |
| [ ] Facsimile | P.O. Box 4591 |
| [ ] FedEx | Bozeman, MT 59772 |
| [x] ECF | |

                              /s/ Ian McIntosh
                              Ian McIntosh