IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT,<br><br>　　　　Defendant. | CV 18-2-BU-BMM<br><br><br>ORDER |

# INTRODUCTION

These parties, as they often do, filed a number of motions. The Court heard argument for these motions (Docs 142, 145, 148, 151, 153, 154, 155) on May 6, 2020. Since that hearing, another motion (Doc. 178) has become ripe. This Order resolves Big Sky's Second Motion for Sanctions (Doc. 154).

# BACKGROUND

## I. Sanctions Legal Standard

District courts have the inherent power to impose sanctions for a "full range of litigation abuses." *Evon v. L. Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). Courts can award sanctions in the presence of either "(1) willful violation of a court order; or (2) bad faith." *Id.* Courts may impose sanctions if it finds that conduct constituted bad faith or was "tantamount to bad faith." *Fink v.*

1

*Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). The Federal Rules of Civil Procedure also empower courts to impose sanctions in certain situations. *See* Fed. R. Civ. P. 37 ("Rule 37").

The Court's analysis looks the same when considering a dismissal sanction under either Rule 37 or the court's inherent authority. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (noting that Ninth Circuit applies same test under Rule 37 as it does under inherent authority). The Ninth Circuit has stated that the district court "should consider" the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* at 958. When considering the fifth factor, the court should also consider "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). The court need not make explicit findings for each factor, but the court cannot impose a dismissal sanction without a finding of

"willfulness, fault, or bad faith." *Leon*, 464 F.3d 958 (quoting *Anheuser-Busch*, 69 F.3d at 348).

## II. The Court will impose sanctions but not dismiss Meyer's claims under its own inherent authority.

Although Big Sky alleges a number of violations, they all stem from some messages that Meyer and Evi Dixon exchanged over text and Facebook Messenger from 2016 to 2019. Some of those communications happened while Dixon still worked for Big Sky, leading to Big Sky's allegation that Meyer violated the Rules of Professional Conduct. Big Sky's claim that Meyer provided false deposition testimony stems from Meyer's failure to mention these messages when asked about the last time he spoke with Dixon during his deposition. Big Sky alleges that Meyer assisted Dixon in submitting a false subpoena response because neither Meyer nor Dixon provided these messages in Dixon's initial subpoena response. Most serious, Big Sky alleges that based on these messages Dixon, in her capacity as an expert witness for Meyer, took and deleted a number of photographs of the scene of Meyer's fall that would have exculpated Big Sky. Big Sky claims they are entitled to have this case dismissed because of these infractions.

The Court disagrees. Big Sky's brief obscures how innocuous these messages prove with respect to this litigation. Dixon inquires about the birth of Meyer's new children. (*See* Doc. 165-5 at E.Dixon073, E.Dixon074.) Dixon and Meyer also discussed Dixon giving Meyer a craniosacral message. (*Id.* at

3

E.Dixon091.) Meyer and Dixon also exchanged a number of messages about Dixon making a hat for Meyer and what color that hat should be. (*See, e.g., id.* at E.Dixon065.) Big Sky's motion contains a lot of rhetoric about prejudice. It is noticeably void of any discussion about *how* the failure to turn over the vast majority of these messages prejudiced Big Sky. The utter lack of prejudice to Big Sky, the party seeking sanctions, and the public policy in favor of a disposing of cases on the merits counsel against a dismissal sanction. *See Leon*, 464 F.3d 958. That said, Meyer has received numerous warnings from this court and has practiced as an attorney long before this case began. Big Sky overplays the damages these violations have on this litigation, but the fact remains that Meyer has violated this Court's orders to follow the Rules of Professional Conduct despite repeated warnings. For this reason, the Court will impose a sanction on Meyer in the form of a $250.00 fine. Meyer shall deposit the funds with the Clerk of Court by July 1, 2020.

    The deleted photos stand as a slightly different matter. District courts retain "broad discretion in crafting a proper sanction for spoliation." *Id.* at 779. Courts should allow a jury to draw an adverse inference from spoliated evidence when it would accomplish two goals: (1) show that the party who destroys evidence "is more likely to have been threatened by the document than is a party in the same position who does not destroy the document" and (2) the inference would

"presumably deter[] parties from destroying relevant evidence before it can be introduced at trial." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). The Court need not apply an adverse inference instruction here to accomplish either goals. The Court instead will allow Big Sky broad latitude to discuss the deleted pictures when cross-examining Dixon. Big Sky still stands able to show that the destruction of these photos served Meyer without an adverse inference instruction. Big Sky has its own photos taken in nearly the same place and taken much closer in time to the accident than Dixon's photos. (Doc. 143-10.)

      Further, the photo Dixon texted to Meyer proves unhelpful to Meyer by Dixon's own description. Thus, the deleted photos at best would prove cumulative to what Meyer already has produced to Big Sky. This situation differs substantially from one where Dixon took "many" photos, kept one that proved favorable to Meyer, and deleted other unfavorable photos. Third, Dixon's own description of the photo proves ripe for cross-examination about why she deleted the "many" other photos. In light of what little prejudice the deletion of these photos has caused Big Sky, wide latitude to cross-examine Dixon will restore Big Sky "to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779

(2d Cir. 1999) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Further, the adverse inference instruction here would unlikely serve any deterrent effect. Dixon has little or no litigation experience outside of this lawsuit. This Court has no reason to believe that Dixon purposefully deleted these photos with the intent of depriving Big Sky of them. Further, according to the messages exchanged between Meyer and Dixon, Meyer had no idea that Dixon was taking pictures that day. Dixon never warned Meyer that she was deleting the other pictures. Meyer cannot be deterred from doing something he did not know what going to happen.

## ORDER

Accordingly**, IT IS ORDERED** that Big Sky's Motion for Sanctions (Doc. 154) is **GRANTED**, in part, and **DENIED**, in part.

DATED this 30th day of June, 2020.

_____
Brian Morris, Chief District Judge
United States District Court