Ian McIntosh
Mac Morris
CROWLEY FLECK PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433

*Attorneys for Big Sky Resort*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| JOHN MEYER,<br><br>            Plaintiff,<br><br>vs.<br><br>BIG SKY RESORT,<br><br>            Defendant. | CV-18-2-BU-BMM<br><br>**BIG SKY RESORT'S TRIAL BRIEF** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................... ii

I.   The testimony of expert Evi Dixon should be limited to that which meets the standards of reliability and relevance. ................................ 1

    A.   Dixon cannot testify that the industry standard would be to mark the transition. ........................................................................ 3

    B.   Dixon cannot testify that Meyer's accident could or would have been prevented by marking the transition .......................................... 5

    C.   Dixon cannot testify that Meyer's accident could or would have been prevented if Big Sky had hired an independent risk manager ........................... 6

II.  Meyer's counselor, Gregory Smith, cannot offer expert testimony regarding Meyer's claimed physical injuries, including traumatic brain injury .............. 7

III. Discussion of Meyer's political activities may be necessary to safeguard Big Sky's rights to select jurors and refute Meyer's calculation of damages ......... 9

    A.   Big Sky must be able to ask potential jurors about their knowledge of and support for Meyer's political candidacies ...................................... 10

    B.   If Meyer pursues his claim for lost wages, his political activities ........ 12

    become relevant to his damages .................................................. 12

IV.  Big Sky has moved for clarification of the Court's ruling regarding legal conclusions ................................................................. 13

V.   Meyer has not disclosed an appropriate witness to introduce his entire medical record ................................................................ 14

    A.   The records contain inadmissible hearsay ................................. 14

    B.   Meyer cannot introduce the medical records because he lacks personal knowledge of his providers' medical opinions .................................. 17

    C.   Meyer cannot introduce the medical records because he is not an expert witness ................................................................. 19

    D.   The evidence is inadmissible under Rules 402 and 403 ...................... 22

VI.  Meyer may not testify that his memory of the accident is accurate because he has prayed to God .......................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, No C06-1750-JLR, 2014 WL 1494023 (W.D. Wash. April 16, 2014) ................................................................3

*Allen v. Rivera*, 2014 WL 295173 (E.D. Cal. Jan. 27, 2014) ........................... 19, 22

*Bemis v. Edwards*, 45 F.3d 1369  (9th Cir. 1995)....................................................17

*Caruso v. Solorio*, 1:15-CV-780-AWI-EPG, 2021 WL 22498 (E.D. Cal. Jan. 4, 2021) ........................................................................................18

*Colgrove v. Battin*, 413 U.S. 149 (1973) ................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ...................................2

*Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851 (9th Cir. 1997) ....................6

*Edmundson v. Magic Diamond Casino*, No. CV-06-100-M-DWM-JCL, 2007 WL 9710370 (D. Mont. Dec. 6, 2007) ................................................................ 17, 21

*Exmundo v. Scribner*, No. 1:06-cv-00205-AWI-DLB, 2014 WL 4249133 (E.D. Cal. Aug. 27, 2014)........................................................................... 18, 19

*Goedecke v. Vinivan*, CV 06-2734-PHX-JAT-LOA, 2008 WL 2668768 (D. Ariz. July 1, 2008)........................................................................................21

*Groditzky v. Am. Honda Motor Co.*, 957 F.3d 979 (9th Cir. 2020)...........................4

*Hill v. Clark*, 1:13-CV-00386-EPG-PC, 2016 WL 696433 (E.D. Cal. Feb. 22, 2016)........................................................................................20

*Houston v. Rio Consumnes Correctional Facility*, 2:15-CV-2055-WBS-KJN, 2017 WL 2972609 (E.D. Cal. July 12, 2017)........................................................ 20, 21

*IMA N. Am., Inc. v. MaryIn Nutraceuticals, Inc.*, No. CV-06-344-PHX-LOA, 2008 WL 4628404 (D. Ariz. Oct. 17, 2008) ................................................................1, 4

*Jiminez v. City of Chicago*, 732 F.3d 71, 715 (7th Cir. 2013)................................11

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...........................................2, 5

*Morford v. United States*, 339 U.S. 258 (1950)......................................................12

*Mu'Min v. Virginia*, 500 U.S. 415 (1991) ...............................................................11

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014) ........2

*Reed v. Lieurance*, 863 F.3d 1196 (9th Cir. 2017) ...................................................1

*Stewart v. Cent. Ariz. Correctional Facility*, No. CV 09-0674-PHX-MHM-ECV, 2010 WL 1814671 .............................................................................................21

*United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012) .........................................12

*United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020).............................................2

*United States v. Barajas-Bandt*, 150 Fed. App'x 658 (9th Cir. 2005) ...................22

*United States v. Kootswatewa*, 893 F.3d 1127 (9th Cir. 2018) ..............................15

*United States v. Payne*, 944 F.2d 1458 (9th Cir. 1991)..........................................12

*Warger v. Shauers*, 574 U.S. 40 (2014)........................................................ 10, 11

*West v. Foster*, 2:07-CV-00021-KJD, 2010 WL 3636164
   (D. Nev. Sept. 9, 2010) ......................................................................................20

**Statutes**
28 U.S.C. § 1870 ...................................................................................................11

**Other Authorities**
*Federal Evidence* § 6.5 ........................................................................................17
*Federal Evidence* § 8.75 ......................................................................................16
*Federal Evidence* § 8.81 ......................................................................................17

**Rules**
Fed. R. Civ. P. 26 ...............................................................................................7, 9
Fed. R. Civ. P. 37 ..................................................................................................5
Fed. R. Civ. P. 47 ................................................................................................11
Fed. R. Evid. 103 ................................................................................................14
Fed. R. Evid. 401 ................................................................................................13
Fed. R. Evid. 402 ................................................................................................22
Fed. R. Evid. 403 .................................................................................... 13, 16, 22
Fed. R. Evid. 602 ................................................................................................17
Fed. R. Evid. 610 ................................................................................................23
Fed. R. Evid. 701 ......................................................................................... 19, 20
Fed. R. Evid. 702 ...................................................................................... passim
Fed. R. Evid. 803 ...................................................................................... passim
Fed. R. Evid. 804 ................................................................................................17
Fed. R. Evid. 902 ................................................................................................16

Pursuant to the Court's Amended Scheduling Order (Doc. 206), Defendant Big Sky Resort respectfully submits the following trial brief.  The Court has resolved a great number of issues pretrial, and it is aware of the relevant facts. This trial brief targets the evidentiary issues likely to arise at trial, the resolution of which will assist both parties in preparing for trial.

## I.     The testimony of expert Evi Dixon should be limited to that which meets the standards of reliability and relevance.

Plaintiff named Evi Dixon, a former ski patroller, as his expert witness. Big Sky generally does not contest Dixon's ability to testify as an expert by her knowledge, experience, and training as a Big Sky ski patroller.  *See IMA N. Am., Inc. v. MaryIn Nutraceuticals, Inc.*, No. CV-06-344-PHX-LOA, 2008 WL 4628404, at *5 (D. Ariz. Oct. 17, 2008) (experience working in subject trade qualified individual as expert). Certain statements made during Dixon's deposition, however, are not sufficiently reliable and relevant under *Daubert* to be offered to the jury.  *See Reed v. Lieurance*, 863 F.3d 1196, 1208–09 (9th Cir. 2017) (explaining that district court must determine which portions of an expert's testimony are excludable and which should be offered to the jury).

Meyer disclosed Dixon's opinion that "Big Sky Resort should have marked the abrupt and significant transition from the blue portion of the Highway ski run to the Loop Road cat walk with signs or flags to warn skiers of the dangerous transition the day of John Meyer's accident."  Exhibit 1, Plaintiff's Expert

Disclosure, Dixon Aff. 4, ¶ 19.  While the basis of this opinion is not clear from her expert report, Dixon's deposition testimony demonstrates that Dixon should not be allowed to testify that:  (1) Big Sky did not comply with industry standards when it did not mark the transition; (2) Meyer's accident would have been prevented had a sign been placed; and (3) Big Sky did not retain an independent risk manager.

Such opinion testimony does not meet the Rule 702 standards of reliability and relevance, as developed in *Daubert*.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that all expert testimony must be reviewed under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Specifically, none of these opinions are reliable because "the knowledge underlying [them] [do not] ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 816 (9th Cir. 2014) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).  Admission of such testimony would likely be grounds for reversal. *See generally United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc).

//

### A. Dixon cannot testify that the industry standard would be to mark the transition.

At Dixon's first deposition,[1] she testified: (1) that Big Sky marks transitions "the same way as other ski areas in the industry," Exhibit 2, Dixon Dep. 35:17–21 (Feb. 24, 2020), and (2) that "as far as [she] know[s]," the industry standard is to not mark transitions where, as is true of the transition between Highway and Loop Road, there is no road cut. *id.* 89:2–15. Contradicting herself, Dixon also asserted that Loop Road "[s]hould have and could have" been marked, but her explanation of that opinion was based on ski patrollers' alleged general "duty" to "try[] to avoid accidents," not industry standards.  *Id.* 67:8–21.  Dixon's expert report contains no discussion of industry standards.

Generally, an expert's knowledge and interpretation of industry standards may support a determination that the expert's testimony is reliable under *Daubert*. *See Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, No C06-1750-JLR, 2014 WL 1494023, at *5 (W.D. Wash. April 16, 2014) (finding expert testimony reliable in part because it referred to industry standards). But an expert cannot testify about industry standards without researching or otherwise developing a base of

---

[1] Dixon was first deposed on February 24, 2020.  Big Sky became aware that some of Dixon's deposition testimony was not truthful, and it conducted a follow-up deposition on March 9, 2020. The testimony relevant to this brief arose in Dixon's first deposition, and all citations are to the transcript of the deposition.

knowledge about those standards. Fed R. Evid. 702(b) (testimony must be "based on sufficient facts or data"); *Groditzky v. Am. Honda Motor Co.*, 957 F.3d 979, 985–86 (9th Cir. 2020) (affirming rejection of expert opinion in part because expert failed to cite industry standards); *IMA N. Am.*, 2008 WL 4628404, at *7 (disqualifying expert testimony when expert did not research comparables or "consult industry standard guides or publications"). Here, Dixon cannot testify that Big Sky's practices did not comport with industry standards because she has disclosed no reliable basis for such an opinion.

Between Dixon's expert report and two depositions, Big Sky learned that Dixon is personally aware of practices in three places: her native Austria (where "there was less marking" and "you don't go out and blame ski areas," Dixon Dep. 37:19–20, 59:19–22); Big Sky; and Steamboat Ski Resort in Colorado (*id.* 35:20–36:5). She also developed secondhand knowledge by talking to ski patrollers with experience at other resorts and participating in trainings at Big Sky. *Id.* 35:22–36:14. Based on these experiences, Dixon testified that Big Sky's marking practices met the standards of the ski industry. *Id.* 35:10–21. Indeed, at one point she stated that her knowledge of the industry standards came from her recognition that "Big Sky [is] industry standard." *Id.* 35:10–13.

Dixon never testified—and did not state in her expert report—that, based on her "knowledge, skill, experience, training, or education," Big Sky or *any other* ski

resort would have marked the transition from Highway to Loop Road.  Fed. R.

Evid. 702. Instead, Dixon testified under oath that, based on her knowledge and

experience, Big Sky's practices met industry standards. Thus, an opinion that

industry standards required marking the transition is unreliable and the Court must

exclude it from trial pursuant to its gatekeeping role. *See Kumho Tire Co.*, 526 U.S.

at 149. Moreover, Meyer has not disclosed the basis for any opinion by Dixon to

the contrary, preventing Big Sky from developing appropriate rebuttal testimony,

and the opinion is therefore excludable under Rule 37(c)(1) and the Court's

Scheduling Order. (Doc. 91 at 4–5.) The Court must exclude any undisclosed,

unreliable opinion testimony from Dixon that Big Sky did not comply with

industry standards.

> **B.    Dixon cannot testify that Meyer's accident could or would have been prevented by marking the transition.**

Dixon's expert report does not include an opinion that signage would have

prevented Meyer's accident.  At her first deposition, Dixon testified that it was her

"speculation, opinion" that "if [the transition] was somehow marked Mr. Meyer

*might have* seen or paid attention more."  Dixon Dep. 65:15–66:4 (emphasis

added).  She also testified that "*maybe* a slow sign or a caution sign or a trails

merge sign *might have* avoided the accident."  *Id.* 66:19–20 (emphasis added).  Not

only is this opinion undisclosed and therefore inadmissible under Rule 37(c)(1) and

the Court's Scheduling Order, but Dixon's opinion that Meyer's accident could

have been prevented by marking the transition is, to use her own words, "speculation."  It is not appropriate expert testimony and must be excluded.

"Rule 702 demands that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."  *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).  Dixon cannot offer an opinion that signage would have prevented the accident without exceeding the scope of appropriate Rule 702 testimony. Indeed, Dixon has given no basis for her opinion that marking the area would have prevented Meyer's accident beyond a personal feeling that "maybe" the accident "might have" been avoided had a sign or fence been placed.  This is not testimony that can "help the trier of fact to understand the evidence" due to Dixon's "specialized knowledge," Fed. R. Civ. P. 702—it is nothing more than a "subjective belief[]," and a weak one at that, *Diviero*, 114 F.3d at 853.  The Court should exclude Dixon's opinion that Meyer's accident may have been avoided had the transition to Loop Road been marked.

### C.     Dixon cannot testify that Meyer's accident could or would have been prevented if Big Sky had hired an independent risk manager.

In her expert report, Dixon stated: "To the best of my knowledge, Big Sky Resort did not have an independent risk manager . . . ."  The topic of an independent risk manager was explored during Dixon's deposition.  Dixon

disclosed no basis for any opinion that Big Sky should have hired an independent risk manager.  Nor did Dixon testify that an independent risk manager may have prevented Meyer's accident.

Dixon testified that an independent risk manager is a person who is "not a ski patroller" and whose "only job is risk managing."  Dixon Dep. 102:19–103:11.  She was not able to identify any Montana ski resort with a risk manager, and she stated that it was "[o]bviously not" standard in the ski industry to have one.  *Id.* 104:22–24.  Moreover, Dixon agreed that she did not know "one way or the other" whether an independent risk manager would have recommended that the transition to Loop Road be marked.  *Id.* 105:10–17.  Dixon should not be allowed to testify at trial that Big Sky ought to have hired an "independent risk manager" because any testimony to that effect would be neither relevant nor reliable.

## II. Meyer's counselor, Gregory Smith, cannot offer expert testimony regarding Meyer's claimed physical injuries, including traumatic brain injury.

Meyer disclosed Gregory Smith, a licensed clinical professional counselor and Meyer's therapist, as a damages expert in his first expert disclosure.  In his supplemental disclosure, Meyer later described Smith as a "Fed. R. Civ. P. 26(a)(2)(C) non-retained expert and fact witness who will offer testimony pertinent to Meyer's damages in this case."  Smith has diagnosed Meyer with post-traumatic stress disorder.

Big Sky anticipates that Meyer may seek to elicit opinions from Smith that exceed the scope of his expertise.  Smith's "knowledge, skill, experience, training, or education," are limited to psychological diagnoses and treatment, as he recognized at his deposition.  Fed. R. Evid. 702; Exhibit 3, Smith Dep. 29:19–21 (agreeing that he "cannot prescribe medications or diagnose medical treatments"). He stated that a medical doctor would be the appropriate provider to diagnose and treat any physical brain injury, *id.* 52:9–11, and that a clinical psychologist would be required to assess whether the accident compromised Meyer's ability to continue to work as an attorney, *id.* 71:24–72:10.

In his treatment notes and deposition testimony, however, Smith has referred to a traumatic brain injury self-reported by Meyer.  *Id.* 37:2–14.  Smith recognized that he has no independent basis for any belief that Meyer suffered a physical brain injury.  Smith did not have contact with Meyer prior to the accident, and he therefore cannot testify personally about Meyer's baseline presentation.  *Id.* 35:24–36:12. Smith relied solely on Meyer's self-reports, which he did not corroborate. *Id.* 23:1–11, 97:17–98:1.  And Smith's treatment methodology focuses strictly on his patients' presentation, regardless of etiology.  *Id.* 77:5–20; 91:9–17; 93:20–94:5.

In the event that Meyer attempts to elicit, or Smith offers testimony, that Meyer suffered a physical brain injury, Big Sky will object on the grounds that (1)

Smith is not a competent expert regarding medical diagnosis, treatment, and prognosis; (2) any testimony regarding Meyer's medical conditions would exceed Smith's personal knowledge and in fact be expert testimony, requiring a Rule 26(a)(2)(B) expert disclosure addressing the "basis and reasons" for his opinion regarding Meyer's medical issues, which has not been provided; and (3) Smith lacks foundation to testify about Meyer's purported physical injuries.

## III. Discussion of Meyer's political activities may be necessary to safeguard Big Sky's rights to select jurors and refute Meyer's calculation of damages.

Meyer moved *in limine* to exclude as irrelevant any evidence of "Meyer's political aspirations." (Docs. 155 at 3, 157 at 27–28.)  The Court granted Meyer's motion.  (Doc. 188 at 6.)  Clarification of the Court's Order is necessary to ensure that: (1) both parties are able to fairly vet potential jurors and exercise peremptory challenges; and (2) Big Sky is able to offer relevant evidence refuting Meyer's claim for lost wages, if pursued.

Any possibility of juror bias does not render Meyer's political activities irrelevant and/or inconsequential.  The parties and the Court can take care to minimize the risk of improper bias.  For example, Big Sky agrees with Meyer that neither party can offer evidence that Meyer made statements against Big Sky in his campaigns.  And Big Sky will not seek to introduce evidence of Meyer's political

future ambitions.  But the fact of Meyer's candidacies for public office cannot be so easily ignored.

Meyer has spent the last several years trying to make a name for himself as a politician.  He appeared on the 2018 Democratic primary ballot for Montana's lone seat in the House of Representatives.  He ran as an Independent for Montana Attorney General in 2020, collecting signatures online and appearing in media stories regarding electronic signature-gathering.  His Twitter bio includes only three words: "Biologist, attorney, politician."  At voir dire, and depending on Meyer's theories at trial, some exploration of Meyer's political activities is necessary to safeguard Big Sky's rights to select an impartial jury and to refute Meyer's own claims regarding damages.

## A.   Big Sky must be able to ask potential jurors about their knowledge of and support for Meyer's political candidacies.

A jury cannot be selected fairly if the parties cannot determine whether potential jurors provided material support to Meyer's political campaigns—or, for that matter, whether jurors were aware of and opposed to Meyer's political activities.

"The Constitution guarantees both criminal and civil litigants a right to an impartial jury."  *Warger v. Shauers*, 574 U.S. 40, 50 (2014).  The Seventh Amendment preserves parties' rights to trial by jury in civil matters "to assure a fair and equitable resolution of factual issues."  *Colgrove v. Battin*, 413 U.S. 149,

157 (1973).  "*Voir dire* can be an essential means of protecting this right."
*Warger*, 574 U.S. at 50.  "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).  In a sense, these two purposes are one and the same: peremptory challenges are themselves "one time-honored means to protect the constitutional right to an impartial jury." *Jiminez v. City of Chicago*, 732 F.3d 71, 715 (7th Cir. 2013).

The Federal Rules of Civil Procedure include procedural protections for the substantive constitutional right to an unbiased jury.  If a federal court does not allow "the parties or their attorneys to examine prospective jurors," it must either "permit the parties or their attorneys to make any further inquiry it considers proper" or "itself ask any of their questions it considers proper."  Fed. R. Civ. P. 47(a).  A court must also allow the parties to exercise the number of peremptory challenges authorized by statute—three, pursuant to 28 U.S.C. § 1870.  Fed. R. Civ. P. 47(b).

Here, failure to allow questioning of potential jurors regarding Meyer's political activities will threaten Big Sky's right to an unbiased jury.  Jurors with strong feelings about Meyer's recent attempts at public office may not be able to set aside their convictions and may be excusable for cause.  And Big Sky (like, one assumes, Meyer) will not be able to exercise adequately its peremptory challenges

if it cannot know which, if any, potential jurors may be swayed by prior knowledge of Meyer's candidacies.  *Morford v. United States*, 339 U.S. 258 (1950) ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." (quotation omitted)).  The threat of bias is particularly significant where, as in the current political climate, "either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact."  *United States v. Anekwu*, 695 F.3d 967, 979 (9th Cir. 2012) (quoting *United States v. Payne*, 944 F.2d 1458, 1474 (9th Cir. 1991)).

Rejection of all questions regarding Meyer's political activities would constitute an abuse of discretion and prohibit "questions reasonably sufficient to test jurors for bias or partiality."  *Id.* at 978 (quoting *Payne*, 944 F.2d at 1474).  If the parties may not elicit information regarding potential jurors' support for Meyer's candidacies, they will not be able to explore whether jurors are excusable for cause and exercise satisfactorily their peremptory challenges, creating a significant risk that the jury will not be impartial.

###   **B.    If Meyer pursues his claim for lost wages, his political activities become relevant to his damages.**

Meyer seeks damages for lost wages, alleging that his accident has reduced his earnings to date and will limit future earnings.  If Meyer presses this claim at trial, Big Sky must be afforded a fair opportunity to offer evidence that any

decrease in Meyer's wages is attributable to factors other than the accident. One such relevant factor is Meyer's two post-accident statewide campaigns for political office.

Evidence of Meyer's political campaigns is relevant to his alleged loss of earnings because it tends to support Big Sky's position that Meyer has not spent as much time working as a lawyer in the last two election cycles as he would have otherwise, making the evidence "of consequence" to Meyer's claim for lost earnings. Fed. R. Evid. 401. Meyer would have had the opportunity to earn more as an attorney in the years following the accident had he not been actively running for office. In this context, the evidence cannot be "unfair[ly] prejudic[ial]" because Big Sky does not have an alternate means of demonstrating what Meyer was doing during this time. Fed. R. Evid. 403. Moreover, the parties and the Court can mitigate the risk of unfair prejudice by, for example, focusing on the fact of Meyer's political activities instead of his political aspirations.

## IV.   Big Sky has moved for clarification of the Court's ruling regarding legal conclusions.

Meyer moved *in limine* to exclude as improper any testimony that amounts to legal conclusion. (Docs. 155, 157 at 19–22.) The Court granted Meyer's motion without further explanation. (Doc. 188 at 5.) Because Big Sky is unsure of the scope of the Court's ruling, it has filed a motion for clarification. Despite discussion during the final pretrial conference, Big Sky anticipates that the parties

will dispute the scope of the operative order at trial.  *See* Fed. R. Evid. 103(a)(2),

(b) (providing that a party preserves a claim of error as to exclusion only where the

court rules definitively and with adequate knowledge of the excluded evidence).

## V.   Meyer has not disclosed an appropriate witness to introduce his entire medical record.

Meyer's final "May Offer" Exhibit list includes over 6,000 pages of medical

records.  *See* Doc. 202-4, Exhibits 223 (4,000+ pages), 224 (2,700+ pages).  No

effort has been made to identify particular portions of Meyer's medical record that

may be offered, and Meyer has not disclosed a lay or expert witness competent to

discuss these voluminous records.  Meyer's medical records cannot be offered at

trial because (1) they are inadmissible hearsay; (2) Meyer lacks personal

knowledge of his providers' medical opinions and cannot lay a foundation for their

introduction; (3) expert testimony is required to explain complicated and extremely

voluminous medical opinions, including diagnoses and future damages; and (4) the

records are irrelevant and likely to confuse the jury, given Meyer's decision to

neither hire a medical expert or place a treating provider on the stand.

### A.   The records contain inadmissible hearsay.

The medical records contain mostly inadmissible hearsay and must be

excluded.  Big Sky anticipates that Meyer will argue that an exception to the rule

against hearsay applies.  Any such argument cannot succeed.  The medical records

exception has limited operation and does not support admission of the records in

their entirety.  And Meyer has not met the requirements for application of the business records exception.

Rule 803(4) provides that the rule against hearsay does not exclude "[a] statement that (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  This rule exists "because the rationale for excluding hearsay statements does not apply to [statements covered by Rule 803(4)]."  *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018).  The exception to the rule against hearsay is limited by its purpose and text: it extends **only to statements made by the person seeking care**, and only to the degree that the statements are "made for purposes of diagnosis or treatment."  Fed. R. Evid. 803(4) Advisory Comm. Notes.

Rule 803(4) would authorize admission of Meyer's statement that he was injured in a ski accident—a point not in dispute—but not that his injury was caused by any act or omission by Big Sky.  "Statements as to fault would not ordinarily qualify . . . .  Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light.  Under the exception the statement need not have been made to a physician."  Fed. R. Evid. 803(4) Advisory Comm. Notes.  Because the admissible portion of the medical records tend to prove a fact that is not in contention, they are excludable as

"cumulative."  Fed. R. Evid. 403; *see* 4 Christopher B. Mueller & Laird C.

Kirkpatrick, *Federal Evidence* § 8.75 (4th Ed. 2020) ("[I]n ordinary cases in which

the patient who has seen a doctor for help in litigating can testify personally about

the nature and cause of his illness or injuries, there is less reason to admit what he

said to such a doctor.").  Most significantly, the medical records exception to the

rule against hearsay is limited to the patient's—in this case, Meyer's—own

statements.  It plainly does ***not*** extend to a treatment provider's statements

regarding treatment and/or diagnosis.

Meyer may argue that Rule 803(6) applies because the medical records were

"kept in the course of a regularly conducted business activity."  However, the

exception does not apply unless "a qualified witness" testifies or certifies that:

> (A) the record was made at or near the time by—or from information
> transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a
> business . . . ; [and]

> (C) making the record was a regular practice of that activity.

Fed. R. Evid. 803(6)(D); 902(11).  None of Meyer's disclosed witnesses is a

"qualified witness," and none can lay the necessary foundation for this massively

voluminous set of medical records.  "Offering hospital and doctor records under

the exception requires the proponent to satisfy the foundation requirement. . . .

[S]omeone who knows how the record was prepared must lay a foundation . . . ."  4

Mueller & Kirkpatrick, *Federal Evidence* § 8.81.  *See Edmundson v. Magic Diamond Casino*, No. CV-06-100-M-DWM-JCL, 2007 WL 9710370 (D. Mont. Dec. 6, 2007) ("Town Pump's motion to preclude Edmundson from introducing his medical records without first laying the proper foundation is granted.").

### B.   Meyer cannot introduce the medical records because he lacks personal knowledge of his providers' medical opinions.

The medical records cannot be introduced because no witness has been disclosed who has personal knowledge of the medical opinions contained within the records.  Rule 602 makes clear that fact witnesses may testify to matters "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  "'[P]ersonal knowledge' really means firsthand knowledge—that which comes to the witness through his own senses . . . .  Thus a witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others."  4 Mueller & Kirkpatrick, *Federal Evidence* § 6.5.

Even where an exception to the rule against hearsay properly applies, the personal knowledge requirement is fully operative.  Fed. R. Evid. 803 Advisory Comm. Note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) ("Although

[a statement was not inadmissible under Rule 803], it does not meet the further requirement of personal knowledge of the events described.").

In this instance, Meyer lacks personal knowledge of how his medical providers made diagnoses and developed treatment plans.  Nor does he have knowledge of how medical professionals generally determine causation and predict damages.  Any attempt to introduce Meyer's medical records without testimony from a treating provider or medical expert would be an end-run around the reliability safeguards provided by the Rules of Evidence.

District courts within the Ninth Circuit routinely deny similar attempts to circumvent the Rules, recognizing that enforcing the personal-knowledge requirement is fundamental to ensuring the reliability of evidence and the fairness of the trial process.  *See Caruso v. Solorio*, 1:15-CV-780-AWI-EPG, 2021 WL 22498, at *19 (E.D. Cal. Jan. 4, 2021) ("[Plaintiff] agrees that she herself cannot discuss or interpret her medical records."); *Exmundo v. Scribner*, No. 1:06-cv-00205-AWI-DLB, 2014 WL 4249133, at *1 (E.D. Cal. Aug. 27, 2014) ("As to Plaintiff's medical records, the records may not be introduced because they are hearsay and require expert testimony and foundational testimony."); *Allen v. Rivera*, 1:05-CV-00146-SAB, 2013 WL 5670862, at *5 (E.D. Cal. Oct. 15, 2013) ("Plaintiff cannot lay a foundation for [dental and medical] records composed by

third parties because he lacks personal knowledge concerning the content of these records . . . .").

In short, because Meyer does not have "personal knowledge" qualifying him to testify as to the substance of his medical records, he cannot be used as a conduit to otherwise place that information in front of the jury. Meyer's testimony is limited to what he actually perceived—for example, "what he saw or felt relating to his medical needs or condition." *Exmundo*, 2014 WL 4249133, at *1; *see also Allen*, 2013 WL 5670862, at *5 ("Plaintiff is not precluded from offering his own testimony describing the extent of injuries he received . . . .") He cannot introduce exhibits if he cannot testify as to their content.

### C.     Meyer cannot introduce the medical records because he is not an expert witness.

Relatedly, any attempt to offer Meyer's medical record without expert testimony cannot be squared with Rule 701. Lay opinion testimony is limited to opinions: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Particularly where, as here, the alleged medical conditions are complex, testimony regarding diagnosis, treatment, and prognosis necessarily requires "scientific, technical, or other specialized knowledge." *Id.*

Meyer is not a medical doctor.  And he has not disclosed an expert qualified to offer opinions as to medical causation and damages.

Accordingly, Rule 701 bars introduction of Meyer's medical record through his own testimony as a lay witness.  Although expert witnesses may share opinions formed on the basis of information about which they do not have personal knowledge, lay witnesses may not.  Thus, courts understand Rule 701 to bar medical opinion testimony by lay witnesses.  *See Houston v. Rio Consumnes Correctional Facility*, 2:15-CV-2055-WBS-KJN, 2017 WL 2972609, at *11 (E.D. Cal. July 12, 2017) ("[P]laintiff's interpretation of the results of his January 2016 and June 2016 lab results is not admissible. As a layperson, plaintiff is not qualified to offer an interpretation of his medical records."); *Hill v. Clark*, 1:13-CV-00386-EPG-PC, 2016 WL 696433, at *1 (E.D. Cal. Feb. 22, 2016) ("Plaintiff may testify about what he felt, the extent of any injuries, and any opinions about causation based on his personal observation and perception.  However, Plaintiff will not be permitted to give a medical opinion or interpret medical records that require expert testimony."); *West v. Foster*, 2:07-CV-00021-KJD, 2010 WL 3636164, at *17 (D. Nev. Sept. 9, 2010) ("Petitioner, again, is not a competent witness to provide expert medical testimony, including interpreting electrocardiogram results."), *aff'd*, 454 Fed. Appx. 630 (9th Cir. 2011).

Indeed, it is generally agreed that, not only is a layperson barred from offering medical opinion testimony, but an expert opinion is *required* to interpret medical records, particularly where, as here, the medical history is complex and unlikely to be understood by a layperson reading the records. *See Houston*, 2017 WL 2972609, at *11 ("An expert witness is required to interpret these medical records."); *Stewart v. Cent. Ariz. Correctional Facility*, No. CV 09-0674-PHX-MHM-ECV, 2010 WL 1814671, at *3 ("[T]he Court advises Plaintiff that expert testimony is almost always necessary for medical claims."); *Goedecke v. Vinivan*, CV 06-2734-PHX-JAT-LOA, 2008 WL 2668768, at *4 (D. Ariz. July 1, 2008) ("To the extent that the medical records might support Plaintiff's position, they require interpretation by a medical expert, and it was incumbent upon Plaintiff to provide an affidavit or deposition of an expert to establish causation."); *Edmundson v. Magic Diamond Casino*, CV 06-100-M-DWM-JCL, 2007 WL 9710370, at *1 (D. Mont. Dec. 6, 2007) (applying Montana law, "unless 'the nature of the injury is such that laymen can plainly see . . . that it will be permanent, such as the loss of a limb,' medical expert testimony is required to prove permanency.") (citation omitted). Again, Meyer cannot be used to admit exhibits into evidence if he is not qualified to speak of their contents.

**D.      The evidence is inadmissible under Rules 402 and 403.**

Finally, because Meyer has not disclosed an expert qualified to testify as to causation and future damages, and because no expert or medical provider will take the stand to explain the 6,000+ pages of medical records listed, the records are inadmissible as irrelevant under Rule 402 and as likely to "confus[e] the issues" and "mislead[] the jury" under Rule 403.  Medical records should be excluded when the district court "conclude[s] that the probative value of [medical] records [is] outweighed by confusion resulting from extensive use of unexplained medical terminology."  *United States v. Barajas-Bandt*, 150 Fed. App'x 658, 659 (9th Cir. 2005).

As explained above, Meyer cannot offer an expert medical opinion.  For that reason, the medical records are largely irrelevant and must be excluded under Rule 402.  *Allen v. Rivera*, 2014 WL 295173, at *6 (E.D. Cal. Jan. 27, 2014) ("[T]he medical and dental records were not relevant to any issues in this case absent a supporting declaration from a competent medical or dental expert . . . .").  And, even if the threshold test for relevance were met, introduction of over 6,000 pages of medical records without any competent explanation of the records would be so confusing as to outweigh their probative value.  Fed. R. Evid. 403; *Barajas-Bandt*, 150 Fed. App'x at 659.

**VI.   Meyer may not testify that his memory of the accident is accurate because he has prayed to God.**

Meyer reported being unable to remember the accident for approximately six months.  At his deposition, he was asked how he knows now what happened, and he answered twice that his knowledge comes from praying.  Exhibit 4, Meyer Dep. 199:3–6 ("It's my truth because I pray to God every day."); 208:12–18 ("How do we know that what you're telling us here today is the truth?"  "I pray to God every day.").  At trial, any such evidence must be excluded under Rule 610, which provides that "[e]vidence of a witness's religious beliefs . . . is not admissible to . . . support the witness's credibility."  Meyer's deposition testimony serves no purpose other than to suggest improperly that his theory of liability is correct because it derives from his religious beliefs and practices.  It falls firmly within the scope of Rule 610 and must be excluded.

DATED this 26th day of February 2021.


CROWLEY FLECK PLLP

By /s/ Ian McIntosh
    Ian McIntosh
    P.O. Box 10969
    Bozeman, MT 59719-0969

    Attorneys for Big Sky Resort

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 26th day of February 2021.

[ ] U.S. Mail            Breean Walas
[ ] Hand Delivery        Walas Law Firm
[ ] Facsimile            P.O. Box 4591
[ ] FedEx                Bozeman, MT 59772
[x] ECF

[ ] U.S. Mail            S. Taylor Chaney
[ ] Hand Delivery        Chaney Law Firm
[ ] Facsimile            526 Main Street, Ste. 204
[ ] FedEx                Arkadelphia, AR 71923
[x] ECF


                         */s/ Ian McIntosh*
                         Ian McIntosh